IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      CASE NO. 15-421-M

           v.                :

JOSEPH P. TOTORO II          :

## PRETRIAL DETENTION ORDER

AND NOW, this      day of April, 2015, after a hearing and argument of counsel for the government and the defendant, the Court FINDS that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proven by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

**Probable Cause and the Evidence in this Case**

1.      There is probable cause to believe that Totoro has violated Title 18 United States Code, Sections 1470, 2252(a)(2), 2252(a)(4)(B), and 2422(b), transferring obscene materials to a minor under the age of 16, receipt of a visual depiction of a minor engaged in sexual activity, possession of child pornography and enticement of a minor to engage in sexual activity.

2.      As demonstrated by the attached Affidavit of Probable Cause, Appendix A, the evidence is strong. The charged offenses span the period between April 12, 2013 and January 14,

2015.  In spring 2012, Totoro was hired as a private tennis coach for the then 14 year old girl

[M1].  Shortly thereafter, Totoro conducted internet searches regarding sex with underage girls

and researched the age of consent in Florida.  Totoro and/or M1 then approached M1's parents

and requested that M1 obtain a prescription for birth control pills, ostensibly to regulate the girl's

menstrual flow to and allow consistency in her tennis training.

     3.     Thereafter, Totoro and M1 travelled to Florida, for warm weather tennis training,

and lived together for several months in a two bedroom apartment.  The text messages that have

been recovered from M1's laptop computer establish that by the time the pair travelled to Florida,

and continuing after M1's return to the Eastern District of Pennsylvania, Totoro was sexually

exploiting M1.

     4.     The following events occurred after M1 returned to the Eastern District of

Pennsylvania.  On April 12, 2013 and June 10, 2014, Totoro forwarded a photograph of his naked

genitalia to M1, at a time when she was under the age of 16.  On two occasions between April 12,

2013 and June 10, 2014, Totoro received over the Internet visual depictions of M1 engaging in

sexually explicit masturbatory conduct, which he encouraged her to send.  On seven occasions

between April 8, 2013 and June 9, 2014, Totoro sent M1 sexually explicit text communications to

entice her to engage in sexual activities for which a person could be charged with a criminal

offense.

     5.     Prior to the discovery of these graphic text messages establishing Totoro' s sexual

abuse of M1, he had been arrested for sending a series of threatening electronic messages to her

parents in late December 2014 and early January 2015.  The messages demanded that they pay

him $60,000, or he would publish their personal, tax and business documents on the Internet,

report alleged violations of law to multiple federal agencies, and inform M1's father's employer of

perceived business improprieties. Totoro had obtained a copy of the family's personal, tax and business records from M1's Google Docs account, to which he had access.

6.      After receiving these threats, M1's parents contacted the FBI and gave the laptop computer used by M1 and her IPhone to the FBI and authorized a complete search of the laptop computer and IPhone in an effort to assist in the investigation of Totoro.

7.      On January 14, 2015, when Totoro was arrested for making these threats, he was in possession of a Samsung cellular telephone, for which he is the subscriber. Subsequent searches of this cell phone, pursuant to his written consent and two separate search warrants, revealed hundreds of images of M1 on the SD card in his phone. In a large number of these images, M1 was unclothed, and in many of the images, M1 was engaged in "sexually explicit conduct" and/or displayed "lascivious exhibition of [her] genitals." At least four of the photographs of M1 found on the SD card of Totoro's cell phone constitute child pornography.

8.      Additionally, a search of M1's laptop computer uncovered almost 1,000 pages of Kik text messages that were saved to M1's laptop when she previously synched her IPhone to her laptop. These texts contain explicit graphic exchanges between Totoro and M1 about the details of the sexual acts they performed together, the sexual acts that Totoro wanted to perform in the future, his encouragement that the victim electronically send him lascivious photographs of herself, instructions on how to pose, and the messages document Totoro's receipt of the lascivious photographs that he requested. The exchanges also include photographs of his shaved genitalia that he sent to M1 when she was under the age of 16. During these text exchanges, Totoro repeatedly reminded M1 to take her [birth control] pill, and on an occasion when she missed a pill, he lamented that they would need to alter their sexual acts for the remainder of that month.

9.      The text messages also establish consciousness of guilt. In these exchanges,

3

Totoro changed his user name four times. He instructs M1 to lie if she is questioned by her parents, her doctor or law enforcement officials about their relationship, and coaches her on what to say to deflect suspicious about their sexual contact. Additionally, Totoro orders her to delete his messages and acknowledges that he could go to prison for his conduct.

10. The evidence that Totoro was a party to the recovered text messages is established by the fact that the parties repeatedly refer to each other by name or nickname, discuss events in their lives that directly mirror the events in the lives of Totoro and M1 at the time, and they exchange numerous self-photographs in a context that establishes that the photographs are photographs of themselves.

11. The evidence shows that Totoro, if released on bail, poses a danger to the community.

12. The strength and nature of the federal charges against Totoro, and the corresponding probability that he will be incarcerated for a very significant period of time, increases the high risk that he will not appear as required by the Court.

**Background of the Defendant**

Totoro, who is 49 years old, is an unemployed tennis coach. M1 was his last remaining student, and his contract to coach her was terminated in the fall of 2014. He has no assets, no fixed abode, and prior to his arrest in a related threats case, had been living out of his car, and sleeping in a train station, or an occasional motel. After his arrest in the threats case, he moved in with his mother in New Jersey. At the time of his arrest on the current sexual endangerment charges, his mother told a law enforcement officer that Totoro would not be welcomed to live with her if granted bail. He has few if any ties to the community.

**Maximum Sentences**

Title 18, United States Code, Section 1470 (Transferring Obscene Materials to Minors) (Class C felony): a maximum of 10 years imprisonment, up to 3 years supervised release, a $250,000 fine, and a $100 special assessment.

Title 18, United States Code, Section 2252(a)(2) (Receipt) (Class C felony): a maximum of 20 years imprisonment with a mandatory 5 year term of incarceration, a minimum 5 year term up to a lifetime of supervised release, a $250,000 fine, restitution, and a $100 special assessment.

Title 18, United States Code, Section 2422(b) (Possession of Child Pornography) (Class C felony): a maximum of 10 years incarceration, 3 years supervised release, a $250,000 fine, restitution, and a $100 special assessment.

Title18, United States Code Section 2252(a)(4) (Enticement): a maximum of life imprisonment (Class A felony), a mandatory minimum period of ten years imprisonment, five years supervised release, a $250,000 fine, restitution, and a $100 special assessment.

Totoro thus faces a maximum sentence of a of life imprisonment, a mandatory minimum sentence of ten years imprisonment for Enticement, a mandatory minimum sentence of five years for Receipt, and a minimum of five years supervised release up to lifetime supervised release, a $1,000,000 fine, and $400 in special assessments. He would also be required to register as a sex offender.

Additionally, a violation of 18 U.S.C. § 875(d) (Interstate Threats) carries a maximum statutory penalty of not more than two years imprisonment, a $250,000 fine, not more than one year of supervised release, and a $100.00 special assessment.

**Lack of Ties to the Community**

Totoro has few if any ties to the community. Prior to his arrest in January 2015, he was homeless and had been living out of his automobile. He previously lived in a series of short term accommodations, most of which were paid for by M1's parents, whom he threatened in his related case. He is a self-employed tennis coach who is currently without any students. He owns no property, other than an automobile, and has no assets. He is facing a very substantial period of imprisonment, especially for one who has never previously been incarcerated, and is facing a five and a ten year mandatory minimum term of incarceration for two his offenses. Tortoro's lack of ties to the community and the threat of long-term incarceration renders him a great flight risk.

In his related threats case, Totoro repeatedly threatened M1's parents and attempted to extort $60,000 by threatening to release on the Internet, as well as to federal agencies, and M1's father's employer, personal, tax and proprietary research and development pharmaceutical documents. Release of the family's tax records could constitute aggravated identity theft by exposing the family's personal identifiers to the public. Release of proprietary business documents could cause grave harm to the company whose records Totoro threatened to publish, and could also endanger M1's father's continued employment at the company. If released on bail, Totoro could carry through on his threats. Thus, there is evidence that Totoro poses a danger to the community, due to his prior threats to M1's parents, and the evidence that he sexually endangered a minor.

The legislative history of the Comprehensive Crime Control Act of 1983 indicates that Congress found that even when a defendant has strong community or family ties, which Totoro does not, such ties do not and should not weigh heavily in the risk of flight analysis. *See* Sen.

Comm. on Judiciary, *Comprehensive Crime Control Act of 1983*, S. Rep. No. 98-225, 98th Cong., 1st Sess. 24, 25 (1983).

## CONCLUSION

Nothing short of 24-hour custody and supervision can ensure the appearance of this defendant and the safety of the community. The conditions of release enumerated in the detention statute at Section 3142(c) would serve only to inform the Court, after the fact, that the defendant has fled or resumed his criminal career. For all of the above reasons, the government respectfully requests that its motion for pretrial detention be granted.

For all of these reasons, it is ORDERED that:

a. the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

b. the defendant be afforded reasonable opportunity for private consultation with counsel; and

c. on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshall for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE RICHARD A. LLORET
*United States Magistrate Judge*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 15-421-M |
| v. | : | |
| JOSEPH P. TOTORO II | : | |

## GOVERNMENT'S MOTION AND
## MEMORANDUM FOR PRETRIAL DETENTION

Defendant Joseph P. Totoro II is charged with transferring obscene materials to a minor under the age of 16, receipt of a visual depiction of a minor engaged in sexual activity, possession of child pornography, and enticement of a minor to engage in sexual activity. The crime of receipt carries a five-year mandatory minimum term of incarceration, and enticement carries a 10-year mandatory term of imprisonment.

The evidence against Totoro includes almost 1,000 pages of text communications between Totoro and his minor victim that detail their years-long sexual relationship, which began when she was just 14 years old. The text messages include Totoro's very graphic and detailed recitations of his sexual abuse of her, his enticement that she engage in additional sexual acts with him, photographs of his shaved genitalia, and his encouragement that she send him photographs of herself engaged in sexual acts.

Totoro' s text messages also include instructions on how she should lie to her parents, to her doctor, and to any law enforcement officers who interview her. In these messages, Totoro orders her to delete his messages, and acknowledges that he could go to prison for his conduct. Additionally, his cell phone, which he had in his possession at the time of a recent prior arrest, contained graphic pornographic images of the victim.

Totoro is 49 years old and the victim's tennis coach, a position of trust that he abused over a more than two-year period. He has no fixed address, he is unemployed, has no assets other than his car, and has few if any ties to the community.[1]

Because the charges include both receipt of a visual depiction of a minor engaged in sexual activity, and enticement of a minor to engage in sexual activity, there is rebuttable presumption that there is no condition or combination of conditions that will reasonably assure the safety of the community. 18 U.S.C. § 3142(e)(3)(E). Because no condition, or combination of conditions, will reasonably assure the defendant's appearance as required, and/or the safety of the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for a detention hearing and pretrial detention of the defendant.

## THE FACTS FOR DETENTION

In support of this motion, the government makes the following representations and proposed findings of fact:

### Probable Cause and the Evidence in this Case

1.     There is probable cause to believe that Totoro has violated Title 18 United States Code, Sections 1470, 2252(a)(2), 2252(a)(4)(B), and 2422(b), transferring obscene materials to a minor under the age of 16, receipt of a visual depiction of a minor engaged in sexual activity, possession of child pornography and enticement of a minor to engage in sexual activity.

2.     As demonstrated by the attached Affidavit of Probable Cause, Appendix A, the evidence is strong. The charged offenses span the period between April 12, 2013 and January 14,

---

[1] On January 14, 2015, in a separate prior criminal complaint, Totoro was charged with making interstate threats to the victim's parents. In light of the new charges, the government will move to dismiss the threats charge without prejudice. The government expects that the forthcoming indictment on the instant child endangerment offenses will include this interstate threats charge.

2015. In spring 2012, Totoro was hired as a private tennis coach for the then 14 year old girl [M1]. Shortly thereafter, Totoro conducted internet searches regarding sex with underage girls and researched the age of consent in Florida. Totoro and/or M1 then approached M1's parents and requested that M1 obtain a prescription for birth control pills, ostensibly to regulate the girl's menstrual flow to and allow consistency in her tennis training.

3.     Thereafter, Totoro and M1 travelled to Florida, for warm weather tennis training, and lived together for several months in a two bedroom apartment. The text messages that have been recovered from M1's laptop computer establish that by the time the pair travelled to Florida, and continuing after M1's return to the Eastern District of Pennsylvania, Totoro was sexually exploiting M1.

4.     The following events occurred after M1 returned to the Eastern District of Pennsylvania. On April 12, 2013 and June 10, 2014, Totoro forwarded a photograph of his naked genitalia to M1, at a time when she was under the age of 16. On two occasions between April 12, 2013 and June 10, 2014, Totoro received over the Internet visual depictions of M1 engaging in sexually explicit masturbatory conduct, which he encouraged her to send. On seven occasions between April 8, 2013 and June 9, 2014, Totoro sent M1 sexually explicit text communications to entice her to engage in sexual activities for which a person could be charged with a criminal offense.

5.     Prior to the discovery of these graphic text messages establishing Totoro's sexual abuse of M1, he had been arrested for sending a series of threatening electronic messages to her parents in late December 2014 and early January 2015. The messages demanded that they pay him $60,000, or he would publish their personal, tax and business documents on the Internet, report alleged violations of law to multiple federal agencies, and inform M1's father's employer of

10

perceived business improprieties. Totoro had obtained a copy of the family's personal, tax and business records from M1's Google Docs account, to which he had access.

6.　　After receiving these threats, M1's parents contacted the FBI and gave the laptop computer used by M1 and her IPhone to the FBI and authorized a complete search of the laptop computer and IPhone in an effort to assist in the investigation of Totoro.

7.　　On January 14, 2015, when Totoro was arrested for making these threats, he was in possession of a Samsung cellular telephone, for which he is the subscriber. Subsequent searches of this cell phone, pursuant to his written consent and two separate search warrants, revealed hundreds of images of M1 on the SD card in his phone. In a large number of these images, M1 was unclothed, and in many of the images, M1 was engaged in "sexually explicit conduct" and/or displayed "lascivious exhibition of [her] genitals." At least four of the photographs of M1 found on the SD card of Totoro's cell phone constitute child pornography.

8.　　Additionally, a search of M1's laptop computer uncovered almost 1,000 pages of Kik text messages that were saved to M1's laptop when she previously synched her IPhone to her laptop. These texts contain explicit graphic exchanges between Totoro and M1 about the details of the sexual acts they performed together, the sexual acts that Totoro wanted to perform in the future, his encouragement that the victim electronically send him lascivious photographs of herself, instructions on how to pose, and the messages document Totoro's receipt of the lascivious photographs that he requested. The exchanges also include photographs of his shaved genitalia that he sent to M1 when she was under the age of 16. During these text exchanges, Totoro repeatedly reminded M1 to take her [birth control] pill, and on an occasion when she missed a pill, he lamented that they would need to alter their sexual acts for the remainder of that month.

9.　　The text messages also establish consciousness of guilt. In these exchanges,

Totoro changed his user name four times. He instructs M1 to lie if she is questioned by her parents, her doctor or law enforcement officials about their relationship, and coaches her on what to say to deflect suspicious about their sexual contact. Additionally, Totoro orders her to delete his messages and acknowledges that he could go to prison for his conduct.

10. The evidence that Totoro was a party to the recovered text messages is established by the fact that the parties repeatedly refer to each other by name or nickname, discuss events in their lives that directly mirror the events in the lives of Totoro and M1 at the time, and they exchange numerous self-photographs in a context that establishes that the photographs are photographs of themselves.

11. The evidence shows that Totoro, if released on bail, poses a danger to the community.

12. The strength and nature of the federal charges against Totoro, and the corresponding probability that he will be incarcerated for a very significant period of time, increases the high risk that he will not appear as required by the Court.

**Background of the Defendant**

Totoro, who is 49 years old, is an unemployed tennis coach. M1 was his last remaining student, and his contract to coach her was terminated in the fall of 2014. He has no assets, no fixed abode, and prior to his arrest in a related threats case, had been living out of his car, and sleeping in a train station, or an occasional motel. After his arrest in the threats case, he moved in with his mother in New Jersey. At the time of his arrest on the current sexual endangerment charges, his mother told a law enforcement officer that Totoro would not be welcomed to live with her if granted bail. He has few if any ties to the community.

**Maximum Sentences**

Title 18, United States Code, Section 1470 (**Transferring Obscene Materials to Minors**) (Class C felony): a maximum of 10 years imprisonment, up to 3 years supervised release, a $250,000 fine, and a $100 special assessment.

Title 18, United States Code, Section 2252(a)(2) (**Receipt**) (Class C felony): a maximum of 20 years imprisonment with a mandatory 5 year term of incarceration, a minimum 5 year term up to a lifetime of supervised release, a $250,000 fine, restitution, and a $100 special assessment.

Title 18, United States Code, Section 2422(b) (**Possession of Child Pornography**) (Class C felony): a maximum of 10 years incarceration, 3 years supervised release, a $250,000 fine, restitution, and a $100 special assessment.

Title18, United States Code Section 2252(a)(4) (**Enticement**): a maximum of life imprisonment (Class A felony), a mandatory minimum period of ten years imprisonment, five years supervised release, a $250,000 fine, restitution, and a $100 special assessment.

Totoro thus faces a maximum sentence of a of life imprisonment, a mandatory minimum sentence of ten years imprisonment for Enticement, a mandatory minimum sentence of five years for Receipt, and a minimum of five years supervised release up to lifetime supervised release, a $1,000,000 fine, and $400 in special assessments.   He would also be required to register as a sex offender.

Additionally, a violation of 18 U.S.C. § 875(d) (Interstate Threats) carries a maximum statutory penalty of not more than two years imprisonment, a $250,000 fine, not more than one year of supervised release, and a $100.00 special assessment.

## Lack of Ties to the Community

Totoro has few if any ties to the community. Prior to his arrest in January 2015, he was homeless and had been living out of his automobile. He previously lived in a series of short term accommodations, most of which were paid for by M1's parents, whom he threatened in his related case. He is a self-employed tennis coach who is currently without any students. He owns no property, other than an automobile, and has no assets. He is facing a very substantial period of imprisonment, especially for one who has never previously been incarcerated, and is facing a five and a ten year mandatory minimum term of incarceration for two his offenses. Tortoro's lack of ties to the community, and the threat of long-term incarceration, renders him a great flight risk.

In his related threats case, Totoro repeatedly threatened M1's parents and attempted to extort $60,000 by threatening to release on the Internet, as well as to federal agencies, and M1's father's employer, personal, tax and proprietary research and development pharmaceutical documents. Release of the family's tax records could constitute aggravated identity theft by exposing the family's personal identifiers to the public. Release of proprietary business documents could cause grave harm to the company whose records Totoro threatened to publish, and could also endanger M1's father's continued employment at the company. If released on bail, Totoro could carry through on his threats. Thus, there is evidence that Totoro poses a danger to the community, due to his prior threats to M1's parents, and the evidence that he sexually endangered a minor.

The legislative history of the Comprehensive Crime Control Act of 1983 indicates that Congress found that even when a defendant has strong community or family ties, which Totoro does not, such ties do not and should not weigh heavily in the risk of flight analysis. *See* Sen.

14

Comm. on Judiciary, *Comprehensive Crime Control Act of 1983*, S. Rep. No. 98-225, 98th Cong., 1st Sess. 24, 25 (1983).

## **CONCLUSION**

Nothing short of 24-hour custody and supervision can ensure the appearance of this defendant and the safety of the community. The conditions of release enumerated in the detention statute at Section 3142(c) would serve only to inform the Court, after the fact, that the defendant has fled or resumed his criminal career. For all of the above reasons, the government respectfully requests that its motion for pretrial detention be granted.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

MARIANNE COX
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served by electronic filing and email to the following:

Catherine C. Henry
Assistant Federal Defender
Federal Community Defender Office for
The Eastern District of Pennsylvania
The Curtis Center - Suite 540 West
601 Walnut Street
Philadelphia, PA 19106

MARIANNE COX
Assistant United States Attorney

Date: April 13, 2015

# APPENDIX A

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, James P. Fitzgerald, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Philadelphia Division, being duly sworn, depose and state as follows:

1.     I have been employed as a Special Agent of the FBI for twenty four years, and am currently assigned to the Philadelphia Division's Newtown Square Resident Agency.  While employed by the FBI, I have investigated federal criminal violations related to civil rights violations, white collar crimes, domestic terror investigations and myriad violent crimes to include crimes against children.  I have been a part of and led larger teams of investigators incorporating traditional as well as sophisticated investigative techniques.

2.     As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3.     This affidavit is being made in support of an application for an arrest warrant for Joseph P. Totoro, II.

4.     The statements in this Affidavit are based in part on my investigation of this matter and on information provided by other law enforcement officers.  Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only those facts that I believe are necessary to establish probable cause to believe that Joseph P. Totoro, II [Totoro] has acted in violations of Title 18 U.S.C. Sections 1470, 2252(a)(2), 2252(a)(4)(B), and 2422(b).

5.     In summary, the following facts establish that there is probable cause to believe that Totoro knowingly possessed child pornography, knowingly received visual images depicting a minor engaged in sexually explicit conduct, knowingly enticed a minor to engage in sexual

1

activity and knowingly transferred obscene images to a minor, in violation of Title 18, United States Code, Sections 1470, 2252(a)(2), 2252(a)(4)(B), and 2422(b).

## LEGAL AUTHORITY

6. Title 18 United States Code § 1470 prohibits a person from knowingly transferring by use of any facility or means of interstate or foreign commerce, obscene material to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempting to do so.

7. Title 18 United States Code § 2252(a)(2) prohibits a person from knowingly receiving visual depictions that had been shipped in interstate or foreign commerce, which show a minor engaged in sexually explicit conduct, or the production of those visual depictions involved the use of a minor engaged in sexually explicit conduct.

8. Title 18 United States Code § 2252(a)(4)(B) prohibits a person from knowingly possessing visual depictions, which had been shipped and transported in interstate or foreign commerce that involved the use of a minor engaging in sexually explicit conduct.

9. Title 18 United States Code § 2422(b) prohibits a person from using or attempting to use facilities and means of interstate commerce, that is, the Internet, and knowingly persuades, induced, entices, and coerces, or attempts to persuade, induce, entice, and coerce, an individual who had not yet attained the age of 18 years to engage in sexual activity for which a person could be charged with a criminal offense.

## DEFINITIONS

10. The following definitions apply to this Affidavit:

2

a.     "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

b.     "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct (see 18 U.S.C. §§ 2252 and 2256(2)).

c.     "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  (See 18 U.S.C. § 2256(5)).

d.     "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.  (See 18 U.S.C. § 2256(2)).

e.     "Computer," as used herein, is defined pursuant to 18 U.S.C.

3

§ 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

  f.  "Minor" means any person under the age of eighteen years. (See 18 U.S.C. § 2256(1)).

  g.  "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e mail, remote storage, and co location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone based dial up, broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e mail address," an e mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a modem, the subscriber can establish communication with an ISP over a telephone line, through a cable system or via satellite, and can access the Internet by using his or her account name and personal password. ISPs maintain records ("ISP records") pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e mail communications, information concerning content uploaded and/or stored on or via the ISP's

4

servers, and other information, which may be stored both in computer data format and in written or printed record format.

h.     "Domain names" are common, easy to remember names associated with an Internet Protocol address. For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, read backwards -- from right to left -- further identifies parts of an organization. Examples of first level, or top-level domains, are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and, .edu for educational organizations. Second level names will further identify the organization, for example usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the World Wide Web server located at the United States Department of Justice, which is part of the United States government.

i.     "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

j.     "Electronic Communication Service" refers to any service which provides to users thereof the ability to send or receive wire or electronic communications. (See 18 U.S.C. § 2510(15)).

## BACKGROUND OF THE INVESTIGATION

11.     On January 11, 2014, Parent 1 [P1] and his wife, P2, appeared in the Newtown Square Resident Agency of the FBI to provide details of an alleged extortion plot wherein they were the victims. In short, P1 explained that in 2012, he made arrangements for Totoro to act as a private tennis coach for his daughter, Minor 1 [M1]. Totoro began coaching M1 on or around April of that year. At that time, M1 was 14.25 years old and Totoro was 45 years old. M1 was born in February 1998 and Totoro was born in November 1965. Totoro was aware of M1's age at the start of the relationship.

12.     In the Spring 2012, Totoro's then roommate alerted P1 that Totoro was alleged to have had inappropriate conversation and/or contact with some of his tennis students, and to have conducted recent internet searches regarding sex with underage persons. Totoro's roommate also cautioned that he saw evidence on Totoro's computer that showed a recent search regarding the "age of consent" in certain states, including Florida.

13.     During the first few months of the relationship, Totoro and M1 traveled in Pennsylvania and surrounding states for training and tournament play. In advance of a planned months-long trip to Florida, Totoro and/or M1 approached M1's parents to request that M1 be put on birth control pills to mitigate the severity of her menstruation on the ground that it would better allow consistency in her tennis training. In response, M1's parents arranged a medical appointment and thereafter 14 year-old M1 began taking birth control pills.

14.     Commencing on or about November 1, 2012, Totoro drove his personal car and transported M1 from Pennsylvania to South Carolina, and then on to Florida where P1 had rented a two bedroom apartment/condominium in Aventura, Florida. During early April 2013,

6

Totoro drove M1 from Florida to Virginia and then returned to Pennsylvania. During the ensuing months, they traveled within Pennsylvania and to surrounding states for training and tournament play. From late fall 2013 through early spring 2014, Totoro again drove his personal car from Pennsylvania to Florida with M1. They resided in Florida at a Club Med facility north of Fort Lauderdale, Florida. During spring 2014, Totoro and M1 returned to Pennsylvania. During the ensuing months, they traveled within Pennsylvania and to surrounding states for training and tournament play.

15.     By fall 2014, M1's parents decided to terminate the relationship with Totoro. Thereafter, Totoro accessed M1's Google Docs account, which he had access to, and downloaded a large number of M1's father's personal, business and tax documents that had recently been stored in this Google account.

16.     On December 30, 2014, Totoro sent the first of a series of e-mail and text messages to M1's parents demanding that they pay him $60,000, or he would publish their personal documents on the Internet, report alleged violations of law to multiple federal agencies and notice P1's employer of perceived business improprieties. M1's parents contacted the FBI, and on January 13, 2015, M1's mother, P2, engaged Totoro in a consensually recorded telephone call wherein Totoro reiterated his extortionate demands. They made arrangements to meet the following day so Totoro could collect the demanded sum of money.

17.     On January 14, 2015, a warrant was issued for Totoro's arrest, charging him with a violation of 18 U.S.C. § 875(d). Later that day, Totoro was arrested at the King of Prussia Mall in Montgomery County. At the time of his arrest, Totoro had a Samsung Galaxy S5 smart cell phone on his person [Samsung cell phone]. The arresting personnel advised that as he was being

7

placed into custody, Totoro attempted to toss the Samsung cell phone under his car. The Samsung cell phone was seized, and the carrier, pursuant to legal process, confirmed that Totoro was the subscriber for the seized Samsung cell phone. The next day, January 15, 2014, the government obtained a search warrant authorizing a search of Totoro's Samsung cell phone for evidence of his extortionate demands.

18. On January 15, 2015, M1's parents gave the MacBook Air laptop computer [M1's laptop computer] used by M1 to the affiant. They also provided an Apple IPhone 5S smart cellular telephone with assigned call number 610-724-0976, subscribed to by P1 and used by M1 [IPhone]. M1's parents authorized a complete search of the computer and the IPhone in an effort to assist in the investigation of Totoro.

19. On January 15, 2015, after receiving parental consent, M1 was interviewed. During the interview, she denied any physical relationship with Totoro and described him as her "best friend."

20. On January 21, 2015, Totoro was interviewed under terms of a proffer agreement. After consulting with his attorney, Totoro gave written consent for a search of his Samsung cell phone. Though he expressed willingness to provide the access code, Totoro claimed that he could not recall it. There were no explicit limits placed by Totoro or his attorney on the examination of his cell phone.

21. Thereafter, Totoro's Samsung cell phone was brought to the Regional Computer Forensic Laboratory [RCFL] for examination. While examining the external digital storage portion of the Samsung cell phone (SD card), the examiner found hundreds of images of M1, who is a minor. In a large number of these images, she was unclothed, and the examiner

8

observed that many of the images were of M1 engaged in "sexually explicit conduct" and/or contained "lascivious exhibition of the genitals." The examiner stopped the examination of the external SD card. He had not examined the internal memory of the phone.

22.     Out of an abundance of caution, a second search warrant was then obtained that authorized an examination of Totoro's phone for evidence of child pornography and related offenses. Once this second search warrant was obtained, the examiner resumed an examination of Totoro's SD card, and the results of that examination are detailed below. The examiner still has not accessed the internal memory of Totoro's Samsung cell phone, which is password protected. Additional images and digital evidence may be located once the internal memory portion of the cell phone is examined.

23.     An examiner also examiner M1's IPhone. It contained approximately 397 pictures and fifteen (15) videos. Ten to fifteen of the pictures were of M1 wearing a bathing suit and were taken when she was 14-16 years old. There were no naked pictures of her on her IPhone. The IPhone also contained approximately 2077 email and/or text messages. Those messages contain evidence in support of the threats offense already charged in a criminal complaint. The KIK Messenger application, which is discussed below, was not present on her IPhone at the time it was surrendered.

24.     Kik Messenger is a free smartphone application requiring a Wi-Fi connection which allows cross-platform instant messaging and the sharing of rich media-like photos, videos and other forms of content. It is based on usernames rather than smartphone numbers. Kik is located in Ontario, Canada, which establishes an interstate/international nexus to all Kik message communications. Kik does not see or store the text of conversations, and chat logs are

automatically deleted within a short period. If deleted from the individual phone, content is not available from Kik.

25.     When M1's laptop computer was examined, a large volume of evidence was located within the hard drive which provides direct support of the myriad violations of federal law alleged herein. The computer's hard drive contained four files which represent images of M1's IPhone contents made when her IPhone was synchronized with her laptop computer. Among the most significant data recovered were almost 1000 pages of Kik communications.

26.     The evidence outlined below establishes that the parties to these Kik exchanges recovered from M1's laptop computer are M1 and Totoro. In addition to the fact that the messages were recovered from a synchronization of M1's IPhone to her laptop computer, her identity as one party to the exchanges is established by the self-photographs that she sends in these Kik communications, in a context indicating that they are self-photographs, the fact that the other party consistently calls her by name or nickname, and the contextual content of the messages. The content of the Kik messages exactly mirror events in the lives of M1 and Totoro at the time of the messages, confirmed by this writer, that include such things as the on-going difficulties M1 and Totoro were having with M1's parents, their student/coach relationship, their age differences, the sexual the relationship they were trying to hide from M1's parents, Totoro's financial difficulties, and M1's mother's addiction problems.

27.     Totoro's identity as the other party to the exchanges is established despite his use of various user names. For example, when he used the name Brad Most, with the email address dolphinfan1121, he attached a photograph of himself, in a context that established that it was a self-photograph, and M1 commented on his tan. When he used the name Len Nemoy with the

email address spock1121, or the name Lenny Nimoy, with the email address startrek1121, he

makes frequent reference to M1's plans for tennis training and tournaments, her injuries, therapy,

stretching, money conflicts with her parents, family squabbles between M1 and her parents, and

he details their travel plans which coincides with their actual shared travel schedule, which the

affiant has confirmed. He also forwarded photographs that establish the identity of the parties.

For example, when using the name Len Nemoy the following conversation occurs:

M1: I picture of u would relax me a lot

M1: But u won't do that

***

Totoro [T]: Ill send uboold one

M1: U have so many pics of me to look at and I never get any

T: Okie

M1: Anything works

T: [a photo of the top portion of Totoro's head and face with his hair in an upswept style is then sent]

M1: Omg really that one lol
    Send me my fav one

T: [a photograph of M1 and Totoro sitting in a car is then sent. They both have colorful M&Ms protruding from the end of their noses]

M1: Yah!!

T: So.funny

***

M1: Please never delete any of these pictures
    I wanna have that m&m one 20 years from now

11

28.    The Kik messages recovered from the four synchronizations of M1's IPhone represent some of the communications between M1 and Totoro that occurred over approximately 11 months of their 30 month relationship, which began in spring 2012. Throughout these recovered Kik messages, as detailed more fully below, the parties consistently refer to each other by name, M1's name or nickname, Joe or Joey, and exchanged self-photographs. Affiant has met both Totoro and M1 and has identified the photographs included in the extensive Kik exchanges as photographs of Totoro and M1.

29.    As noted above, four files resulting from synchronization of M1's IPhone were recovered by the forensic examiner. The first synchronization was initiated on 12/6/2012 and last modified on 6/5/2013, and Kik text messages extending from 3/1/2013 at 03:35:06 to 6/5/2013 at 21:44:27 were recovered.

30.    M1's IPhone, with assigned call number 610-724-0976, represents one side of the conversation, and that fact is evidence that she is a party to the conversation that occurred on her IPhone. The other party to the conversation used the name Brad Most, with username dolphinfan1121.

31.    The files recovered from the first synchronization, indicate, that in addition to the Kik messages reviewed herein, there were a very large number of Skype messages between the parties. M1's contact list includes the name Brad Most with a listed telephone number 305-792-8793. During the recovered Kik message exchanges, the parties refer to one another numerous times by name, M1's name or nickname, and "Joe" or "Joey." In addition, there were approximately 1068 images, 62 videos, 8212 messages, 3678 KIK messages and 197 Skype messages recovered from the 12/6/2012 synchronization between M1's IPhone and her laptop

computer.

32.    The files from this first synchronization file contain repeated references to M1 and Totoro by name. For example, during conversation on 3/17/2013, M1 addresses Totoro by the name Joe or Joey four times. On 4/4/2013, Totoro refers to himself as Joe. On 3/2/2013, Totoro addresses M1 by name or nickname twice. During exchanges on 4/8/2013 and 4/9/2013, M1 sent Totoro three pictures of herself, and Totoro sent five pictures of himself back to her. On 4/12/2013, M1 sent an additional three pictures of herself. At the time of the conversations, Totoro was using the name Brad Most/dolphinfan1121. From the context of the conversations, the names referred to in conversation, the pictures attached, and the additional evidence outlined below, it is clear that M1 and Totoro are the parties in the myriad KIK messages.

33.    The second synchronization of M1's phone to her laptop computer was initiated on 1/6/2013, and last modified on 1/6/2013, and Kik text message conversations extending from 1/4/2013 at 19:34:25 to 1/5/2013 at 20:46:28 were recovered. The other party to the conversation used the name Brad Most and/or Bradley Mosteller, using the username(s) dolphinfan1121 and bmost respectively. Bradley Mosteller is used on 3/1/2013 until 9:58:11 and then again from 22:57:01 until 3/2/2013 at 2:28:41. In one exchange after when the user name suddenly changed from Brad to Bradley, M1 commented on the name change and the exchanges between the parties continued.

34.    The files recovered from the second synchronization, indicate that in addition to the Kik messages reviewed herein, there were a very large number of Skype messages between the parties. There were approximately 127 images, 6 videos, 1484 messages, 639 KIK messages and 49 Skype messages recovered from the 1/6/2013 synchronization between M1's IPhone and

her laptop computer. M1's contact list includes the name Brad Most with a listed telephone number 305-792-8793. M1 used various email accounts for communicating that contained variations on her name first and last names. The files from this second synchronization contain repeated references to M1 and Totoro by name. For example, during conversations between 1/4/2013 and 1/5/2013, Totoro addresses M1 by name or nickname at least seven times. During the same period, M1 addresses him by the name Joe or Joey at least six times. On 1/5/2013, Totoro refers to himself as "Homeless Joe." Affiant is aware that Totoro has not had a permanent address for a number of years. At the time of these conversations between 1/4/2013 and 1/5/2013, Totoro was using the name Brad Most/dolphinfan1121. From the context of the conversations, and the names referred to in conversation, and the self-photographs exchanged, it is clear that M1 and Totoro are the parties in the myriad KIK messages.

35. Chronologically, the third synchronization of M1's IPhone to her laptop computer was initiated on 7/31/2013 and last modified on 10/23/2013. These files recovered by forensic examiner from M1's laptop computer revealed Kik text message conversations extending from 9/14/2013 at 21:33:31 to 10/22/2013 at 21:48:56. M1's IPhone with assigned call number 610-724-0976, represents one side of the conversation, and in one of the exchanges, on 9/16/2013, she includes a self-photograph. It is also clear from the context of the exchanges, that M1 is one party to the conversation. The other party to the conversation used the name Brad Most using the username dolphinfan1121. The parties to the Kik conversation refer to one another by name on multiple occasions. For example, during conversation between 10/22/2013 and 10/23/2013, Totoro addresses M1 by name, or nickname, at least twenty times. During the same period, she addresses him by name, Joe or Joey, at least four times. There were approximately 2028 images,

14

25 videos, 10862 messages, 2002 KIK messages, and 197 Skype messages recovered from the synchronization between M1's IPhone and her laptop computer. M1 also used various email addresses with variations on her first and last name.

36.     The forensic examiner also recovered files from a fourth synchronization of M1's IPhone to her laptop computer, which was initiated on 6/10/2014 and last modified on 6/10/2014. Kik text message conversations extending from 4/13/2014 at 15:58:48 to 6/10/2014 at 18:51:02 were recovered. The evidence summarized above and below indicates that M1 was one party to the conversation. The other party to the conversation was Totoro, which is demonstrated by the exchange quoted above, where on April 25, 2014, at M1's request, he forwarded a photograph of himself and a photograph of them together with M&M in their noses.

37.     During the Kik exchanges recovered from this fourth synchronization, Totoro uses the name Len Nemoy and the username spock1121. On 5/13/2014, the name switched to Lenny Nimoy and the username became startrek1121. The forensic examination tool indicated that in addition to the Kik messages reviewed herein, there were Skype messages between the parties. During the fourth synchronization of these KIK chats, the parties to the conversation refer to one another by name on multiple occasions. For example, during conversation between 4/24/2014 and 4/25/2014, Totoro addresses M1 by name, or nickname, at least seven times. During the same period, she addresses him by the name, Joe or Joey, at least nine times. Between 5/22/2014 and 6/10/2014, Totoro addresses M1 by name, or nickname, at least nine times. During the same period, M1 addresses Totoro by the name, Joe or Joey, at least three times. And, as noted above, on 4/25/2014, Totoro sent M1 a photograph of himself and a photograph of both of them together in a car. On 5/4/2014, M1 sent three photographs of herself to him. On 5/22/2014, Totoro

15

wrote, "Ill be your friend and Coach ill do it for u." On 6/10/2014, M1 sent two photographs of herself to Totoro. On 5/11/2014, Totoro sent 27 pictures of M1 to an unspecified address. At the time of the conversations, Totoro was using the name Len Nemoy/spock1121. From the context of the conversations, the names referred to in conversations, and the photographs sent and received during these Kik chats, it is clear that M1 and Totoro are the parties in the myriad KIK messages. During other conversations, Totoro was using the name Lenny Nimoy/startrek1121. From the context of the conversations and the names referred to in conversations, the context of the conversations related below, and the attached photographs, it is clear that M1 and Totoro are the parties in the myriad KIK messages. In this fourth synchronization file, there were approximately 2587 images, 61 videos, 43922 messages, 3005 KIK messages and 197 Skype messages recovered from the synchronization between her IPhone and her laptop computer. M1 used the various email accounts that represented a variation on her first and last names.

38. Recovered Kik messages exchanged between the parties beginning on January 4, 2013, recovered from the second synchronization of M1's IPhone, refer to an incident that occurred while M1 and Totoro lived together in Aventura, Florida, ostensibly for tennis training. During these exchanges, Totoro was using the Brad Most name and dolphinfan1121 user name. The background of these messages is as follows. Totoro and M1 had departed Pennsylvania on or about 11/1/2012 en route to Columbia, South Carolina and then on to Aventura, Florida. Totoro drove M1 in his personal car. M1 and Totoro lived alone in an Aventura, Florida condominium for about a month and there were several visits from M1's parents. On 12/26/2012, M1's parents, P1 and P2, arrived in Florida for a visit. While cleaning the two bedroom condominium, P2 found condoms in Totoro's bedroom. P2 also found some of M1's

clothing in his bed. P2 was highly alarmed by her findings, and she drew logical conclusions of impropriety by Totoro toward her then 14 year-old daughter. During an ensuing confrontation, Totoro moved into a nearby hotel while P2 and M1's sister stayed in the condo. M1 and her father [P1] then flew back to Pennsylvania on or about 1/3/2013. While M1 was back at home in Delaware County, Pennsylvania, Totoro continued living in Florida, and they communicated via telephone and the Internet, to include the KIK communications some of which follow:

On 1/4/2013 at 19:35 M1's phone communicated with Totoro, who was using the name Brad Most, and the user name dolphinfan1121. "Brad Most has added you to the conversation." She sent a sketch," I (heart symbol) you!!!"

At 20:01 he said, "Ur sexual. Call my 305 number."

At 21:35 she responded, "Joe! My mom texted my dad that she has evidence on the video they took that we had a sexual relationship." He responded, "Ok well that's noy possible. I have cum on my sheets from masturbation. And on my socks." She asked, "Anything else? Are you sure?" In responding, Totoro again referred to M1 by her nickname and said, "No we never had sex in there. Nothing." He then instructed her to "Just deny." As the conversation continued, she addressed him as Joey, and he addressed her by her nickname.

At 22:44 she asked him to "Please think if there is any evidence."

At 23:43 after reminding her to take her (birth control) pill, Totoro texted, "I feel like ill never see uvfor three years." M1 responded, "I feel the same way. Sorry I was just talking to my dad." Totoro added, "Ill die if he goes against us. Can u skype me I m feelinf so sick." She responded, "He thinks my mom is gonna have me go to doctors to get a pelvic exam to see if im a virgin which is dumb." Totoro instructed, "I know say to doctor u have used toy and fingers

and boys fingers in the part. Past." M1 countered, "Not boys fingers. Just mine." He added, "U

should say that. Im just saying U should say toy then." A short time later Totoro wrote, "Btw

just read no way a doctor can prove u r virgin aftet madterbayion on tampon. Unless ur hymen is

intake which it wasn't btw." He then said, "Btw some girls r born without hymen too."

39.     The following morning, the conversation resumed:

On 1/5/2013 at 9:09, Totoro wrote, "And say u mastebate so u don't hook up because ur

focusing on tennis." M1 replied, "Ok." Totoro provided additional direction later in the same

exchange. At 9:14, as the conversation continued, Totoro said, "Im going yo make urself fuck u

good in the shower." M1 responded, "OK." Totoro then asked, "So why when I told you to do it

hard what were u doing?" M1 responded, "Idk. Lol." He asked, "Like when I woukd say

faster?" She responded, "My clit." He then said, "It looked but u had both hands." She

explained, "I put my finger in a little but i was scared haha." He responded, "Lets cum now then

we can sleeo. Sleep."

(From the context of the exchange above, it appears that Totoro and M1 were discussing an

occasion wherein she was masturbating in the shower. He was giving her direction while

observing her remotely, almost certainly through the Internet. Logically, if both of her hands

were engaged in the process, she was not filming the activity with her cell phone but most likely

had set up her laptop to film the event. Although no digital evidence of the masturbatory event

remains, the behaviors detailed in the conversation would constitute violations of 18 U.S.C.

§ 2252(a)(2) (Receipt), and 18 U.S.C. § 2422(b) (Enticement). In the exchange, Totoro also

admits his prior sexual contact with M1, who was 14 years old at the time.)

40.     The conversation then continued. M1 said, "I will do it in shower. I promise."

18

Totoro asked, "Wil u call me?" She said, "Yes." He continued, "So I cab tell u what to di. Do. I want u to make it feek like me." M1 said, "U need to get me really wet though."

At 9:20 Totoro wrote, "Im making u fuck urself good today." She responded, "Yeah i know. Im scared." He said, "Really good!! Scared of what?" M1 responded, "Like i put my fingers in wrong or something." She said, "U can't baby. She said, "Ok. I love you." He added, "I've fucked u with my fingers rem? Love u doll."

At 9:25 he commented, "Just read funniest articke on hymen. He later directed, "305 delete convo."

(From the text of the conversation, Totoro is directing her to delete any record of the conversation made to/from his "305" contact number. In each of the four synchronizations of M1's IPhone, M1's contact list includes the name Brad Most with phone number 305-792-8793. Totoro's sexually graphic conversation in this exchange would constitute a violation of 18 U.S.C. § 2422(b) (Enticement).

41.    At 10:35, Totoro uses M1's nickname and states, "in case ur mom wcer says u toldher just to get u to say ir vice versa ill never say anything. I mean told her." She responded, "Ok and same to you." He added, "Abd if sge ever takes y r phone and texts me. Don't text me to ny reak number ecer. Ever. Here or whTs app. My real 973 number don't use unless its how e u doing." M1 acknowledged, "Exactly. Ok so if its anything else u know its not me."

(Totoro is specifically instructing her to limit any contact with the cell phone number to which he is the subscriber in an effort to prevent any incriminating evidence on that cell phone account. The cell phone number subscribed to by Totoro and associated with the Samsung cell phone seized from him at the time of his arrest is 973-229-1189. WhatsApp is a mobile messaging app

19

similar to Kik.)

42.    At 11:20, the conversation continues, and the topic switched to strategizing how to respond to M1's mother's accusations and the discovery of M1's clothing in Totoro's bed in the Florida apartment. Totoro warned, "They think u will break down. Be tough. Love u doll." She promised, "I will be."

At 11:24 he cautioned, "Rem delete cinvo. Convo."

At 12:45 he suggested, "And tekl ur mom u will say she takes drugs and drived and dtinks if she doesn't nlknock this off and she forged prescriptions."

At 14:02 he suggested, "Thars the thing u need to tell yr mom ull testify against her for lying drugs threatening and she will never get custody. They wull never go against the 15 great old kid whos mom has been alcoholic abd drugs. Year."

(At the time of this exchange, M1 was back in Delaware County, Pennsylvania while Totoro remained in Florida. At 19:34 Totoro told her that he is at a Fairfield Inn. In the above exchange, Totoro acknowledges that he is aware that she is 15 years old. In fact, she would not turn 15 years old until February 19th of that year. Affiant is aware that M1's mother has an addiction problem.)

43.    At 15:13, Totoro directs M1 to "Delete convo." M1 responded, "Hey Baby. Can we have a code word that i text u in case I want u to stop texting me like if i have to delete our conversation like this morning?" He responded, "Hey ok."

At 20:39 he said, "Call me to brad. But we need to switch numbers. So the arent that many calls u shoy ld call me with ur googke voice number to my google voice." She then said, "Ok ill try calling now from google."

20

44.     On 3/2/2013 at 2:32, M1 asked, "Did u turn the alarm off on ur phone for my pill? U didn't remind me tonight?" Totoro responded, "It's a new phone." After Totoro asked her to contact him via Skype, at 2:38 M1 replied, "I don't think skype is good idea." Totoro responded, "I miss u. Why?" She responded, "U too so much. Just don't want to. I feel so anxious right now like weird." Totoro then said, "Whatever, u used to beg me to skype I always did fine night then." She said, "Wait. I know i did but skype saves stuff." Totoro responded, "No it doest nit if u delete and im brad most duh." She said, "Ok but its obvious what we talk about." At 2:41 M1 wrote, "I trust you. That skype doesn't save anything. If u were so sure about kik not saving anything u would have no problem talking about whatever." He responded, "Kik saves nothing I checked." She asked, "So why do u care?" Totoro answered, "It's the iphone.I worrired about. Its fine."

45.     On 3/4/2013 at 00:25, Totoro wrote, "I miss looki.g in ur eyes when u r on top of me I feel like im in another world. Like one person." M1 agreed, "Its incredible. And when ur on top. Same feeilmg." Totoro then added, "M1 when u r on top I feel like I am making love looking in ur eyes when im on top or doggie I feel the passion of hot sex and want u to cum so hard. She responded with a "heart symbol" and added, "Its amazing." Totoro commented, "The first time we say ok for me to cum in side I want u on top. Behind or me on top im might fuck u to death lol." She asked, "Are u sure u want me on top?" He responded, "Just got so hard yes positive." She asked, "Whats ur reasoning?" Totoro responded, "Because I want u so close to loking in my eyes as first u cum hard then I do kissi.g u. And u lay in top of me." M1 then asked, "For some reason recently my orgasms on top haven't been nearly as good as the other ones how do we fix that? Like I had that one amazzingg one on top then all of the doggies and

21

some u on top have been knocking that out." He said, "But that s because I am fucking u so deep the other way and the toy. On top its just us." She agreed, "Right." He added, " I cant hit ur g spot in top as well but for me its so much more emotional. When u cum like that. Im so hard now lol." She continued, "I mean from the clit its not as good on top recently…maybe its cause ur hairy or prickly or something." Totoro added, "Ive been shaved last few times but maybe its more sensitive." She said, "Hmmm. Maybe." He added, "Because we had bren fucking so long too. Like not quickies." M1 said, "I feel like I can do it when we both fuck hard but then we slow down so you dont cum. Yeah that's true." Totoro said, "Problem too I have less control with u on top. Way to fix that is to get me to cum first doggie or me on top then try u.on top." She commented, "Interesting." He added, "I cant last with u on top because im so in love with u and im looking at u and u get so close to coming I dint want to stop. ThTs why if yr on top and ur start cuming I one day wint pull out and ill cum as u doand can keep goung."

(From the context of the conversation, both parties are clearly acknowledging sexual contact on multiple occasions. While the specific dates of sexual contact are not clearly indicated, at the time of the conversation, M1 had just celebrated her fifteenth birthday.)

46.  On 3/6/2013 at 02:23 M1 wrote, "I want you*. Really badly." He asked, "How? Give me something good to read." She clarified, "Every which way. I wanna fucking tear u apart friday like so badly. I wanted u to keep fucking me so badly earlier. I want u to fuck me harder than ever doggy. Of course after I ride u really good and cum and u cum." Totoro then added, "I could have cum in u so easy today." The graphic exchange continued and at 2:42 Totoro wrote, "Btw I want to cum in ur hot ass some day just once…Id be so gentle."

On 3/17/2013 at 19:41 M1 commented, "I luv yaa. Thanks for a wonderful day. Hotel was nice.

Sex was beyond good."

(This exchange is not listed as a separate offense in the complaint because it occurred while M1 and Totoro were in Florida, and it is included solely as additional proof of the sexual contact and/or intercourse that was occurring between M1 and Totoro when M1 had just turned 15 years old.)

47.     On 4/8/2013 at 18:42 M1 sent Totoro a picture of herself standing in her bedroom at her parents' house in Delaware County, Pennsylvania looking into a mirror. M1's father showed Affiant M1's bedroom and Affiant is able to identify the room depicted in the photograph as M1's bedroom. In one photograph, M1 appears to be clothed and wearing a dark color skirt. The photo was taken with her cell phone camera. She next said, "My ass says hello." Totoro responded, "In.a skirt.nit baf. Bad." She queried, "Not bad?" He responded, "Yez its my co. Complimate." M1 wrote, "Great compliment." She then added an attached a photo wherein it appears she had removed her shirt, hiked her skirt up onto her hip and she is wearing no underwear. The photo is a close-up of her naked buttocks looking upward from a left hip perspective. Her vagina is not shown. She then asked, "Still not bad?" Totoro responded by sending a picture of himself sitting in a car with a big smile on his face. He commented, "Ur ass.Just got.me hard. She squats." Moments later, she sent another picture of herself wearing the same skirt and a different blouse. The picture was also taken in M1's bedroom. It appears from the context of the messages that Totoro is also in the Philadelphia area and staying at a hotel. He said, "Then maybe ill show u my room. There is a nice tub with a really hard cock waiting for u." She responded, "Maybe ill be lucky enough to get a tour." Totoro answered, "Yes every way I can think of. Hooe ur periid finisged?" She said, "Its still pretty heavy so isk. Idk." He added,

23

"Its ok shoukd be stoppi.g soon." She clarified, "Yeah well I only got it 3 days ago. " He responded, "That's normal ut usually stoos before yr first pill which is thurs."

(From the context of the conversation, Totoro informed M1 that his hotel room was available for a sexual liaison. When M1 said her menstrual flow was still heavy, he suggested that it should stop soon and referenced that observation to the timing of her birth control pill schedule. From the context of the conversation, it is clear that Totoro is inviting her to a sexual liaison at his hotel in violation of 18 U.S.C. § 2422(b) (Enticement). At the time of the internet exchange above, M1 was 15 years old and living in Delaware County, Pennsylvania. Totoro was staying in a nearby hotel.)

    48.    On 4/9/2013 at 18:00 M1 wrote, "I honestly get so turned by ur looks and body especially when ur on top in sex."

At 18:43 M1 wrote, "I LOVE U SO MUCH JOE UR THE BEST THING THATS EVER HAPPENED TO ME AND I COULDN'T ASK FOR MORE I WANT TO SPEND THE REST OF OUR HAPPY WONDERFUL LIVES TOGETHER."

At 19:03 Totoro replied, "U cant wait formy cock in uwhich way after I make u cum with my mouth." She responded, "Hehe ok. Im so horny. U have worked me up so much today." He asked, "Tell me how u want to be fucked. Begraphic its so hot." A short time later she advised that her father was dropping her off at the mall adding, "Omg maybe if he drops me off u can come meet me in the mall." After he requested it, she wrote a graphic description of a fantasy sexual encounter with him.

(Totoro's graphic sexual comments constitute enticement in violation of 18 U.S.C. § 2422(b) (Enticement). At the time of the internet exchange above, M1 was 15 years old and living at her

parents' house in Delaware County, Pennsylvania. Totoro was staying in a nearby hotel.)

49.     On 4/12/2013, Totoro and M1 started texting on Kik at approximately 9:40. They planned to get together, and Totoro was supposed to pick her up but he was not feeling well and was delayed. At 12:11, M1 sent Totoro a close up photograph of her naked shaved vagina with the comment, "She misses you." He responded, "So fucking.hot."

(At the time the photograph was sent, M1 was 15 years old and living at her parents' house in Delaware County, Pennsylvania. This same photograph appears several times in Totoro's Samsung cell phone seized at the time of his arrest. Totoro received that image transmitted, in interstate commerce, and possessed it on his Samsung cell phone in violation of 18 U.S.C. § 2252(a)(2) (Receipt).

50.     On 4/17/2013 at 17:24 Totoro wrote, "My cock misses ur pussy." M1 responded, "My pussy needs ur cock." He added, "I wanted to cum in u so badly but u messed that up." She said, "Poooop. U still can in a few days." Totoro countered, "No nt taking chance u could have ovulated when u missed have to wait tik next month. I coukd always cum in ur ass he he."

At 17:53 M1 sent two attached photos depicting herself naked in her bathroom and in her bedroom with the comment, "I need a tan pronto." Totoro responded, "Yes u do. Still the best ass on the planet." When she asked for a picture in return, he responded, "u ll see me naked soon."

At 19:01 she sent a photo of a dinner plate and food asking, "is this ok for dinner? Chicken, jasmine rice, and veggies." He responded, "Yes id rather have ur sweet pussy for my dinner. Im.losing all my cardio this week. 10 hrs of fucking.in three days." She added, "Ugh id rather starve for a week but get to fuck u every day and taste ur cum." He responded, "So hot. U are

just got hard." She responded, "No u didnt! Omg lol i love u." He clarified, "Yes I did." Totoro then attached a close up photo of that depicts genitalia where the pubic area appears to have been shaved [hereafter shaved penis]. In another Kik exchange, Totoro makes reference to having shaved his pubic area.

(At the time he transmitted this photograph of his naked penis to M1, Totoro was keenly aware that she had recently turned 15 years old. As such, his actions were in violation of 18 U.S.C. § 1470 (Transferring Obscene Materials to Minors). Affiant has identified the bathroom depicted in the photograph as M1's bathroom.

  51. On 5/11/2013 at 12:05 Totoro wrote, "Yes head ache is better had a dream that u were sucki.g my cock and if coure I woke up." She responded, "Good! Now come get me hehe." He added, "Need to get ready maybe we will have two hrs at my hotel and u can finish my dream." She responded, "Maybe" and attached a wink emoticon. Then attached several photos of herself wearing a sports bra and spandex shorts while posing in her bathroom. He responded, "So hot. Im putt ing my cock inu before we play today." She added, "I wasn't trying to be hot lol. Hehe." He responded by attaching a close up photo of a shaved penis asking, "Do u want him?" She responded, "He's soo sexy. Yes."

(Totoro's graphic sexual comments constitute another violation of 18 U.S.C. § 2422(b) (Enticement). At the time Totoro sent the image of his penis to M1, she was 15 years old and therefore, by sending her the picture of his penis, Totoro violated 18 U.S.C. § 1470 (Transferring Obscene Materials to Minors).

  52. On 9/14/2013 at 23:19 during a discussion about clothes and what to wear, M1 wrote, "The first thing I think when I look at clothes is ""I wonder what Joey will think of this.""

Moments later Totoro replied, "Just dress sexy tom oh wait ull be naked lol. Thatcwill be enough." When she countered that she planned to wear tennis clothes, he corrected, "No u won't!!! Only for car ride." She responded, "I know but u said wear something sexy. Ill be laying next to youu nakey and see if u can resist me (heart emoticon). I love how shaved my pussy is. It's like perfect. I love this razor!" Totoro responded, "So hot. I want to eat it good looking at u on top.before my cock goes in.u." She said, "Ok." As the conversation continued, he said, "U need a, spanking." M1 responded, "That. Is. So. Sexy. Yes please (emoticon)." He continued, "Soft ly. To start." She suggested, "Yes and caressing it in between each slap." He continued, "Yes and touching ur pussy gently. Then ill make u get on top of my lips and tongue. Til ur so worked up and then u can slide down on my cock ever so slowly." She agreed, "Omg yes babee." The erotic conversation continued at length and she commented, "Well see if I can take it...it has been a week (wink emoticon). I lovee when u fuck me on my side." Totoro later asked if she had taken her pill on time.

(At the time of the above conversation, M1 was living in her parents' home in Delaware County, Pennsylvania. Totoro was living nearby. They were discussing a planned trip to Hilton Head, South Carolina. Totoro's sexually graphic and enticing comments were made in violation of 18 U.S.C. § 2422(b) (Enticement).

53.     On 9/15/2013 at 00:48 Totoro wrote, "Im.still thinking about how ur pussy is going to taste so sweet." M1 replied, "So sexy." He continued, "I want u to cum on my mouth sometime." She agreed, "I know me too." He added, "I have cum.in urs so many times so hot btw." She agreed, "Yes its amazing (heart emoticon)."

(From the context of the conversation it appears that Totoro is anticipating oral sex with M1 and

27

acknowledging that she has performed oral sex on him "so many times." At the time of the above conversation, M1 was living in her parents' home in Delaware County, Pennsylvania. Totoro was living nearby. They were discussing a planned trip to Hilton Head, South Carolina. Totoro's sexually graphic and enticing comments were made in violation of 18 U.S.C. § 2422(b) (Enticement).

54. On 10/21/2013 at 21:37 M1 wrote, "The other night u were like no more intimacy. U couldn't go a week (wink emoticon) and neither could I. Hehe." Totoro responded, "If uv cant handle the pressure. Is what I said. Im.fine with pressurr." She said, "I honestly have more than u." He countered by calling her by her nick name and states, "U don't go to prison I win!!" He continued, "I said I have more to lose. My coaching and freedom. Thats it. Im.sorry if u can't see that. "She agreed, "No I can sweetie. U do have more to lose I agree."

55. On 4/25/2014 at 00:41 M1 texted, "I picture of u would relax me a lot. But u won't do that." Totoro responded, "Means urv really sexy innjapagibersiag." She said, "Oh really does it?" He clarified, "Jappojiberish. Ill send uboold one." She responded, "U have so many pics of me to look at and I never get any. Okie. Anything works." In response, he sent her a photo showing his eyes, forehead and hair. She commented, "Omg really that one lol. Send me my fav one." He then sent her a picture where each of them is depicted riding in a car with what appears to be green or blue candies stuffed in their nostrils.

On 5/10/2014 at 18:42 he wrote, "Att told me ib have to do master reset grrrr." She responded, "Wow. Wait does that mean all ur stuff will be erased?" He answered, "Yup. Other than what s on.sd card."

(From the context of the conversation, it appears that Totoro spoke with an attorney and may

28

have been advised to perform a master reset of his phone to clear the history from the phone's internal memory.)

56.    On 6/9/2014 at 18:26 there is an exchange wherein M1 and Totoro are discussing lodging arrangements. In these exchanges, Totoro appears to advocating for a one bedroom place and M1 states that a two bedrooms would be a better arrangement to hide their relationship from her family. She specifically mentioned, "When my dad wants to FaceTime. Or grandparents. They would want a video of whole apartment."

At 20:34 M1 wrote, "Baby I want u so badly right now." Totoro responded, "Yes whatever u need." She continued, "Well I need u and ur hands squeezing my tits but I can't have that can I? Omg I just had the best masutbating orgasm." He said, "U suck couldn't wait til uvsee ne!!! (Emoticon)." The graphic conversation continued for approximately 10 minutes. He said, "Id love u to video urself. Then I could use that as my porn." She responded, "lol." He added, "Imnserious."

(At the time of the conversation, M1 was 16 years old and living at her parents' home in Delaware County, Pennsylvania. Totoro's request that M1 take and provide video of herself for him to view as "his porn" is a violation of 18 U.S.C. § 2422(b) (Enticement).

57.    On 6/10/2014 at 13:09 Totoro wrote, "Got us a flight.living sat out of Harrisburg." (6/14/2014 is a Saturday).

At 15:18 M1 wrote, "I need to do something that gets my mind off this. I'm gonna shower. I can't so anymore homework. I've been doing essential standards all day. I'll shower and then finish it." Totoro responded, "Ok (wink emoticon). Have a good shower again." She added, "I'm sorry I can't send u a good pic. (emoticon) I haven't showered in like 2 days lol." From the

29

context of the conversation it appears that she has a back injury. He said, "Yes u can just don't arch lok. Lol." It appears that he is at an airport waiting to depart. He said, "Maybe ill.land to see some exciting (wink emoticon) things. Nc." She said, "Good luck! And then attached a naked photo of herself standing in her bathroom shower. Her face, right shoulder and breasts are visible. He commented, "Sexy er every day. I need a good one without arching. Lol. " She then sent another naked photo with the comment, "Candid with water running in me. ( It appears that she is holding a shower wand in her left hand pointed toward her groin and her right arm is crossed over her breasts." Totoro then asked, "Butt pLease lol. Just do a squat. Keeping back straight. Naked squatting. Lol. Id train u three hours a day to see that." She then sent a close up photo of her naked buttocks and commented. "That's all I can do." Totoro commented, "So sexy." She said, "Ur such a pig." He added, "Ouxh. Just do squat pleeeeese if it doesnr hurt. The conversation continued and at 15:41 he said, "Maybe take some laying down pics?" He added a wink emoticon.

(At the time of this exchange, M1 was 16 years old and living at her parents' house in Delaware County, Pennsylvania. Totoro's request that M1 take and provide pictures/video of herself masturbating in the shower for him to view as "his porn" is a violation of 18 U.S.C. § 2422(b) (Enticement). The above described photographs, which were received by Totoro, would also constitute violation of 18 U.S.C. §§ 2252(a)(2) (Receipt) and 2252(a)(4) (Possession of Child Pornography).

58.     When the SD card contained within the Samsung cell phone possessed by Totoro at the time of his arrest was examined, a large volume of evidence was located within the SD card which provides direct support of the myriad violations of federal law alleged herein. That

30

storage media device contained approximately 24,325 images and five videos which appear to be encrypted. Among the images are approximately 65 pictures of Totoro. There are approximately 666 pictures of M1 on the card. Approximately 320 of the pictures taken of M1 would be considered erotica. Approximately 140 of the pictures taken of M1 depict her naked. More than four the pictures of M1 would be considered child pornography. These include: 1) a masturbatory pose in front of mirror when she is naked, has a phone in her left hand and has her right hand positioned on the area of her vagina in a sexual provocative pose; 2) a close up photo of her buttocks spread revealing rear view of her labia; 3) a photograph depicting her naked with legs fully spread, with shaving cream on public area and breasts exposed; 4) a close up photograph of her shaved vaginal area and labia. This latter photograph found in Totoro's Samsung cell phone is the same photograph that M1 forwarded to Totoro over the Internet during a Kik message exchange on 4/12/13.

59.    All or most of the pictures of M1 were imported onto the SD card on Totoro's Samsung cell phone on or about 3/19/2014. At time the pictures were taken, M1 was between the ages of 14-16 years old, and Totoro was keenly aware of her birth date and age, evidenced by his reference to her age in some of the Kik messages. None of the naked pictures of M1 contained within Totoro's Samsung cell phone appear to have been taken with this Samsung cell phone.

Naked pictures of Totoro were also found on the SD card of his Samsung cell phone. Included among these naked photos are six pictures of a naked and shaved penis. The forensic examiner determined that these latter photographs were taken with Totoro's Samsung cell phone. These six shaved penis photographs do not appear to be the same shaved penis photographs that

were sent to M1 via Kik on April 17, 2013 and May 11, 2013. Seven full body naked pictures of Totoro, that were found on the SD card of his Samsung cell phone, were taken on 8/24/2014. There is also a screen photograph on the SD card of his Samsung cell phone that appears to have been taken from an internet search pertaining to "Missing a dose of birth control pills."

**CONCLUSION**

Based upon the information above and as outlined in the attachments, I respectfully submit that there is probable cause to believe that Joseph P. Totoro, II has committed violations of Title 18 United States Code, Sections 1470, 2252(a)(2), 2252(a)(4)(B), and 2422(b). Therefore, I respectfully request that the attached warrant be issued authorizing the arrest of Joseph P. Totoro, II.

JAMES P. FITZGERALD
Special Agent, Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 7TH DAY OF APRIL, 2015.

HONORABLE MARILYN HEFFLEY
United States Magistrate Judge

32