IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. 15-291 |
| JOSEPH P. TOTORO, II, | |
| *Defendant.* | |

**PAPPERT, J.**                                                                                         January 10, 2017

**MEMORANDUM**

On April 7, 2015 the United States of America filed a criminal complaint against Joseph Totoro, II stemming from an alleged relationship he maintained with a minor in which the two used their cellular phones to exchange, among other things, inappropriate images of themselves. (ECF No. 1.)  The Government charged Totoro with: (1) transfer of obscene materials in violation of 18 U.S.C. § 1470; (2) receipt of child pornography in violation of 18 U.S.C. § 2252(a); (3) possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B); and (4) use of an interstate commerce facility to entice a minor to engage in sexual conduct in violation of 18 U.S.C. § 2422(b).  (*Id.*)  On June 25, 2015 a grand jury indicted Totoro on these counts in addition to charges of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e) and blackmail in violation of 18 U.S.C. § 873.  (ECF No. 15.)

Totoro moves to suppress all evidence gathered from his cell phone pursuant to two separate search warrants issued by United States Magistrate Judges Marilyn Heffley and Carol Sandra Moore Wells.  Totoro also consented to the search of his phone.  Totoro contends that neither warrant was supported by probable cause and now claims that his consent was invalid.

1

The Court held an evidentiary hearing and oral argument on Totoro's motion on January 5, 2017. For the reasons set forth below, the motion is denied.

**I.**

The search warrants, their attached affidavits of probable cause and Totoro's signed consent form comprise the only exhibits admitted into evidence at the hearing. (Tr. of Hr'g, at 50:15.) According to both affidavits, on January 11, 2015 the father ("P-1") and mother ("P-2") of a minor ("P-3") met with the FBI to provide details of an alleged extortion plot by Totoro of which they were the puported victims. (Gov.'s Ex. 1, hereafter "Affidavit 1," at 3.) P-1 and P-2 had employed Totoro as P-3's private tennis coach since April 2012. (*Id.*) At various points over time, disagreements arose between P-1 and P-2 and Totoro over his compensation. (*Id.* at 3–4.) P-1 and P-2 ultimately fired Totoro in the fall of 2014. (Gov.'s Ex. 3, hereafter "Affidavit 2" ¶ 35.)

In December 2014, after a payment of severance and continued communication between the parties, Totoro demanded that P-1 pay him an additional $60,000. (Affidavit 1, at 5.) Totoro, who possessed sensitive documents related to P-1's job with a multinational corporation, emailed P-1 on December 30. (*Id.* at 3.) In the email, Totoro threatened to release the sensitive documents, notify the Internal Revenue Service about tax crimes allegedly committed by P-1 and also notify the Department of Homeland Security of suspected money laundering and immigration violations committed by P-1. (*Id.* at 5.) Totoro made similar threats in a text message sent from his cell phone to P-2. (*Id.*)

Totoro continued to threaten P-1 and P-2 through text messages and a series of emails. (*Id.* at 6.) On January 13, 2015, working with the FBI, P-2 participated in a consensual, recorded telephone call with Totoro, during which Totoro repeated his threats and agreed to meet P-2 at the

2

King of Prussia Mall the following day. (*Id.*) Totoro explained that P-1's sensitive documents were on his cell phone and he promised to delete them in P-2's presence in exchange for the $60,000.

On January 14, 2015 members of the FBI's Delaware Valley Violent Crime Task Force, including Officer Timothy Garron of the City of Chester Police Department, arrested Totoro pursuant to a warrant after he arrived for the scheduled meeting with P-2. Task force members saw Totoro sitting in his car using his cell phone. (Tr. of Hr'g, at 13:22–23; 14:9–13.) Officer Garron pulled Totoro from the car and placed him on his stomach. (*Id.* at 14:15–15:7.) While he was being arrested, Totoro threw his cell phone under his car.[1] (*Id.* at 15:5–7.) The task force members turned the phone over to the FBI; they did not examine it. (*Id.* at 16:11–13.)

After his arrest, Totoro told investigators that P-1's sensitive documents were contained within his email on the phone. (Affidavit 1, at 7; Tr. of Hr'g, at 44:17–23.) On January 16, 2015 FBI Special Agent James Fitzgerald[2] applied for a search warrant of Totoro's cell phone. Agent Fitzgerald attached a detailed affidavit to the application justifying probable cause to search the phone. *See* (Affidavit 1). Magistrate Judge Heffley approved the search warrant application on the same day for the purpose of seizing evidence in violation of 18 U.S.C. § 875(d) (prohibiting communication of threats in interstate commerce).

---

[1] In a footnote to its response to Totoro's Motion, the Government argues that Totoro abandoned the phone and therefore does not have a reasonable expectation of privacy under the Fourth Amendment. *See* (Gov. Resp. to Def.'s Mot., at 6 n.3, ECF No. 66); *see also Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. Fulani*, 368 F.3d 351, 354 (3d Cir. 2004). At the hearing, Totoro's counsel contended that the evidence did not clearly establish Totoro's intention to abandon the phone. (Tr. of Hr'g, at 51:3–19.) The Court need not determine whether Totoro abandoned his phone because the Government did not search the phone prior to obtaining a warrant.

[2] Agent Fitzgerald recently retired from the FBI. (Tr. of Hr'g, at 4:15–19.)

On January 21, 2015, while in custody, Totoro and his attorney Catherine Henry, Esquire of the Federal Community Defender Office met with investigators for a proffer session.[3] (Affidavit 2 ¶ 22.) At this session, Totoro and his lawyer each gave their written consent for investigators to search his cell phone. *See* (Gov. Ex. 2, hereafter "Consent Form"). The consent to search was unlimited—the signed consent form permits a "complete search" of Totoro's cell phone. (*Id.*) Additionally, by signing the form, Totoro agreed to allow the FBI to delete all files related to P-1, P-2 and P-3.[4] (*Id.*)

During the course of their search of Totoro's phone, FBI investigators discovered a large number of images of P-3 indicative of child pornography. (Affidavit 2 ¶ 23.) Upon discovering these images, the FBI stopped their search and promptly sought a new search warrant which would appropriately expand the scope of the original warrant. (*Id.*) Agent Fitzgerald attached a detailed, thirty-page affidavit to his search warrant application in which he explained the facts of the investigation that supported a finding of probable cause. *See* (Affidavit 2). On February 13, 2016 Magistrate Judge Wells approved the search warrant for the purpose of seizing evidence in violation of various child pornography statues including 18 U.S.C. §§ 2251, 2252, 2252(A), 2242 and 2243.

## II.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. A search pursuant to a warrant must be supported by probable cause. *See United States v. Burton*, 288 F.3d 91, 102 (3d Cir. 2002) (citing

---

[3] On June 29, 2016 Ms. Henry filed a motion to withdraw as Totoro's counsel. After holding a hearing on September 7, 2016 the Court granted the motion to withdraw and appointed George Newman, Esquire as Totoro's counsel. *See* (ECF Nos. 51–53).

[4] The FBI sought Totoro's consent despite already having a search warrant because it hoped Totoro would disclose his phone's password. Without the password, the FBI was unable to access certain parts of the phone's memory. (Gov.'s Resp. to Def.'s Mot. ¶ 30, ECF No. 66.) After signing the consent form, Totoro said that he couldn't remember the password. (Affidavit 2 ¶ 22.)

*Payton v. New York*, 445 U.S. 573, 586 (1980)).  An issuing judge may find probable cause when "viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  The judge "is to make a practical, commonsense decision," *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (quotation omitted), and "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Hodge*, 246 F.3d at 305–06 (3d Cir. 2001) (quotation omitted).  "The issuing judge may also give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found."  *Whitner*, 219 F.3d at 296 (quotation omitted).

In evaluating the issuing judge's probable cause determination, the Court conducts a deferential review, *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (citing *Gates*, 462 U.S. at 238–39), and considers only the facts that were before the issuing authority, *i.e.*, facts contained in the affidavit of probable cause. *Jones*, 994 F.2d at 1055.  Importantly, the Court does not decide probable cause *de novo*, but rather determines whether the affidavit provides a "substantial basis" to support the conclusion that probable cause existed.  *Stearn*, 597 F.3d at 554; *see also Gates*, 462 U.S. at 238.  If a substantial basis exists to support the probable cause finding, the Court must uphold that finding even if it or a "different magistrate judge might have found the affidavit insufficient to support a warrant." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993).  Although the district court should not simply "rubber stamp" the issuing judge's conclusions, *Whitner*, 219 F.3d at 296 (citing *Jones*, 994 F.2d at 1055), the Supreme Court has directed that "doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Stearn*, 597 F.3d at 554 (citing *Gates*, 462 U.S. at 237

n.10). The defendant bears the burden of establishing that his Fourth Amendment rights were violated. *United States v. Acosta*, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1978)).

### III.

#### A.

The facts contained in the affidavit attached to the warrant application support a finding of probable cause for the initial search of Totoro's phone during the blackmail investigation. In his affidavit, Agent Fitzgerald explained that Totoro gave a statement following his arrest in which he admitted that P-1's sensitive documents were contained within an email on his phone. (Affidavit 1, at 7.) Totoro also disclosed this fact during a recorded conversation with P-2 on January 13. (*Id.* at 6.) Additionally, P-2 told investigators that Totoro had sent her threatening text messages from his phone on at least three occasions: January 4, 6 and 13. (*Id.* at 5–6.) These facts support Judge Heffley's finding of probable cause because, considering Totoro's direct admission in addition to evidence gathered from P-2, there was a "fair probability" that evidence of blackmail would be found on Totoro's phone. *Gates*, 462 U.S. at 238. Magistrate Judge Heffley had a "substantial basis" to find probable cause and issue the initial warrant. *Id.* (quoting *Gates*, 462 U.S. at 238).

#### B.

After the first warrant's issuance, Totoro, represented by counsel, consented to a search of his phone that was unlimited in scope. Consent is a "well settled . . . exception[] to the requirements of both a warrant and probable cause." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The government has the burden of proving that the consent relied upon was "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *see also United*

*States v. Price*, 558 F.3d 270, 277–78 (3d Cir. 2009).  To determine whether consent is valid, courts consider specific factors, including "the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment."  *Price*, 558 F.3d at 278.  Also relevant is "the setting in which the consent was obtained [and] the parties' verbal and non-verbal actions," in addition to the totality of the circumstances.  *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003).

Totoro claims his consent was invalid but he does not support this assertion with any evidence or legal argument.[5]  (Def.'s Mot. ¶ 4, ECF No. 65.)  Evaluating the totality of the circumstances, Totoro voluntarily consented to an unlimited search of his cell phone.  The government introduced a copy of the signed consent form and Agent Fitzgerald testified that both Totoro and his counsel signed the form in his presence.  (Consent Form; Tr. of Hr'g, at 36:1–16.)  This occurred at a proffer session which lasted no more than two hours.  (Tr. of Hr'g, at 33:15–16.)  While Totoro's legs were shackled to the floor during the meeting (because he was still in custody), he was not handcuffed.  (*Id.* at 33:17–25.)  Moreover, his attorney was present the entire time and Agent Fitzgerald allowed Totoro and his counsel to speak privately before signing the consent form.  (*Id.* at 34:7–22.)

Agent Fitzgerald also testified that based on his 26 years of investigative experience, Totoro was not under the influence of any drugs or alcohol and was competent to consent.  (*Id.* at 26:10–27:3; 34:23–35:20.)  Fitzgerald testified that he "had no indication that he was impaired in any way other than he had a cough and told me that he had some sort of pneumonia."  (*Id.* at

---

[5] Local Rule 12.1 requires that "[a]ll motions . . . shall be accompanied by a brief or memorandum of law containing a concise statement of the legal contentions and authorities relied upon in support of said motion."  Totoro's motion with respect to his consent argument does not comply with this rule.  The Court nonetheless fully considered his consent argument.

35:7–9.) This testimony is particularly credible, because months later, when Agent Fitzgerald arrested Totoro for a second time (related to the child pornography charges), he witnessed Totoro under the influence of drugs. (*Id.* at 40:6–42:25.)

## C.

The facts contained in the supporting affidavit are sufficient to support a finding of probable cause for a search of Totoro's phone related to the child pornography investigation. In his affidavit, Agent Fitzgerald explained that during the initial search of Totoro's phone, investigators found hundreds of pictures of P-3—in a large number of which she was either partially or totally naked. (Affidavit 2 ¶ 29.) Agent Fitzgerald immediately ordered a stop to the search and applied for a second search warrant. (*Id.* ¶ 23.) Agent Fitzgerald also explained that a search of P-3's cell phone revealed email communications between P-3 and email accounts associated with Totoro. (*Id.* ¶ 25.) In these email exchanges, Totoro referenced conversations he and P-3 had on a mobile messaging program called "Kik." (*Id.* ¶ 25(c).) A search of P-3's laptop revealed a series of communications on Kik between P-3 and a user believed to be Totoro.[6] Excerpts of these messages were provided in the affidavit. (*Id.* ¶ 26.) They include sexually explicit dialogue in addition to messages in which P-3 sent naked pictures of herself to the user believed to be Totoro. (*Id.* ¶ 26(b) and (c).)

There was a "substantial basis" for Judge Wells to conclude that a "fair probability" existed that evidence related to the FBI's child pornography investigation would be discovered on Totoro's phone. *Gates*, 462 U.S. at 238.

An appropriate Order follows.

---

[6] The username in question was comprised of a series of numbers that was also found in email addresses associated with Totoro. Moreover, P-3 addressed the user in question by the name "Joe," and Totoro's first name is Joseph. (Affidavit ¶ 26.)

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.