IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 15-291 |
| JOSEPH P. TOTORO, III | : |

## GOVERNMENT'S TRIAL MEMORANDUM

I. **THE INDICTMENT**

On June 25, 2015, the defendant was indicted on one count of production of child pornography, in violation of 18 U.S.C. § 2251(a), one count of enticement of a minor, in violation of 18 U.S.C. § 2422(b), two counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), two counts of transfer of obscene materials to a minor, in violation of 18 U.S.C. § 1470, one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of blackmail, in violation of 18 U.S.C. § 873.

On July 17, 2017, the government filed a motion to withdraw Count Four, charging receipt of child pornography on June 10, 2014. The government will be proceeding with all other counts, as described within this Trial Memorandum.

## II. FACTUAL BACKGROUND

The defendant, Joseph P. Totoro, III, is alleged to have sexually exploited a child, hereafter referred to as Minor 1, by engaging in a sexual relationship with her when she was 14 years old and despite the fact that he was 32 years older than her. He used his position as her tennis coach to start an inappropriate relationship with Minor 1.

When the defendant was physically apart from Minor 1, Totoro would use the Internet to continue his sexual exploitation of Minor 1. From January 5, 2013 through June 10, 2014, he attempted to entice Minor 1 to engage in criminal sexual activity, namely statutory sexual assault, in violation of Title 18 Pennsylvania Crimes Code Section 3122.1[1] through his online communications with Minor 1. During this time period, on two occasions, the defendant used the Internet to transfer obscene photographs, namely images of nude male genitalia, to Minor 1. On another occasion, he used the Internet to receive an image of Minor 1 engaged in sexually explicit conduct. On a different occasion, he used the Internet in an attempt to entice Minor 1 to produce another visual depiction of Minor 1 engaged in sexually explicit conduct. Records of the online chat communications and images were recovered from Minor 1's laptop.

In fall 2014, the parents of Minor 1 refused to continue to hire the defendant as Minor 1's coach. The defendant received various payments from the family as severance. Nevertheless, on December 30, 2014, the defendant obtained copies of confidential business and tax documents owned by Minor 1's father. The defendant threatened to provide these documents to various government law enforcement agencies unless the family paid the defendant $60,000. An audio recording of a phone call between the mother of Minor 1 and the defendant on January 13, 2014

---

1 Title 18 Pa. C.S.A. § 3122.1 criminalizes sexual intercourse between a child under the age of 16 years and another person 11 years or older, where the two are not married. The government will not be proceeding with the Corruption of Minors statute cited in the Indictment.

confirmed the details of the defendant's demands. The place and date of the exchange of money was set for January 14, 2014.

On January 14, 2015, the defendant was found at the agreed upon place and time for the exchange. He was arrested by the Federal Bureau of Investigations. Upon his arrest, a cell phone was seized from his possession. The cell phone contained at least one visual depiction of a minor engaged in sexually explicit conduct.

### III. STATUTE CHARGED AND ELEMENTS OF THE OFFENSE

#### A. 18 U.S.C.§ 2251(a) Attempted Production of Child Pornography

In order for the defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

> First: At the time of the offense, Minor 1 was under the age of eighteen years;
>
> Second: The defendant attempted to employ, use, persuade, or coerce Minor 1 to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and
>
> Third: the Defendant knew or had reason to know that the visual depiction would be transported in interstate commerce.

**B.      Count Two: 18 U.S.C.§ 2242(b) Attempted Enticement of a Minor**

In order for the defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

First:   The Defendant knowingly attempted to persuade, induce, entice, or coerce Minor 1 to engage in a sexual activity;

Second:  the Defendant used the Internet to do so;

Third:   When the Defendant did these acts, Minor 1, was less than 18 years old; and

Fourth:  if the sexual activity had occurred, the Defendant could have been charged with a criminal offense under Pennsylvania law.

**C.      Count Three: 18 U.S.C.§ 2252(a)(2) Receipt of Child Pornography on April 12, 2013**

In order for the defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

First:   That the defendant received or distributed a visual depiction;

Second:  That the image depicts an actual minor engaged in sexually explicit conduct; and

Third:   that the defendant was aware of the sexually explicit nature and character of the materials and that the visual depictions are of a minor engaged in sexually explicit conduct; and that the images had been mailed or shipped or transported in interstate or foreign commerce or produced using materials that had been mailed, or shipped or transported in interstate or foreign

**D.     Counts Four and Five: 18 U.S.C. § 1470 Transfer of Obscene Matter to a Minor on April 17, 2013 and May 11, 2013**

In order for the defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

> First:      That defendant knowingly transferred the material to Minor 1;
>
> Second:   That defendant used a facility or means of interstate commerce, that is the Internet, to do so;
>
> Third:     That the defendant knew at the time the general contents, character and nature of the material;
>
> Fourth:   That the material was obscene; and
>
> Fifth:     That at the time, the recipient was not yet sixteen years old and defendant knew that she was not yet sixteen years old.

**E.     Count Six: 18 U.S.C. § 2252(a)(4)(B) Possession of Child Pornography**

In order for the defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

> First:      That the defendant knowingly possessed a cell phone which the defendant knew contained visual depictions of a minor engaged in sexually explicit conduct;
>
> Second:   That the defendant knew the visual depiction contained in the cell phone showed a minor engaged in sexually explicit conduct;

Third: The defendant knew that the production of the visual depiction involved use of a minor in the sexually explicit conduct; and

Fourth: That the visual depiction had been transported in interstate commerce by any means, including by the Internet, or was produced using materials which have been mailed, shipped or transported in interstate commerce.

**F.** **Count Seven: 18 U.S.C. § 873 Blackmail**

In order for the defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

First: The defendant demanded a thing of value; and

Second: The defendant did so under a threat of informing, or as a consideration for not informing, a violation of a law of the United States.

## IV. STIPULATIONS

There are no formal stipulations to be introduced into evidence.

## V. LEGAL ISSUES

### 1. Age of Consent

Since the date of the Indictment, Minor 1 has since passed the age of 18 years. Nevertheless, the government writes to review the various ages of consent applicable for the charged offenses to ensure that the jury is not confused on the relevant law.

For offenses involving child pornography, the government must show that the sexually explicit visual depictions constituting child pornography involved the use of a minor, or a child under the age of 18 years. 18 U.S.C. §§ 2251(a), 2252(a)(2), 2252(a)(4). At all times charges in the Indictment, Minor 1 was under the age of 18.

For offenses involving enticement of a minor, the government must show that the defendant used the internet in an attempt to knowingly entice Minor 1 to engage in sexual activity for which a person could be charged with a criminal offense, namely 18 Pa. C.S.A. § 3122.1. This Pennsylvania statute makes it illegal for a person to have sex with a child under the age of 16 years, when that person is 11 or more years older than the child, and the two are not married. For this offense, Minor 1 was under the age of 16. 18 Pa. C.S.A. § 3122.1(b).

For offenses involving the transfer of obscene matters to a minor, the government must show that the obscene matter was knowingly transferred to a person under the age of 16 years. 18 U.S.C. § 1470. On the dates charging the defendant with transfer of obscene matter, Minor 1 was 15 years old. At all times charges in the Indictment, Minor 1 was under the age of 18.

Because Minor 1 could not consent to engaging in sexually explicit behavior as charged in the Indictment, it is irrelevant if Minor 1 offered to engage in sexual activity with the defendant, volunteered sexually explicit images of herself, or otherwise promoted their relationship. Under Rule 401, evidence is relevant if it makes a fact of consequence more or less

probable than it would be without the evidence. Consent is not an element of any of the underlying crimes, precisely because the legislatures sought to protect minors from their own immaturity. Thus, consent is not a fact of consequence and evidence of consent is not relevant.

Furthermore, arguments or elicitation of testimony to show the "willingness" of Minor 1 would inappropriately attempt to confuse the issues before the jury, or worse, encourage the jury to ignore the relevant law. See Rule 403.

### 2. The Defendant's Right to Confront Witnesses

Although the defendant has chosen to proceed pro se, the defendant's right to confront witnesses is not boundless. Rather, the Third Circuit has given district courts broad discretion in placing limits on cross-examination. *United States v. Casoni,* 950 F.2d 893, 918 (3d Cir. 1991). This follows precedent set by the Supreme Court that trial judges have significant latitude to impose reasonable limits on cross-examination based on concerns about, "among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id. (quoting Delaware v. Fensterer, 474 U.S. 15, 20).* "A restriction will not constitute reversible error unless it is so severe as to constitute a denial of the defendant's right to confront witnesses against him and it is prejudicial to substantial rights of the defendant." *Casoni* at 918-19 (quoting *United States v. Adams,* 759 F.2d 1099, 1110 (3d Cir.), *cert. denied,* 474 U.S. 906 (1985)).

A defendant's direct access to a witness can be limited. In one case, a defendant was blocked from directly questioning his alleged child victims of sexual abuse, and instead was

ordered to write out his questions and have his counsel read them should he wish to cross-examine his alleged victims. *Fields v. Murray*, 49 F.3d 1024 (4th Cir. 1995). The *Fields* court reasoned that even if the defendant had proceeded pro se, the trial court was not required to allow personal cross-examination. *Id.* at 1035. The defendant had the opportunity to guide his own defense at every other portion of the trial and could still have controlled which questions were being asked, therefore his rights were preserved. *Id.* The court additionally reasoned that this sort of limitation yielded in the State's interest in the physical and psychological well-being of child abuse victims. *Id*. at 1036.

Significantly, Minor 1 does not lose her any protection in a court of law simply because she has now reached the age of majority. Federal Rule of Evidence 403 permits this court to exclude arguably relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In addition to the protections afforded to all witnesses under the Rules of Evidence, victims have been afforded certain rights under the Crime Victim's Rights Act, 18 U.S.C. § 3771, *et. seq.* Among those rights are the following:

> **§ 3771. Crime victims' rights**
>
> **(a) Rights of crime victims.**--A crime victim has the following rights:
>
>> **(1)** The right to be reasonably protected from the accused.
>>
>> . . .
>>
>> **(8)** The right to be treated with fairness and with respect for the victim's dignity and privacy.
>
> 18 U.S.C. § 3771.

Likewise, the defendant should not be permitted to engage in questioning of which has no relevant purpose for the jury's deliberation on the crimes charged, or which is intended simply intended to embarrass, harass, or confuse Minor 1 and her family.

### 3.     Defendant's Right to Proceed Pro Se

Defendant Totoro has invoked his Sixth Amendment right to self-representation, as described by the Supreme Court in Faretta v. California, 422 U.S. 806 (1975).  Because the role of standby counsel is frequently the subject of appeal, the government has prepared this section to assist the Court in confining standby counsel to his proper and lawful role.

The Supreme Court held in Faretta that the right to counsel implied a right to proceed *pro se*.  422 U.S. 806 (1975).  Standby counsel may participate in the trial "to steer a defendant through the basic procedures of trial."  McKaskle v. Wiggins, 465 U.S. 168, 184 (1984).  In most cases, the court appoints standby counsel to assist the trial judge in explaining and enforcing "basic rules of courtroom protocol" and to assist the *pro se* defendant in achieving "his own clearly indicated goals."  Id.  The Third Circuit has described the role of standby counsel as that of "a safety net to insure that the litigant receives a fair hearing . . . and to allow the trial proceed without . . . undue delays."  United States v. Bertoli, 994 F.2d 1002, 1018-19 (3d Cir. 1993).  Standby counsel may also have the following additional functions: "(1) standby counsel must be available if and when the accused requests help; and (2) must be ready to step in if the accused wishes to terminate his own representation."  Id. at 1019 (citations omitted).

The Court should require the defendant to state at the outset of trial the anticipated participation by standby counsel to which the defendant has acquiesced.  The Court should be vigilant in insuring that standby counsel not engage in unauthorized and intrusive participation during trial such that he appears to be taking over the role of "counsel."  If this occurs, the Court

should hold an on-the-record hearing outside the presence of the jury to determine if the defendant now wishes to waive his Faretta rights and invoke his right to counsel. If the defendant instead wishes to expand the scope of standby counsel's participation, the Court should determine whether the defendant is seeking to proceed using a form of "hybrid representation" to which there is no right. See Buhl v. Cooksey, 233 F.3d 783, 806 (3d Cir. 2000); United States v. Romano, 849 F.2d 812, 816 (3d Cir. 1988); Hall v. Dorsey, 534 F. Supp. 507, 508 (E.D. Pa. 1982).

### a) Standby Counsel Must Not Interfere Defendant's Right to Present His Own Defense.

Problems arise when standby counsel interferes with the *pro se* defendant's control over his own case. Overzealous and intrusive standby counsel can undermine defendant's Faretta rights, and the dignity and autonomy those rights exist to protect. McKaskle, 465 U.S. at 176-77. Generally, the *pro se* defendant is entitled to control the case he chooses to present. This means that standby counsel must not "substantially interfere with any significant tactical decisions . . . control the questioning of witnesses, or . . . speak *instead* of the defendant on any matter of importance." McKaskle, 465 U.S. at 178. Standby counsel's uninvited participation must not be allowed "to destroy the jury's perception that the defendant is representing himself."[2] Id. at 178. The Court must be vigilant that standby counsel's "excessive involvement" does not "destroy the appearance that the defendant is acting *pro se*. This...may erode the dignitary values that the right to self-representation is intended to promote and may undercut the defendant's presentation to the

---

[2] A different standard adheres when standby counsel appears outside the presence of the jury. There, the defendant must be allowed to address the court freely on his own behalf, and any disagreements between standby counsel and the defendant should be resolved in the defendant's favor when the matter is one that would normally be left to the discretion of counsel. McKaskle, 465 U.S. at 179.

jury of his own most effective defense." Id. at 182-83. Unsolicited participation by standby counsel may give rise to reversible error. Id. at 188 (holding that defendant is entitled "to dance a solo, not a *pas de deux*.").

### b) If Standby Counsel Appears to Take Over The Defense During Trial, The Defendant May Waive His Right to Proceed *Pro Se*, Even During Trial.

If a defendant appears to acquiesce to standby counsel's excessive involvement, the defendant may be found to have waived his right to proceed *pro se*. See McKaskle, 465 U.S. at 182 (holding that a defendant may waive his Faretta rights); United States v. Heine, 920 F.2d 552, 555 (8th Cir. 1990). If a defendant does not make a specific objection during trial, the defendant may not be heard to complain about standby counsel's intrusions on appeal. McKaskle, 465 U.S. at 183 (stating that once defendant has acquiesced to substantial participation by standby counsel, "complaints concerning counsel's subsequent unsolicited participation lose much of their force."). The Court can avoid these complaints altogether by holding a Faretta hearing during trial if standby counsel appears to be expanding his participation.

Moreover, the Court may revoke the defendant's right to proceed *pro se* and appoint standby counsel to represent the defendant. See Faretta, 422 U.S. at 834, n.46 (noting that a defendant's right to self-representation is not a license to abuse the dignity of the courtroom); Romano, 849 F.2d at 819 (upholding trial court's decision to revoke defendant's right to appear *pro se*, but reversing conviction because defendant was denied opportunity to have counsel of choice once her *pro se* status was revoked). This may be appropriate when standby counsel becomes, in effect, co-counsel. There is no right to this type of "hybrid representation" under the Constitution. Id. at 183 (stating that "a defendant does not have a constitutional right to

jury of his own most effective defense." Id. at 182-83. Unsolicited participation by standby counsel may give rise to reversible error. Id. at 188 (holding that defendant is entitled "to dance a solo, not a *pas de deux*.").

### b) If Standby Counsel Appears to Take Over The Defense During Trial, The Defendant May Waive His Right to Proceed *Pro Se*, Even During Trial.

If a defendant appears to acquiesce to standby counsel's excessive involvement, the defendant may be found to have waived his right to proceed *pro se*. See McKaskle, 465 U.S. at 182 (holding that a defendant may waive his Faretta rights); United States v. Heine, 920 F.2d 552, 555 (8th Cir. 1990). If a defendant does not make a specific objection during trial, the defendant may not be heard to complain about standby counsel's intrusions on appeal. McKaskle, 465 U.S. at 183 (stating that once defendant has acquiesced to substantial participation by standby counsel, "complaints concerning counsel's subsequent unsolicited participation lose much of their force."). The Court can avoid these complaints altogether by holding a Faretta hearing during trial if standby counsel appears to be expanding his participation.

Moreover, the Court may revoke the defendant's right to proceed *pro se* and appoint standby counsel to represent the defendant. See Faretta, 422 U.S. at 834, n.46 (noting that a defendant's right to self-representation is not a license to abuse the dignity of the courtroom); Romano, 849 F.2d at 819 (upholding trial court's decision to revoke defendant's right to appear *pro se*, but reversing conviction because defendant was denied opportunity to have counsel of choice once her *pro se* status was revoked). This may be appropriate when standby counsel becomes, in effect, co-counsel. There is no right to this type of "hybrid representation" under the Constitution. Id. at 183 (stating that "a defendant does not have a constitutional right to

Page **12** of **18**

jury of his own most effective defense." Id. at 182-83. Unsolicited participation by standby counsel may give rise to reversible error. Id. at 188 (holding that defendant is entitled "to dance a solo, not a *pas de deux*.").

### b) If Standby Counsel Appears to Take Over The Defense During Trial, The Defendant May Waive His Right to Proceed *Pro Se*, Even During Trial.

If a defendant appears to acquiesce to standby counsel's excessive involvement, the defendant may be found to have waived his right to proceed *pro se*. See McKaskle, 465 U.S. at 182 (holding that a defendant may waive his Faretta rights); United States v. Heine, 920 F.2d 552, 555 (8th Cir. 1990). If a defendant does not make a specific objection during trial, the defendant may not be heard to complain about standby counsel's intrusions on appeal. McKaskle, 465 U.S. at 183 (stating that once defendant has acquiesced to substantial participation by standby counsel, "complaints concerning counsel's subsequent unsolicited participation lose much of their force."). The Court can avoid these complaints altogether by holding a Faretta hearing during trial if standby counsel appears to be expanding his participation.

Moreover, the Court may revoke the defendant's right to proceed *pro se* and appoint standby counsel to represent the defendant. See Faretta, 422 U.S. at 834, n.46 (noting that a defendant's right to self-representation is not a license to abuse the dignity of the courtroom); Romano, 849 F.2d at 819 (upholding trial court's decision to revoke defendant's right to appear *pro se*, but reversing conviction because defendant was denied opportunity to have counsel of choice once her *pro se* status was revoked). This may be appropriate when standby counsel becomes, in effect, co-counsel. There is no right to this type of "hybrid representation" under the Constitution. Id. at 183 (stating that "a defendant does not have a constitutional right to

choreograph special appearances by counsel."); Buhl, 233 F.3d 783. The Court may also elect to appoint a less intrusive standby counsel. Romano, 849 F.2d at 816 (holding that a defendant has no right to standby counsel of her own choice).

### c) The Court Should Give the Jury a Cautionary Instruction When Standby Counsel Makes Objections or Questions Witnesses.

While there is no categorical bar to participation by standby counsel in front of the jury, the jury must reasonably perceive that the defendant is in control of the case. McKaskle, 465 U.S. at 180-81. Although the defendant may authorize standby counsel to make objections or question witnesses,[3] the Supreme Court has recognized that "the right to appear *pro se* can lose much of its importance if only the lawyers in the courtroom know that the right is being exercised." Id. at 179 ("From the jury's perspective, the message conveyed by the defense may depend as much on the messenger as on the message itself."). Frequent or substantial unsolicited intrusions by counsel may seriously undermine the defendant's message to the jury. Id. at 187.

In order to guard against these intrusions, the Court should carefully instruct the jury at the outset that the defendant is appearing *pro se*. See id. at 186 (upholding defendant's conviction when judge had carefully explained that the defendant was appearing *pro se*). Further, if standby counsel participates in the trial by questioning witnesses or making objections, the Court should instruct the jury that standby counsel has been authorized to do so by the defendant (if, of course, he has) as follows:

---

[3] "Participation by counsel with a *pro se* defendant's express approval is, of course, constitutionally unobjectionable." McKaskle, 465 U.S. at 182.

> You have just heard from the defendant's standby counsel, Michael Drossner, who is appearing in court to assist the defendant in representing himself. The defendant has asked Mr. Drossner to participate in this part of the trial.

McKaskle, 465 U.S. at 182.

The instruction the Court uses should be designed to remove from the jury's mind any doubt that the defendant is in control of his case. Id. at 181-82.

### d) Government's Request

Standby counsel is, first and foremost, designed to assist the defendant and the Court to reduce the potential unfairness, obstacles, and delays attendant to a *pro se* defense. Bertoli, 994 F.2d at 1019. However, where the *pro se* defendant appoints standby counsel, there is the danger that standby counsel himself may become an obstacle to the efficient administration of justice and a subject for appeal. The Court can do three things to avoid these problems and confine standby counsel to his proper role:

(1) The Court should instruct the defendant to state the anticipated scope of standby counsel's participation in the trial at the outset.

(2) The Court should be vigilant that standby counsel not exceed the scope of his authorized participation in trial. If standby counsel appears to be engaging in unauthorized and intrusive behavior, the Court should immediately hold a Faretta hearing to determine whether the defendant wishes to now invoke his Sixth Amendment right to counsel and waive his right to self-representation. If the defendant wishes to expand the scope of standby counsel's participation, the Court should advise the defendant that has no right to "hybrid representation."

(3) Whenever standby counsel participates in the trial in the presence of the jury, the Court should remind the jury that he does so solely at the defendant's behest.

### 4. Confidentiality of the Minor 1

Because of the nature of the crimes alleged, the government respectfully requests that the Minor 1 and her family not be named during the description of witnesses to be heard from during the general jury voir dire. Instead, the government respectfully requests that photographs of these witnesses be displayed to the jury instead, in order to determine if any citizens know these witnesses. The government's request is meant to limit the exposure of Minor 1's identity, who was a child at the time of the offenses, to the general public.

## VI. WITNESSES

1. Minor 1: Minor 1 will testify to her relationship with Totoro. She will identify the online usernames she and Totoro used during their online communications. She will identify any visual depictions used as government exhibits in this case. She will describe the events that led to Totoro's blackmailing of her parents and his arrest.

2. Father of Minor 1: Father will testify to the history of his employment of Totoro as Minor 1's coach and why he ultimately ended Totoro's access to Minor 1. The father will describe the control Totoro appeared to have over Minor 1. The father will describe the severance payments, given at the urging of Minor 1, which were provided to Totoro. Communications between Totoro and the father will be introduced.

3. Mother of Minor 1: Mother will describe the history of Totoro's employment as Minor 1's coach. The mother actually became suspicious that Totoro was having an

inappropriate relationship with Minor 1 at one point and contacted authorities. (Minor 1, as she was instructed to do by the defendant in online communications, denied the relationship). The mother received blackmail communications from Totoro. Under the guidance of the FBI, the mother participated in a recorded phone call with Totoro where the details of the exchange of money involved in the blackmail scheme was documented.

4. Retired Special Agent James Fitzgerald, FBI: Retired Agent Fitzgerald will describe how he first became involved in an investigation into blackmail by Totoro, and how forensic evidence ultimately revealed the child exploitation charges. Agent Fitzgerald was responsible for administering the recorded wire involving the mother and Totoro.

5. Special Agent Jennifer Morrow, FBI: Agent Morrow was reassigned as the case agent in this investigation after Agent Fitzgerald retired in January 2017. Agent Morrow will review the online communications between Minor 1 and Totoro.

6. Officer John Benozich/Officer Tim Garron, Chester City Police: These officers were involved in the arrest of the defendant and the seizure of the defendant's cell phone upon arrest.

7. Detective Michael Avella, Forensic Examiner with the FBI Philadelphia Regional Computer Forensics Laboratory Examiner: Detective Avella extracted the contents of the defendant's cell phone, Minor 1's cell phone, and Minor 1's laptop.

8. Martha Finnegan, FBI Child Interviewer: Agent Finnegan conducted a forensic interview with Minor 1. A forensic interview is a structured conversation with a child that is intended to elicit detailed information about a possible event that the child may

have experienced or witnessed.

9. Custodian of Records, AT & T: If necessary, AT&T will describe the data obtained from cell phone records.

The government reserves the right to supplement its witness list as may be required.

        Respectfully submitted,
        LOUIS D. LAPPEN
        Acting United States Attorney

        MICHAEL LEVY
        Assistant United States Attorney
        Chief, Computer, Child Exploitation,
        and Intellectual Property Crimes

        */s/ Priya T. De Souza*_____
        PRIYA T. DE SOUZA
        Assistant United States Attorney

July 18, 2017

# CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Government's Trial Memorandum to be delivered to Joseph P. Totoro through personal delivery or using the FDC Legal Mail Drop as addressed below and through standby counsel through First Class Mail, the Electronic Court Filing System, and/or electronic mail, as described below:

Legal Mail, Open Only in the Presence of the Inmate

**Joseph P. Totoro**

**Register No. 69500 - 066**

Federal Detention Center

**Legal Mail Drop Box (Personal Delivery)**

Federal Bureau of Prisons

700 Arch Street

Philadelphia, PA  19106


Michael Drossner, Esquire (standby counsel)

Halim Drossner, PC

1528 Walnut Street, Suite 1501

Philadelphia, Pennsylvania 19102

sent via email:  michael@halimdrossner.com


Date:        July 18, 2017

 */s/ Priya T. De Souza*
PRIYA T. DE SOUZA
Assistant United States Attorney