# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

    v.

JOSEPH P. TOTORO, II,

         *Defendant.*

CRIMINAL ACTION
NO. 15-291

**PAPPERT, J.**                                                        **July 27, 2017**

## <u>MEMORANDUM</u>

On June 25, 2015, Joseph P. Totoro, II was indicted by a federal grand jury on eight counts: production of child pornography in violation of 18 U.S.C. § 2251(a), (e) (count one); enticement in violation of 18 U.S.C. § 2422(b) (count two); receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) (counts three & four);[1] transfer of obscene materials to a minor in violation of 18 U.S.C. § 1470 (counts five & six); possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (count seven); and blackmail in violation of 18 U.S.C. § 873 (count eight).  (ECF No. 15.)  Trial begins July 31, 2017.  Totoro and the Government have filed numerous pretrial motions and this Memorandum explains the Court's reasoning in support of its decisions, reflected in the accompanying Order, on each of them.

## I.

Rule 12(b) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  FED. R. CRIM. P. 12(b).  "However, the scope of a district court's review at the Rule 12 stage is limited."  *United States v. Huet*, 665 F.3d

---

[1]     The Government recently moved to dismiss Count Four.  *See* (ECF No. 157).

588, 595 (3d Cir. 2012).  "[A] pretrial motion to dismiss an indictment is not a

permissible vehicle for addressing the sufficiency of the government's evidence.  The

government is entitled to marshal and present its evidence at trial, and have its

sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal

Procedure 29.  There is no criminal corollary to the civil summary judgment

mechanism."  *Id.* (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir.

2000)).  "In evaluating a Rule 12 motion to dismiss, a district court must accept as true

the factual allegations set forth in the indictment." *Id.*  (citing *United States v.

Sampson*, 371 U.S. 75, 78–79 (1962); *United States v. Besmajian*, 910 F.2d 1153, 1154

(3d Cir. 1990)).  "Evidentiary questions—such as credibility determinations and the

weighing of proof—should not be determined at this stage."  *Id.*  (quoting *United States

v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011)).  "Thus, a district court's review of the facts

set forth in the indictment is limited to determining whether, assuming all of those

facts as true, a jury could find that the defendant committed the offense for which he

was charged."  *Id.* at 595–96 (citations omitted).

## II.

On July 7, 2017, Totoro filed five motions seeking dismissal of some or all of the

counts against him on various grounds, among them alleged defects in the indictment,

insufficient evidence, Brady violations and unconstitutionally vague statutory

language.  *See* (ECF Nos. 135, 136, 137, 138, 141).  The Government filed its Responses

on July 14, 2017.  (ECF Nos. 147, 148, 154.)

## A. ECF No. 135

In ECF No. 135, Totoro contends that the indictment must be dismissed in its entirety because it does not contain sufficient factual allegations to support the Government's contention that he committed the charged offenses and the grand jury was not properly instructed on the elements of the offenses.  (Def.'s Mot., at 4–9, 11–13, ECF No. 135.)  The Court addresses each argument in turn.

### i.

Rule 12(b)(3)(B) permits a criminal defendant to move for the pre-trial dismissal of an indictment as defective if it, *inter alia*, lacks specificity or fails to state an offense. FED. R. CRIM. P. 12(b)(3)(B)(iii), (v).  Federal Rule of Criminal Procedure 7(c) outlines the statutory requirements for a grand jury indictment:

> The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

FED. R. CRIM. P. 7(c).

"An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." *Huet*, 665 F.3d at 595 (quoting *United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007)).  "An indictment is facially sufficient if it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet,

and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" *Id.* (quoting *Vitillo*, 490 F.3d at 320). "'[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation' to permit a defendant to prepare his defense and invoke double jeopardy." *Id.* (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)). "Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *Id.* (citations omitted). "In contrast, if an indictment fails to charge an essential element of the crime, it fails to state an offense." *Id.* (citing *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979)).

"In determining whether an indictment validly states the elements of the offense, [courts] need not blindly accept a recitation in general terms of the elements of the offense." *Id.* (citing *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002)). "Federal Rule of Criminal Procedure 12(b)(3)(B) allows a district court to review the sufficiency of the government's pleadings to . . . ensur[e] that legally deficient charges do not go to a jury." *Id.* (citing *Bergrin*, 650 F.3d at 268). "Although the Government is not required to set forth its entire case in the indictment, 'if the specific facts' that are alleged 'fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation,' the indictment fails to state an offense." *Id.* (quoting *Panarella*, 277 F.3d at 685); *see also United States v. Stock*, 728 F.3d 287, 292–93.

Here, the indictment provides the "plain, concise, and definite written statement of the essential facts constituting the offense charged" required by Rule 7(c) and Third

Circuit precedent. For every count, the indictment identifies the statute alleged to have been violated, sets forth the essential elements of the offense tracking the relevant statutory language, specifies the location where the crime allegedly occurred and provides the dates or time period of the alleged offense. *See* (ECF No. 15). The indictment further alleges that Totoro used the internet to facilitate his crimes. (*Id.*) Finally, all counts relating to the sexual exploitation of a minor incorporate the first six paragraphs of the indictment, which in relevant part state:

> During this inappropriate relationship [with M1], Joseph P. Totoro II sent M-1 sexually explicit photographs of himself and encouraged her to take sexually explicit photographs of herself and to send them to him. Joseph P. Totoro II sent M-1 numerous text messages describing the sexual acts he wanted to perform with M-1.

(*Id.* ¶ 5.)

Accepting all of the factual allegations as true, the indictment sets forth the essential elements of the charged offenses and contains "sufficient factual orientation" to apprise Totoro of the offending conduct such that he can prepare his defense and invoke double jeopardy. Moreover, the facts alleged fall squarely within the scope of the relevant criminal statutes and, if proven, would permit convictions on the charged offenses. The indictment is therefore sufficient. *See Stock*, 728 F.3d at 292–93; *Huet*, 665 F.3d at 594–96.

Totoro argues that the indictment is not sufficiently specific with respect to counts one through seven because it "fail[s] to describe the nature of sexually [sic] conduct" and "fail[s] to mention any facts to support the allegation that [he] engaged in the charged conduct." (Def.'s Mot., at 6–7.) Totoro misunderstands Rule 7(c)'s requirements. The indictment need only set forth the "essential facts *constituting* the

offense charged," FED. R. CRIM. P. 7(c), and contain allegations sufficient to "apprise the defendant with reasonable certainty of the nature of the accusation against him," *Russell v. United States*, 369 U.S. 749, 765 (1962). The indictment need not contain a description of the sexually explicit conduct or include detailed facts supporting its allegations. *See, e.g.*, *Stock*, 728 F.3d at 299 ("Usually, a recitation of the statutory language satisfies the first requirement, so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy. And typically, a factual orientation that includes a specification of the time period of the alleged offense is sufficient for the second and third requirements. In short, *detailed allegations are unnecessary*." (emphasis added, internal citations and quotations omitted)); *DeLaurentis*, 230 F.3d 659, 660–61 (Rule 12(b)(2) permits dismissal of an indictment if the allegations are insufficient to charge an offense, "but such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges."); *United States v. Bloom*, 78 F.R.D. 591, 604 (E.D. Pa. 1977) ("The question that a district court must ask in reviewing the sufficiency of an indictment to charge an offense is not whether the indictment states an offense fully on its face, but whether the indictment contains such allegations that may be proven by evidence at trial that would support a conviction under the statute." (citations omitted)).

Totoro next claims that the "counts also fail to state whether [he] produced or intended to produce sexually explicit conduct." (Def.'s Mot., at 6.) Count one, alleging production and attempted production of child pornography in violation of 18 U.S.C. § 2251(a), (e), states that Totoro "employed. . . and attempted to employ . . . a minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of

that conduct. . . ." (ECF No. 15, at 2.) This language tracks the statute and appropriately identifies the alleged criminal conduct. Totoro further complains that counts one and two each state that he employed, used, persuaded, induced, enticed, and coerced a minor, without specifying which of those actions he is alleged to have committed; he claims that he should not be accused of violating the statute through all of these different means because "juries may differ to which ones they decide [he] is guilty or not guilty of." (Def.'s Mot., at 6.) This claim lacks merit. It is well-established that it is proper to charge in the conjunctive ("and") while proving in the disjunctive ("or"). *See Turner v. United States*, 396 U.S. 398, 420 (1970) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged"); *Crain v. United States*, 162 U.S. 625 (1896) (indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved); *United States v. Friedman*, 649 F.2d 199, 204 (3d Cir. 1981) (same).

### ii.

Next, Totoro contends that the indictment must be dismissed because "the grand jurors were not properly instructed on the elements of the offenses" charged in counts one through seven and therefore "relied on insufficient and erroneous information." (Def.'s Mot., at 7.) In support of this contention, Totoro asserts that the pictures he allegedly produced and/or received do not meet the statutory definition of sexually explicit conduct and the conduct in which he allegedly engaged—talking about past or future sexual activity—does not violate the statute. (*Id.* at 8–10.) He thus speculates that the grand jurors were not given proper instructions because "[i]f grand jurors were

made aware of the statutory requirements of 18 U.S.C. §§ 2251, 2252, 2422(b), the grand jury surely would have declined to charge [him] with these crimes based on evidence." (*Id.*)

Though couched as a challenge to the adequacy of the instructions given to the grand jury, Totoro's argument in fact goes to the sufficiency of the Government's evidence at the grand jury proceeding. Again, a defendant is not entitled to challenge an indictment on this basis. Rather, a presumption of regularity attaches to grand jury proceedings, and an indictment that is valid on its face and returned by a legally constituted and unbiased grand jury is presumed to be founded upon sufficient evidence. *Hamling v. United States*, 418 U.S. 87 (1974); *see also DeLaurentis*, 230 F.3d at 661 (dismissal of indictment may not be predicated on insufficiency of evidence); *see also Costello v. United States*, 350 U.S. 359, 363 (1956) (indictments not open to challenge on ground that there was inadequate or incompetent evidence); *United States v. Doe*, 429 F.3d 450, 453 (3d Cir. 2005) (it is for the grand jury to decide "how much information is enough" to pursue a prosecution); *United States v. Shearson Lehman Bros., Inc.*, 650 F. Supp. 490, 502 (E.D. Pa. 1986) ("Whether the government has sufficient evidence of these charges is a question for trial. Once a grand jury indicts, no inquiry may be made concerning the sufficiency of the evidence it considered." (internal citations omitted)); *United States v. Shober*, 489 F. Supp. 393, 405–07 (E.D. Pa. 1979) (same).

In *United States v. Davies*, Crim. No. 3:08-00253, 2010 WL 3024844 (M.D. Pa. July 29, 2010), a defendant charged with enticement of a minor in violation of 18 U.S.C § 2422(b) moved to dismiss the indictment on the ground that the chat logs amounted to

nothing more than "sexual banter," which he argued was not prohibited by the statute. *Id.* at *6. The court denied the motion as an improper attempt to challenge the sufficiency of the Government's evidence, "which is clearly not a valid basis" for dismissing an indictment. *Id.*; *see also United States v. Donsky*, 825 F.2d 746, 752 (3d Cir. 1987) (district court erred by looking beyond the text of the charges and analyzing whether the evidence was consistent with the terms of the indictment). Totoro's challenge, premised on analogous arguments, dictates the same result.

Moreover, to the extent Totoro challenges the adequacy of the grand jury instructions, "[t]he general rule that an indictment will not be the subject of independent scrutiny and is given a presumption of regularity is just as applicable to a challenge of inadequate instructions as inadequate evidence." *United States v. Hart*, 513 F. Supp. 657, 658 (E.D. Pa 1981) (citing *United States v. Budzanoski*, 462 F.2d 443 (3d Cir. 1972)); *see also United States v. Henry*, Crim. No. 06-33-01, 2008 WL 2795140, at *15–18 (E.D. Pa. July 17, 2008) (same). A heavy burden is placed upon a defendant seeking to challenge this presumption with respect to grand jury instructions, *see United States v. Wolff*, 840 F. Supp. 322, 323 (M.D. Pa. 1993), and the secrecy of the proceedings should not be disturbed absent a showing of impropriety or "particularized need," *see Budzanoski*, 462 F.2d at 454. Totoro's speculation that the grand jury instructions must have been improper because he deems the evidence against him insufficient does not constitute such a showing. *See Budzanoski*, 462 F.2d at 454 ("[M]ere speculation that such improprieties may have occurred will not suffice to support that required showing." (internal citations omitted)); *Shober*, 489 F. Supp. 393, 405–07 ("Defendant's broad allegations of inadequate instructions are insufficient to

defeat this strong presumption under these circumstances. . . . A general desire, like defendant's, to ferret out projected improprieties and to demonstrate insufficiency of evidence will be present whenever a grand jury indicts. To consider defendant's proposed offer a sufficient showing of particularized need will make disclosure of grand jury notes of testimony a routine matter. Whether the government lacks evidence to support the charges contained in the indictment is a matter to be resolved at trial." (internal citations omitted)); *see also Henry*, 2008 WL 2795140, at *15–18 (denying defendant's motion to dismiss the indictment on the basis of inadequate instructions because defendant's arguments related to the sufficiency of the evidence and did not rebut the presumption of regularity).

ECF No. 135 is denied.

## B. ECF Nos. 136 & 137

Totoro's Motion to Dismiss Counts 1, 2, 5, & 6, (ECF No. 136), and Motion to Dismiss Counts 3 & 4, (ECF No. 137), likewise seek dismissal of counts one through six on the basis of insufficient evidence. With respect to count one (production), Totoro argues that the "relevant visual depiction does not meet the definition of sexually explicit conduct for the purpose of producing a visual depiction of that conduct." (Def.'s Mot., at 1, ECF No. 136.) With respect to count two (enticement), he contends the "relevant conduct does not meet the definition of knowingly persuades, induced, entices, or coerces . . . to engage in sexual activity for which a person could be charged with a criminal offense" because "talking about sex is not a crime." (*Id.* at 6.) With respect to count three (receipt), he claims that he could not have "knowingly receive[d] the picture" because he "had no idea the picture was coming." (Def.'s Mot., at 3, ECF No.

137.)  Because count four was withdrawn by the Government, *see supra* n.1, the Court omits Totoro's argument with respect to that count.  And with respect to counts five and six (passing obscene matter to a minor), he argues for dismissal on the ground that the pictures he allegedly sent do not rise to the level of obscenity required by the statute. (Def.'s Mot., at 10, ECF No. 136.)

All of these arguments go to the sufficiency of the Government's evidence and fail for the same reasons discussed above.  Once the grand jury returned a facially valid indictment against Totoro, it became the role of the jury to make fact-specific determinations regarding the scope of the relevant conduct, the intent behind it and whether the visual depictions meet the applicable statutory definitions.  *See, e.g.*, *Costello*, 350 U.S. at 363 ("If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed.  The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury.  This is not required by the Fifth Amendment.  An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.").

ECF Nos. 136 and 137 are denied.

## C. ECF No. 138

In ECF No. 138, Totoro moves to dismiss the indictment because of alleged

Brady violations.[2]  (ECF No. 138.)  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Totoro first rehashes criticisms originally raised in an earlier Motion to Stay.  *See* (ECF

No. 110).  He then accuses the Government of manipulating evidence.  He explains that

the discovery he received on March 13, 2017 is materially different than the discovery

he obtained on June 5, 2017.  (Def.'s Mot., at 5, ECF No. 138.)  "Text messages have

materially changed, pictures sent have materially changed, dates, times have changed

by seconds minutes even hours."  (*Id.*)  He also faults the Government for failing to

request "all" of the emails and text messages from AT&T, Verizon, Kik Messenger,

Google and Skype, alleging that the discovery is incomplete and misleading as a result.

Totoro contends that these actions not only constitute Brady violations but also

prosecutorial misconduct in violation of his Fifth Amendment right to due process.

In response, the Government denies that it manipulated evidence and explains

that Totoro is simply misunderstanding the forensic technology used in the case.  (Gov't

Resp., at 2, ECF No. 164.)  According to the Government, while there are "time stamp

differences, lines of missing texts, and one-way chat conversations," this is not evidence

of manipulation but a product of the FBI's Regional Computer Forensic Laboratory's

use of different tools to extract information from the same device.  (*Id.*)  The FBI

utilizes different tools in order to extract as much data from a device as possible, and

"[s]ometimes the tools that the lab uses accesses the same data differently."  (*Id.* at 2–

3.)  For example, discovery from March 2017 uses time stamps based on when the user

[2]    In recounting the procedural history of this case, Totoro's Motion incorrectly states that the Court has not ruled on his *Ex Parte* Motion requesting funds to hire a computer expert.  *See* (Def.'s Mot., at 2).  The Court granted Totoro's Motion in part on June 13, 2017.  (ECF Nos. 120 & 121.)

sent the messages; time stamps from the later discovery are based on when the user received the messages. "At times the data is sent and received simultaneously, but, at other times, there is a delay between transmission and receipt of the communication." (*Id.* at 3.) The Government also contends that the use of these different tools explains "any discrepancy in missing lines between" the different versions of the discovery. (*Id.*) Finally, the Government asserts that the one-way conversations produced in discovery are not evidence of manipulation of evidence—in instances where only one side of a conversation was produced, this was all the Government was able to extract from the device.

Totoro's allegations of discovery violations are simply a renewed argument, originally raised in his earlier motion to stay pretrial motions and resolve alleged discovery violations. (ECF No. 110). The Court held a hearing on that Motion, (ECF Nos. 116 & 117), and concluded that the Government's explanation for why it produced some discovery beyond the Court's initial deadline was acceptable.[3] The Court has already decided this issue; the Government has not committed discovery violations.

Totoro's allegation that the Government manipulated evidence is not a Brady issue but a challenge to the authenticity of the Government's evidence. In *Brady*, the Supreme Court held that the Government's suppression of material exculpatory evidence was a violation of the Due Process Clause of the Fourteenth Amendment. *See Brady*, 373 U.S. at 86. After *Brady*, "[p]rosecutors have an affirmative duty 'to disclose [Brady] evidence . . . even though there has been no request [for the evidence] by the accused,' which may include evidence known only to police." *Dennis v. Secretary, Pa.*

---

[3] The Court nevertheless granted Totoro's Motion to Stay in part and amended the scheduling order to provide Totoro with three additional weeks to file pretrial motions. (ECF No. 118.)

*Dep't of Corrections*, 834 F.3d 263, 284 (3d Cir. 2016) (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)). "To comply with Brady, prosecutors must 'learn of any favorable evidence known to the others acting on the government's behalf . . . , including the police.'" *Id.* (quoting *Strickler*, 527 U.S. at 281)).

"To prove a Brady violation, a defendant must show the evidence at issue meets three critical elements." *Id.* It must be: (1) "favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) "suppressed by the State, either willfully or inadvertently"; and (3) material such that prejudice resulted from its suppression." *Id.* (internal quotations and citations omitted). Totoro does not allege that the Government has withheld exculpatory evidence. He instead accuses the Government of manipulating the evidence. *Brady* is therefore inapplicable. *See United States v. McGill*, No. 12-112-01, 2016 WL 48214, at *9 (E.D. Pa. Jan. 5, 2016) ("This Circuit's Brady jurisprudence 'permit[s] the government to make information within its control available for inspection by the defense, and impose[s] no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed.'" (quoting *United States v. Pelullo*, 399 F.3d 197, 213 (3d Cir. 2015)).

Totoro is really raising an objection to the evidence's authenticity. To be admissible at trial, evidence must be authentic. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). "Rule 901(b), in turn, sets forth a non-exhaustive list of appropriate methods of authentication, including not only '[t]estimony that an item is what it is

claimed to be,' FED. R. EVID. 901(b)(1), but also 'appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances,' FED. R. EVID. 901(b)(4), and '[e]vidence describing a process or system and showing that it produces an accurate result,' FED. R. EVID. 901(b)(9)." *United States v. Browne*, 834 F.3d 403, 408 (3d Cir. 2016).

Questions of authentication and identification are matters of conditional relevance under Rule 104(b). *See* FED R. EVID. 104(b); *Browne*, 834 F.3d at 409. "Rule 104(b), in turn, provides that '[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.'" *Id.* "[T]o meet the Rule 104(b) standard of sufficiency, the proponent of the evidence must show that 'the jury could reasonably find th[ose] facts . . . by a preponderance of the evidence.'" *Id.* (quoting *Bergrin*, 682 F.3d at 278). Thus, at Totoro's trial, the relevance of the text messages at issue "hinges on the fact of authorship." *Id.* at 410. To authenticate the messages, the Government will have to introduce "enough evidence such that the jury could reasonably find, by a preponderance of the evidence" that Totoro and the alleged victim authored the messages at issue. *Id.*

Totoro's authentication challenge is premature and ECF No. 138 is denied.

### D. ECF No. 141

Finally, in ECF No. 141, Totoro argues that count one must be dismissed because § 2251(a) does not put a person of reasonable intelligence on notice of the

behavior necessary to violate the statute and is thus unconstitutionally vague.[4] *See*

(Def.'s Mot., at 4–5, ECF No. 141).

Section 2251(a) states:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

The Section can thus be broken into two parts: one which prohibits certain conduct and another—beginning after "as provided under subsection (e)"—which lays out § 2251(a)'s jurisdictional elements. Totoro contends that because the jurisdictional part of § 2251(a) contains three clauses separated only by commas—as opposed to the semicolons found in §§ 2251(c) and (d)—they are dependent clauses, rendering the jurisdictional part of the subsection unconstitutionally vague. (Def.'s Mot., at 3.) Essentially, Totoro contends that each clause of § 2251(a)'s jurisdictional elements must be present for prosecution. This argument has no support. The fact that the jurisdictional elements of § 2251(a) are separated by commas rather than semicolons

---

[4]     Though Totoro notes both §§ 2251(a) and (b) in his Motion, his argument rests primarily on § 2251(b). *See generally* (Def.'s Mot., ECF No. 141). Totoro has not been charged with violating § 2251(b). *See generally* (Indictment, ECF No. 15). The Court will therefore treat Totoro's Motion as one challenging § 2251(a).

does not mean they are not independent bases of prosecution. Rather, the jurisdictional part of § 2251(a) can be read as follows:

(1) if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed,

(2) if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or

(3) if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

*Cf. United States v. Cramer*, 213 F. App'x 138, 140 (3d Cir. 2007) (upholding district court's reading of § 2251(b)'s effectively identical jurisdictional language).

In *Cramer*, for example, the Third Circuit Court of Appeals concluded that all three clauses listed above "are applied to the words or phrases immediately preceding them in the opening clause" of § 2251(b). *Id.* Each clause therefore operates as an "independent condition[ ] for which the violation of *any one* will result in punishment." *Id.* (emphasis added). Section 2251(a)'s nearly identical jurisdictional language should be read in the same manner. *Accord United States v. Ruggiero*, 791 F.3d 1281, 1290–91 (11th Cir. 2015) (holding there is "no doubt that a person of ordinary intelligence would know, upon reading § 2251(a), that it prohibits persuading a 15-year-old to engage in sexually explicit conduct" where only one of the jurisdictional elements was present). The statute is clear and ECF No. 141 is denied.

## III.

The parties also filed numerous motions in *limine*. In ruling upon these motions, the Court is guided by, *inter alia*, the following evidentiary rules. First, Federal Rule of

Evidence 402 states that "evidence which is not relevant is not admissible." FED. R. EVID. 402. Relevant evidence is defined as any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. The Supreme Court has characterized this standard as a "liberal one." *Daubert v. Merrell Dow Pharmac., Inc.*, 509 U.S. 579, 587 (1993). Second, even if evidence is relevant, it may still be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by consideration of undue delay, waste or time, or needless presentation of cumulative evidence." *See* FED. R. EVID. 403. The Third Circuit has defined the phrase "danger of unfair prejudice" as an "undue tendency to suggest decision on an improper basis." *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 188 (3d Cir. 1990).

## A. ECF No. 123

The Government asks the Court to rule on the authenticity and admissibility of three recordings (and their corresponding transcripts) at trial. The recordings concern the following events: (1) audio recording of the Defendant and a Government witness made under supervision of the FBI on January 13, 2015; (2) video recording of an interview between the FBI and the Defendant on January 14, 2015; and (3) video recording of an interview between the alleged victim and the FBI on April 9, 2015. (Gov't Mot., at 2, ECF No. 123.) Totoro does not object to the admission of these recordings or transcripts "as long as Defense and government agree that the transcripts are correct." (Def.'s Resp., at 9, ECF No. 133.)

With respect to the video recording of the alleged victim's interview with the FBI, if the victim does not testify at trial, admission of this interview would violate the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 53–54, & 59 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."); *id.* at 52. ("Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard."); *id.* at 59 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). Moreover, if offered for the truth of the matter asserted, the video interview would be hearsay and admissible only if subject to an exception.

The remaining two recordings are admissible, subject to the Government's ability to authenticate them in accordance with Rule 901. *See* FED. R. EVID. 901. Totoro's statements on these recordings are not hearsay because they are statements by a party opponent. *See* FED. R. EVID. 801(d)(2). The Motion is denied without prejudice.

## B. ECF No. 124

The Government seeks a preliminary determination that records from AT&T[5] qualify as business records under Federal Rule of Evidence 803(6) and that the affidavit from a records custodian, attached to the Government's Motion, satisfies Federal Rule

---

[5] In its Motion, the Government sought a preliminary determination for records from Verizon, Google and Yahoo. At the final pretrial conference, however, the Government stated that it intends only to introduce the AT&T records into evidence at trial.

of Evidence 902(11).  The records qualify as business records under Rule 803(6).[6] Because the attached certifications satisfy Rule 902(11), the records are self-authenticating and will be admissible at trial.

Federal Rule of Evidence 803(6) provides an exception to the rule against hearsay for business records that: (1) were "made at or near the time" by "someone with knowledge"; (2) were "kept in the course of a regularly conducted activity of a business"; (3) where "making the record was a regular practice of that activity"; where (4) "all these conditions are shown by the testimony of the custodian . . . or by a certification that complies with Rule 902(11); and where (5) "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."  FED. R. EVID. 803(6); *see also United States v. Brown*, 834 F.3d 403, 433–34 (3d Cir. 2016); *United States v. Bansal*, 663 F.3d 634, 666 (3d Cir. 2011).

The Government, hoping to "avoid calling numerous custodians of records at trial," seeks to introduce these records under Rule 803(6) via certification that complies with Rule 902(11).  (Gov't Mot., at 3 n.2, ECF No. 124).  Rule 902(11) provides that an "original or a copy" of the domestic record that otherwise qualifies as a business record under Rule 803(6) is "self-authenticating" and requires "no extrinsic evidence of authenticity" if it is certified by the records custodian.  FED. R. EVID. 902(11).  By providing "reasonable written notice of the intent to offer the record" before the trial, the Government has satisfied Rule 902(11)'s procedural safeguards.  *Id.*

The affidavit attached by the Government is from a records custodian employed by AT&T.  (Gov't Mot., Attach. A.)  In the certification, the employee explains that she

---

[6] Although the Government did not attach the records it seeks to admit to its Motion, the Government submitted its trial exhibits at the final pretrial conference held on July 25, 2017.  After reviewing the AT&T records, (Trial Exhibit 21), the Court finds that the records satisfy Rule 803(6).

is a records custodian and declares that the copies of records submitted to the Government are true and correct. (*Id.*) This certification satisfies Rule 902(11).

In his Response, Totoro objected to the Government's Motion and requested that he be allowed to cross examine the records custodians in accordance with the Confrontation Clause. At the final pretrial conference, however, he withdrew his objection and agreed to the records' admissibility without testimony from the records custodians. (Hr'g Tr. at 11:20–13:13.) In any event, the Government's proposed exhibits qualify under the business records exception and do not violate the Confrontation Clause.[7] The Motion is granted.

## C. ECF No. 125

The Government filed an Omnibus Motion *in Limine* to exclude six types of evidence. The Motion seeks to bar any evidence, argument or testimony regarding: (1) Totoro's current health; (2) any purported legitimate purpose for possessing child pornography; (3) any claim of right to the money that is the subject of the blackmail count; (4) any potential criminal penalties Totoro faces; (5) any undisclosed defense exhibits; and (6) any exculpatory hearsay. (ECF No. 125.) The Court grants the Government's Motion in part and denies it in part.

---

[7]     *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009) ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."); *Crawford v. Washington*, 541 U.S. 36, 56 (2004) (explaining that business records are not "testimonial" and therefore do not violate the Confrontation Clause).

Additionally, the admission of a certificate under Rule 902(11) does not violate the Confrontation Clause because these types of certificates are also not testimonial. *See United States v. Brinson*, 772 F.3d 1314, 1323 (10th Cir. 2014); *id.* (explaining that *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) is inapposite because the certificate did not contain "'analysis' that would constitute out-of-court testimony"); *United States v. Johnson*, 688 F.3d 494, 504 (8th Cir. 2012); *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006); *cf. United States v. Green*, 648 F.3d 569, 580 (7th Cir. 2011); *United States v. Adefehinti*, 510 F.3d 319, 328 (D.C. Cir. 2007).

### (1) Health Condition

In his Response, Totoro notes that he does not intend to raise his current health condition at trial. The Government's Motion is therefore granted as unopposed to the extent it relates to Totoro's current health condition.

### (2) Legitimate Interest

The Government also seeks to preclude Totoro "from introducing any evidence, making any statement, or asking any questions regarding [his] purported artistic, scientific, literary, journalistic, therapeutic, or medical interest" in the images at issue in any of the relevant charges. Because Totoro "will not be arguing his personal purported . . . artistic, scientific, literary, journalistic, therapeutic or medical interest," (Def.'s Resp., at 4), the Court grants the Government's Motion as unopposed.

Totoro adds, however, that he "reserves the right" to introduce evidence of the alleged victim's "medical, therapeutic, or artistic" interest in creating or transmitting the images at issue. (*Id.* at 4.) He will not be permitted to do so because it is not relevant under Federal Rule of Evidence 401(a). The victim's "medical, therapeutic, or artistic" interest has no tendency to make any of the facts at issue alleged more or less probable, nor does it undermine any of the elements of the crimes with which Totoro is charged. *See* 18 U.S.C. §§ 1470, 2422(b), 2251(a), 2252(a)(2), 2252(a)(4)(B).

### (3) Right to Money

The Government also seeks to bar Totoro from introducing evidence to show he had a right to the money that is the subject of the blackmail charge. The blackmail statute, 18 U.S.C. § 873, requires the Government to prove: (1) Totoro demanded money or other thing of value from the victim; (2) under the threat of informing or

consideration for not informing against a violation of any law of the United States; and (3) Totoro had knowledge relating to illegal activity and offered to withhold the information. *United States v. Coyle*, No. 93-0329, 1994 WL 617352, at *2 (E.D. Pa. Nov. 2, 1994); *see also United States v. Lewis*, 313 F. App'x 703, 707 (5th Cir. 2009).

Section 873 does not, however, require the government to prove that Totoro had no right to the money he demanded. The Government relies on *United States v. Coyle*, 63 F.3d 1239 (3d Cir. 1995), for this proposition. In *Coyle*, the Third Circuit Court of Appeals upheld a district court's refusal to instruct the jury that the defendant "could not be convicted if he was entitled to the benefits he demanded." 63 F.3d at 1249. While Totoro correctly points out that Coyle dealt with jury instructions rather than a motion *in limine*, that case nevertheless militates a finding in favor of the Government. The court in Coyle noted that "what is made unlawful by the blackmail statute is Coyle's use of the offer not to report the fraudulent activity or not to cooperate with the authorities as leverage over [the victim], whether or not Coyle had a claim of right to the benefits." *Id.* at 1249–50 (emphasis added). Thus a jury instruction regarding the defendant's purported right to the benefit was improper because it was not legally relevant. Here, the irrelevance of any right Totoro had to the money at issue in the blackmail charge means that this evidence is inadmissible under Rule 401. Whether Totoro had a right to the money at issue does not make it any less likely that he committed the crime alleged. Thus, evidence purporting to show Totoro's right to the money is inadmissible as part of his case-in-chief.[8]

---

[8] Totoro contends, however, that his right to the money at issue in the blackmail charge is relevant and admissible because it goes to the victim's credibility. The Court will reserve judgment on the extent to which Totoro may use this evidence on cross examination.

### (4) Criminal Penalties

The Government next seeks to bar Totoro from referring to the potential criminal penalties he faces if convicted at trial. Totoro does not address this in his Response. In any event, the Government's Motion is meritorious for two reasons. First, the imposition of a criminal sentence is a matter wholly within the province of the Court. Second, evidence of the potential punishment for a crime has no "tendency to make a fact more or less probable than it would be without the evidence." FED. R. EVID. 401(a). Totoro may not introduce any evidence of the potential penalties associated with the crimes alleged.

### (5) Reciprocal Discovery

The Government also seeks to exclude any defense exhibits Totoro failed to disclose under Federal Rule of Civil Procedure 16(d). In his Response, Totoro states that he "reserves the right to introduce evidence to rebut the allegations of the government." (Def.'s Resp., at 5.) He also notes that "[p]rior to the introduction of such evidence, the defense will seek proper admission from the Court at a side bar conference." (*Id.*)

Federal Rule of Criminal Procedure 16 governs discovery between the parties. Rule 16(a) requires the government to disclose various types of evidence upon the defendant's request. Rule 16(b) provides for reciprocal discovery—when a defendant requests disclosures from the government, the government may make a similar demand of the defendant. If a party fails to comply with the Rule, the Court may order that party to permit discovery or inspection; grant a continuance; prohibit the party from

introducing the undisclosed evidence; or enter any other order that is just under the circumstances. FED. R. CRIM. P. 16(d)(2)(A)–(D)

The Government contends that it made such a reciprocal demand for documents, tangible objects and reports of examinations in Totoro's possession under Rule 16(b)(1)(A)–(B). (Gov't Mot., at 8.) The Government thus seeks to bar Totoro from introducing any of that evidence at trial. Totoro may not simply "reserve the right" to introduce evidence at trial while flouting Rule 16(d)'s reciprocal discovery provision. But the Court will not order the most extreme sanction—precluding Totoro from introducing any such evidence, *see* FED. R. CRIM. P. 16(d)(2)(D)—without first learning the nature of the evidence and the circumstances surrounding Totoro's failure to produce that evidence to the Government. The Government's Motion with respect to reciprocal discovery is denied without prejudice.

### (6) Exculpatory Hearsay

Finally, the Government's Motion to exclude exculpatory hearsay is denied without prejudice. The Government included this argument "to alert the Court to this possible issue," and notes that Totoro should not be permitted to "slip in" favorable evidence through the "back door" via the rule of completeness. (Gov't Mot., at 9); *see also* FED. R. EVID. 106. Whether a prior statement should be admitted pursuant to the rule of completeness is highly fact-specific; because the Government has not pointed to any particular statements at this point, the Court will deny the Motion without prejudice as it relates to any exculpatory statements.

## D. ECF No. 126

In a sealed motion, the Government seeks to preclude potential hearsay testimony about a possible witness who the Government does not currently plan to call to testify.  (ECF No. 126.)  The Motion is denied without prejudice and the Court will address the issue at trial should it arise.

## E. ECF No. 127

In a sealed motion, the Government seeks to preclude evidence regarding the minor victim's (1) use of alcohol or alleged predisposition toward alcohol use pursuant to Rules 401 and 403 and (2) sexual behavior or alleged predisposition to sexual behavior pursuant to Rule 412.  With respect to the minor victim's alleged use of or predisposition to alcohol, such evidence is not relevant to any issue under FED. R. EVID. 402.

With respect to the minor's alleged sexual behavior, Federal Rule of Evidence 412 provides that "evidence offered to prove that a victim engaged in other sexual behavior" or "evidence offered to prove a victim's sexual predisposition" is "not admissible in a . . . criminal proceeding involving alleged sexual misconduct," subject to three exceptions that do not apply here.  *See* FED. R. EVID. 412; *see also United States v. Smith*, 662 F. App'x 132, 135 (3d Cir. 2016).  Rule 412 "draws within its ambit all forms of sexual behavior, including activities of the mind such as fantasies and statements involving sexual behavior or desires."  *E.E.O.C. v. Donohue*, 746 F. Supp. 2d 662, 664 (W.D. Pa. 2010) (citing *B.K.B v. Maui Police Department*, 276 F.3d 1091, 1104 (9th Cir. 2002)).

At the final pretrial conference, Totoro suggested he might attempt to introduce evidence of the alleged victim's sexual conduct or predisposition to sexual conduct to show that she engaged in the alleged sexual conduct willingly and he therefore did not have the requisite intent to persuade or entice her. (Hr'g Tr. at 37:6–40:21.) Totoro presumably believes he would be permitted to do so pursuant to Rule 412's second exception, which permits "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent." FED. R. EVID. 412(b)(1)(B). He is incorrect. By definition, the victim in a sexual exploitation of a minor case is a minor. A minor cannot consent to being sexually exploited. *See United States v. Remoi*, 404 F.3d 789, 795 (3d Cir. 2005); *United States v. Abad*, 350 F.3d 793, 798 (8th Cir. 2003). "[W]hen sexual assaults are committed upon children . . . , consent is not a defense. The reason is that the victims in these cases, because of ignorance or deceit, do not understand what is happening to them. Therefore their 'consent' is of no significance." *Abad*, 350 F.3d at 798 (quoting *Guarro v. United States*, 237 F.2d 578, 581 (D.C. Cir. 1956)).

The Ninth Circuit's decision in *United States v. Dhingra*, 371 F.3d 557 (9th Cir. 2004), is illustrative. The defendant, charged with enticement of a minor in violation of 18 U.S.C. § 2422(b), proposed a jury instruction that would have required the jury to acquit him if it found that the victim induced him and was at least partially willing to engage in the alleged sexual conduct. *Id.* at 567. The trial court refused to give the instruction. *Id.* In affirming the defendant's conviction, the Court of Appeals wrote:

> [Defendant's] argument collapses because he misconstrues the nature of liability under § 2422(b); his proposed jury instruction reflects this mistake. In effect, [Defendant] claims that entrapment by the victim ameliorates any inducement on his part. Again, this reading of the statute mistakenly changes

the focus from the defendant to the victim. The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation. So long as a defendant's actions constitute the act of persuading, inducing, enticing, or coercing a minor to engage in criminal sexual activity, § 2422(b) applies.

*Id.* at 567–68 (citation omitted).

In *United States v. Dye*, No. 09-3410, 2010 WL 4146187, at *3 (3d Cir. Oct. 22, 2010), the Third Circuit Court of Appeals rejected a similar argument. In that case, the defendant was charged with enticing a minor in violation of 18 U.S.C. § 2422(b) and traveling interstate for the purpose of engaging in illicit sexual conduct in violation of 18 U.S.C. § 2423(b). At trial, he admitted to the conduct alleged but argued that the Government's evidence against him was insufficient because the purported minor "was a seductress who had persuaded, induced, and enticed [him], not the other way around." *Id.* at *1. The Court of Appeals rejected this defense:

[Defendant's] "hot to trot" defense is especially troubling because its underlying premise is that it is possible for a 14-year-old child to seduce a 36-year-old man, absolving the man of criminal liability for engaging in, or attempting to talk the minor into engaging in, illicit sexual activity. [Defendant] cites no case law, however, to support the notion that minors-who are, by law, unable to even consent to sexual activity, *United States v. Remoi*, 404 F.3d 789, 795 (3d Cir. 2005)-can "ask for it" in such a way that it becomes legally permissible for adults to entice minors into sexual escapades.

*Id.* at *3 n.3. The Court of Appeals then upheld his conviction, noting that the evidence showed he committed "numerous acts, any one of which is sufficient evidence of enticement," including "exposing himself and masturbating for the minor, promising the minor that sex would be pleasurable, requesting nude photos of the minor, etc."

*Id.* at *3; *see also United States v. Galletta*, 662 F. App'x 190, 192–93 (3d Cir. 2016) ("To the extent that [Defendant] argues that he only attempted to have *non-coercive* sex

with the young girl and, thus, did not violate § 2422(b), his argument is unavailing. Concluding that such an attempt does not violate § 2422(b) would be counter to the purpose of the statute to 'investigate and bring to justice those individuals who prey on our nation's children.'" (internal citations omitted)).

Likewise, here, the minor victim's alleged willingness to engage in sexual conduct with or at the behest of Totoro is irrelevant to whether Totoro is guilty of violating either 18 U.S.C. § 2422(b) or § 2251(a). So long as Totoro used, persuaded, induced or attempted to induce her to engage in criminal sexual activity (§ 2422(b)) or sexually explicit conduct for the purpose of producing a visual depiction of such conduct (§ 2251(a)), the statutes were violated. *Id.*; *see also United States v. Sibley*, No. 15-4232, 2017 WL 900112, at *4 (6th Cir. Mar. 7, 2017) (minor victim's consent irrelevant to whether defendant violated § 2251(a)); *United States v. Raplinger*, 555 F.3d 687, 692 (8th Cir. 2009) (minor victim's willingness to engage in sexual conduct irrelevant to whether defendant violated 18 U.S.C. § 2251(a) and district court did not err by excluding such evidence pursuant to Rule 412); *United States v. Ausburn*, No. 11-451, 2011 WL 2938019, at *7 (W.D. Pa. July 18, 2011) (counsel was not ineffective for failing to argue that the minor victim actually pursued the defendant in a § 2422(b) enticement case because such an argument, "pushing blame on the child-victim," would have been meritless).

Accordingly, because evidence of the alleged victim's consent to being sexually exploited is not a defense to a § 2422(b) or § 2251(a) charge, such evidence is not

admissible pursuant to Rule 412(b)(1)(B) or any other exception,[9] and the Government's Motion is granted.

## IV.

Totoro next moves to sever count eight, 18 U.S.C. § 873 (blackmail), pursuant to Federal Rules of Criminal Procedure 8(a) and 14(a) and count two, 18 U.S.C. § 2422(b) (enticement) pursuant to Rule 14(a). The Court grants the Motion in part.

## A.

Rule 8(a) of the Federal Rules of Criminal Procedure provides that indictments "may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED R. CRIM. P. 8(a). The purpose of Rule 8 is to "promote economy of judicial and prosecutorial resources." *United States v. Gorecki,* 813 F.2d 40, 42 (3d Cir. 1987). "For joinder to be proper, a jury must reasonably be expected to compartmentalize the evidence from the separate offenses." *United States v. Hudgins*, 338 F. App'x 150, 153 (3d Cir. 2009) (citing *United States v. Reicherter,* 647 F.2d 397, 400 (3d Cir. 1981)). "Rule 8(a) itself offers considerable flexibility for the joinder of offenses in a single indictment and prosecution, as long as there is some logical relationship between the charges articulated by the Government." *United States v. Brooks,* No. 7-705, 2009 WL 116967, at *2 (E.D. Pa. Jan.15, 2009).

---

[9]     In any event, Rule 412(c)(1) states that if a party intends to offer evidence under Rule 412(b), the party must file a motion specifically describing the evidence and stating the purpose for which it is to be offered at least fourteen days before trial, serve the motion on all parties and notify the alleged victim. *See* FED. R. EVID. 412(c)(1). Totoro did not do so.

Even if a charge is properly joined under Rule 8(a), however, the Court "may order separate trials of counts" under Rule 14 if "the joinder of offenses . . . for trial appears to prejudice a defendant or the government." FED. R. CRIM. P. 14(a). "Defendants bear a 'heavy burden' in showing prejudice from joinder." *Hudgins*, 338 F. App'x at 153 (quoting *United States v. Console,* 13 F.3d 641, 655 (3d Cir. 1993)). "They must demonstrate that joinder will result in a 'manifestly unfair trial, beyond a mere showing that he would have had a better chance of acquittal with separate trials.'" *Id.* (quoting *Government of Virgin Islands v. Sanes,* 57 F.3d 338, 341-342 (3d Cir. 1995)). A desire to testify as to some counts and not to others can be sufficient to show prejudice if the defendant provides a specific explanation for his reasons. *Id.* at 400–01. Ultimately, "motions for severance rest in the sound discretion of the trial judge" who is "best situated to weigh possible prejudice to the defendant against interests of judicial economy." *Reicherter,* 647 F.2d at 400.

**B.**

Totoro contends that the blackmail charge (count eight) is improperly joined under Rule 8(a) and, in the alternative, it should be severed under Rule 14(a). Since the Court agrees that the blackmail charge was improperly joined under Rule 8(a), it need not consider Totoro's alternative argument.

In order to be properly joined with the remaining counts in the case, blackmail must fit under one of three categories prescribed in Rule 8(a), which allows joinder where the offenses are: (1) the same or similar in character; (2) based on the same act or transaction; or (3) connected with or constitute parts of a common scheme or plan. FED. R. CRIM. P. 8(a). The Government concedes that the first two categories do not

31

apply, but contends that Totoro's alleged blackmail was part of a common scheme of exploiting the alleged minor victim.

Aside from this bare assertion, however, the Government fails to explain how the alleged blackmail had anything to do with the other charges in the indictment. *Cf. United States v. Fattah*, 858 F.3d 801, 818–19 (3d Cir. 2017) (explaining that charges of tax fraud and bank fraud were parts of a common plan or scheme because the defendant would "use false tax information to convince banks to offer him loans" such that "the different offenses represent different components of a single 'enrichment scheme'"); *United States v. Torres*, 251 F. App'x 763, 764 (3d Cir. 2007) (holding that multiple robberies were properly joined as part of a common plan or scheme because "evidence from each of the robberies would have been admissible in separate trials to demonstrate [the defendant's] identity as one of the robbers"). The indictment never hints at a common scheme or plan to blackmail the minor's parents. To the extent the indictment outlines a scheme or plan, it was the alleged sexual exploitation of the minor over a period of years. The attempted blackmail took place after the defendant's relationship with the minor ended—there is no connection between the blackmail and the scheme to exploit the minor.

In the alleged blackmail scheme, it was the minor's parents—not the minor— who were the victims. On the face of the indictment and criminal complaint, there is almost no connection between the alleged blackmail and the minor[10]—it is not clear if the minor was even aware of the blackmail scheme at the time. *See United States*

---

[10]     The only connection between the minor and the blackmail scheme is referenced in paragraph 15 of the criminal complaint. There, the Government alleges that Totoro accessed the minor's Google Docs account and downloaded the minor's father's personal, business and tax documents. (Compl. ¶ 15, ECF No. 1.)

*Heilman*, 377 F. App'x 157, 202 (3d Cir. 2010) (citing *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003)) ("Our inquiry into the propriety of joinder of offenses focuses on the face of the indictment, not the proof subsequently produced at trial."). Moreover, it remains unclear what, if any, admissible evidence for the counts charging sexual exploitation of a minor would *also* be admissible for the blackmail charge. While there may be some overlap in witnesses, the testimony would likely not overlap at all.

The Government contends that because the charges involving the sexual exploitation of a minor overlap in time with the blackmail charge, they are properly joined. The indictment alleges that Totoro blackmailed the minor's parents between December 30, 2014 and January 10, 2015. (Indictment, at 7, ECF No. 15.) When Totoro was arrested for blackmail on January 14, 2015, agents discovered that his cell phone contained pictures of a minor engaging in sexually explicit conduct. (*Id.* at 6.) This overlap, however, is superficial. Again, Totoro's relationship and interactions with the minor ended before the alleged blackmail scheme began. Indeed, all other counts relating to the minor occurred on or prior to June 10, 2014. *See generally id.* Because the blackmail charge involves different evidence, occurred at a different time period and was not part of the alleged plan or scheme to sexually exploit the minor, it was improperly joined under Rule 8(a).

## C.

Totoro also moves under Rule 14 to sever count two (enticement) from the other sexual exploitation of a minor charges. Totoro does not argue that count two is improperly joined under Rule 8(a) because he concedes that this count "can be construed" to be of "the same and similar character" as the other counts in the

indictment. (Mot., at 2, ECF No. 134.) Totoro agues instead that the enticement charge should be severed because he is prejudiced by its joinder. Totoro faces a "heavy burden" to show prejudice: he "must demonstrate '*clear and substantial prejudice resulting in a manifestly unfair trial.*'" *Console*, 13 F.3d at 655 (citations omitted).

Totoro first argues that pictures that do not meet the statutory definition of sexual exploitation of a minor are not relevant to the enticement charge. (Mot., at 4.) Alternatively, he contends that these pictures are inadmissible evidence under Federal Rule of Evidence 404(b). (*Id.* at 5.) Both of these contentions are wrong. At least some of the sexually explicit images are alleged to have been exchanged during the same conversations where Totoro is accused of enticing the minor. Thus, at least some of these images would be admissible at a trial solely on the enticement charge. These pictures would not be barred by Rule 404(b) because they are not "other" bad acts but "acts performed contemporaneously with the charged crime" and are thus intrinsic evidence not barred by the Rule. *See United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010); *see id.* (Prior acts that (1) "directly prove[ ] the charged offense" or are (2) "performed contemporaneously with the charged crime . . . [and] facilitate the commission of the charged crime" are "intrinsic" to the charged offense and admissible. All other evidence is "extrinsic" and must be analyzed under Rule 404(b)).

In any event, jurors will be instructed to "compartmentalize" evidence, *i.e.*, to only consider evidence that is admissible for each specific count. *Console*, 13 F.3d at 656 ("[T]he limiting instructions given by the district court prior to the introduction of evidence that the jury could not consider against [certain evidence against the defendant] helped to 'compartmentalize' the evidence and thus diminished any

34

potential prejudice to [the defendant].").  And jurors are presumed to follow the Court's instructions.  *United States v. Hakim*, 344 F.3d, 324, 330 (3d Cir. 2003)).

Totoro relies on *United States v. Lee*, No. 14-254, 2015 WL 12631238 (M.D. Pa. June 2, 2015), where a district court did sever child pornography counts from enticement counts.  In that case, however, there was no relationship between the child pornography counts and the enticement count.  Here, the minor victim Totoro allegedly enticed is also the subject of the child pornography that Totoro allegedly received and possessed.  Other courts have denied motions to sever enticement and child pornography charges.  *See United States v. Reynolds*, 720 F.3d 665, 670 (8th Cir. 2013) (enticement and child porn properly joined and not severed); *United States v. Davies*, No. 3:08-CR-00253, 2010 WL 3024844, *5 (M.D. Pa. July 29, 2010).

In his Motion, Totoro stated without further explanation that he "may decide to testify in either the enticement count, the production and picture counts or the blackmail counts."  (Mot., at 12, ECF No. 134.)  At the final pretrial conference, however, Totoro explained that he wished to testify at trial in defense of the blackmail charge, but was uncertain as to the other charges.  (Hr'g Tr. at 16:20–17:1.)

While a defendant's desire to testify in some but not all counts can satisfy the prejudice required by Rule 14, Totoro has not satisfied this requirement here.  To do so, a defendant must make a "convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." *Reicherter*, 647 F.2d at 401.  The defendant also must "present enough information regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other to satisfy the court that the claim of prejudice is

genuine." *Id.* (citation and quotation omitted). Totoro's passing reference to his potential desire to testify in the enticement count is insufficient to satisfy the standard outlined in *Reicherter* and does not create the requisite prejudice required for severance under Rule 14.

Because Totoro has not met his heavy burden to demonstrate prejudice from the joinder of enticement and the other charges related to sexual exploitation of a minor, his Motion to sever enticement under Rule 14 is denied.

### V.

Totoro also moves for "bail to a halfway house to be able to better represent himself in trial." (Def.'s Mot., ECF No. 140.) The Government contends that Totoro should not be granted bail because the conditions it cited in its initial Motion for Pretrial Detention remain in place. (Gov't Resp., ECF No. 149.)

Totoro appeared before Magistrate Judge Lloret on the Government's Motion for Pretrial Detention on April 13. 2015. (ECF Nos. 7 & 8.) At the hearing, the Government and Totoro, represented by counsel (ECF No. 8), stipulated to probable cause regarding the charges against Totoro as well as to pretrial detention. (ECF No. 8.) The Government detailed the charges and weight of the evidence against Totoro and noted that several of the charges involved a minor victim. *See* (Gov't Pretrial Detention Mem., at 9, 18–49, ECF No. 7); *see also* 18 U.S.C. § 3142(g)(1)–(2). The Government also described Totoro's relevant personal characteristics, including his unemployment, lack of a fixed address or assets other than a car and sparse ties to the community. (Gov't Pretrial Detention Mem., at 12, 14); *see also* 18 U.S.C. § 3142(g)(3)(A). It noted the risk that Totoro could carry out his alleged threats that

resulted in the blackmail charge against him.  (Gov't Pretrial Detention Mem., at 12, 14); *see also* 18 U.S.C. §§ 873, 3142(g)(4).

Totoro now contends that transfer to a halfway house would better facilitate his trial preparation and asserts that he is not a flight risk or danger to the community. His conclusory assertions are insufficient in light of the § 3142(g) factors.  Because Totoro is charged with violating, among others, 18 U.S.C. §§ 2251, 2252 and 2422, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(E).  Totoro has done nothing to rebut this presumption, and the conditions the Government noted in its initial Motion for Pretrial Detention remain today.

Totoro's Motion for Bail is denied.

## VI.

Totoro also filed two discovery-related motions, seeking funds for a laptop computer and a subpoena for additional records from various third parties.  (ECF Nos. 139 & 143.)

## A.  ECF No. 139

Totoro moves under 18 U.S.C. § 3006A(e)(1) for Court authorization of funds for a laptop with Microsoft word, printing and saving capabilities, and access to the internet, including PACER and Lexis Nexis, in addition to funding for printing.  (ECF No. 139.)  Totoro also asks the Court to order the Bureau of Prisons to allow him to have this laptop.  Totoro contends that without access to a laptop with these capabilities, he is being deprived of his rights under the First, Fifth and Sixth Amendment and will be unable to make a complete defense.

The Criminal Justice Act provides indigent criminal defendants funding for "investigative, expert, or other services necessary for adequate representation" under certain circumstances. 18 U.S.C. § 3006A(e)(1). Before addressing necessity, "a court should first 'satisfy itself that a defendant may have a plausible defense.'" *United States v. Roman*, 121 F.3d 136, 143 (3d Cir. 1997) (quoting *United States v. Alden*, 767 F.2d 314, 318 (7th Cir. 1984)). After determining that the defense is plausible, the Court must find that the services are "necessary for adequate representation." 18 U.S.C. § 3006A(e)(1). "The burden of establishing necessity rests on the defendant" who "must demonstrate with *specificity*, the reasons why such services are required." *United States v. Pitts*, 346 F. App'x 839, 841 (3d Cir. 2009) (quotations and citations omitted).

Totoro's request for a laptop is denied because it is not necessary to his defense. Totoro has access to a computer and a legal research database at the Federal Detention Center. Personal laptops, printers and access to the internet are among many things that Totoro acknowledged he may need to do without when instructed during the *Peppers* colloquy that if he decided to represent himself he would face impediments that an attorney would not. (ECF No. 81.)

### B. ECF No. 143

Totoro also seeks a court order pursuant to Federal Rule of Criminal Procedure 17 to subpoena records of emails and text messages from various third parties, including AT&T, Verizon, Google, AOL and Kik. (Def.'s Mot., at 1–2, ECF No. 143.)

To obtain pretrial production and inspection of unprivileged materials from a third party witness under Rule 17(c), a party must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981) (*Cuthbertson II*) (quoting *United States v. Nixon*, 418 U.S. 683, 699–700 (1974)). In essence, a party "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon*, 418 U.S. at 700. Rule 17 is not a "broad discovery device," *Cuthbertson II*, 651 F.2d at 192,—indeed it is "not intended to provide an additional means of discovery" at all, *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951). Thus the "mere hope that some exculpatory material might turn up" is not a sufficient basis for a subpoena. *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980) (*Cuthbertson I*).

The gravamen of Totoro's request is that the Government's alleged failure to request all text messages and emails between him and the alleged victim renders him unable to prepare a complete defense. (Def.'s Mot., at 2.) He contends that in the absence of those messages, the Government cannot establish his intent. (*Id.*) Construing his motion alternatively, he contends that those messages could contain exculpatory evidence. *See* (*id.*).

Totoro's first potential argument is not a proper ground for a subpoena under Rule 17(c). The Government bears the burden of establishing Totoro's intent to commit the relevant offenses. If the Government lacks sufficient evidence to do so, that obviates the need for Totoro to receive additional text messages and emails. *Cf. Cuthbertson II*, 651 F.2d at 192.

Nor can Totoro subpoena those materials in hopes of uncovering exculpatory evidence in the hands of a third party. Totoro does not point to any particular admissible and relevant exculpatory evidence in the hands of any third party but instead simply contends that the context supplied by the entire body of text messages and email records could be exculpatory. During the hearing on his Motion, Totoro clarified that he wished to subpoena the records because he believes the communications contain "exculpatory and possibly rebuttal evidence." (Hr'g Tr. at 36:15–18.) He contended that the Government did not request all the communications between him and the alleged victim and that the whole body of their messages would "just . . . add more context [to] the whole thing." (*Id.* at 39:2–3.) But Totoro did not point to anything beyond a generalized belief that there were potentially exculpatory communications which the Government did not request in its investigation. *See, e.g.*, (*id.* at 39:3–17, 40:22–41:2).

That is insufficient for a subpoena under Rule 17(c). A subpoena request must refer to materials sought with specificity. *See Nixon*, 418 U.S. at 700. This demands "more than the title of a document and conjecture as to its contents." *United States v. Spence*, No. 09-105, 2014 WL 11514590, at *2 (W.D. Pa. May 12, 2014) (quoting *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992)). A "broad request, . . . based solely on the . . . hope that some exculpatory material might turn up" does not justify a subpoena under Rule 17. *Cuthbertson I*, 630 F.2d at 146; *see also Bowman Dairy*, 341 U.S. at 220 ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms."); *United States v. Onyenso*, No. 12-602, 2013 WL 5322651, at *3 n.4 (D.N.J. Sept. 20, 2013); *United States*

*v. Crews*, No. 10-663-4, 2012 WL 93176, at *3 (E.D. Pa. Jan 12, 2012) (denying subpoena request for recordings of phone calls made from a prison that would contain impeachment evidence); *United States v. Ferguson*, 2007 WL 2815068, at *3 (D. Conn. Sept. 27, 2007) (finding a subpoena seeking to "possibly uncover . . . evidence that could, in turn, lead to exculpatory evidence" was not obtainable through a Rule 17(c) subpoena).

Totoro's Motion is denied.

## VII.

Finally, Totoro filed two Motions to Seal, (ECF Nos. 142 & 144), requesting that ECF Nos. 133 and 143 be sealed because they contain identifying information of the alleged victim and her family.  The Motions are granted.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.