**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.  15-291 |
| JOSEPH P. TOTORO, II | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. § 2255**

The United States, by and through its attorneys, Jennifer Arbittier Williams, Acting United States Attorney for the Eastern District of Pennsylvania, and Priya T. De Souza, Assistant United States Attorney, respectfully requests that for the reasons described in detail below, this Court deny defendant Joseph P. Totoro's *Pro Se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 USC § 2255 (hereafter the Motion or "Mot.").

I.   **FACTUAL BACKGROUND**

For two years, the defendant, a private tennis coach, sexually abused and exploited a young student athlete under his care and guidance.  From January 5, 2013 through June 10, 2014, the defendant enticed the minor, hereafter "Jane," to engage in criminal sexual activity, namely statutory sexual assault, in violation of Pennsylvania law, through his online communications with Jane.  PSR ¶ 17.  In particular, he intended to persuade, induce, entice, and coerce Jane to have sex with him while she was under the age of 16 and while he was more than 30 years older than her. *Id.*  As part of his coercive conduct, the defendant routinely had communications over the internet with the victim which were sexual in nature.  PSR ¶¶ 21, 22.  He persuaded Jane to engage in video chat sessions where she would perform sexually explicit acts for the defendant.  *Id.*  He continuously solicited the victim to send him images of her engaged in "naked squatting" and other

sexually explicit pose. On April 12, 2013, the defendant received over the internet an image of Jane engaged in sexually explicit conduct. PSR ¶ 18. *Id.* On June 10, 2014, the defendant attempted to entice Jane to produce another visual depiction of her engaged in sexually explicit conduct using the Internet. The defendant also sent images of nude male genitalia to Jane over the internet and while she was under the age of 16. PSR ¶ 24. Two of his transmissions of lewd and obscene material to Jane, a minor, occurred on April 17, 2013 and May 11, 2013. ¶ 18.

In the fall of 2014, Jane's parents stopped paying for the defendant's private training of the victim. PSR ¶ 15. When Jane's parents fired him, the defendant coerced Jane to provide him with copies of confidential business and tax documents belonging to Jane's father and then used the confidential documents to blackmail Jane's parents. *Id.* On January 14, 2015, the defendant was arrested when he arrived at a pre-determined rendezvous point where he expected to meet Jane's parents so they could pay him off. PSR ¶ 15, 16. A cell phone was seized from the defendant at that time, which was subsequently found to contain at least one visual depiction of Jane engaged in sexually explicit conduct, as well as the image described above that the defendant received from Jane on April 12, 2013. PSR ¶ 17. The abuse of Jane was only discovered because of the seizure of the defendant's cell phone in the context of his blackmail arrest.

## II.    PROCEDURAL HISTORY

On June 25, 2015, defendant Joseph P. Totoro, II, was charged by indictment as follows: Count One, attempted production of child pornography, in violation of 18 U.S.C. § 2251(a); Count Two, enticement of a minor, in violation of 18 U.S.C. § 2422(b); Counts Three and Four, receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2); Counts Five and Six, transfer of obscene matter to a minor, in violation of 18 U.S.C. § 1470; Count Seven, possession of child

pornography, in violation of 18 U.S.C. § 2252(a)(4)(B); and Count Eight, blackmail, in violation of 18 U.S.C. § 873.

The defendant was initially represented by Assistant Federal Defenders Catherine Henry and Maranna Meehan.  In early 2016, this Court granted defense counsel's request that the defendant undergo a thorough competency evaluation at a federal medical facility.  The defendant agreed to be committed to a hospital for a competency evaluation.  ECF Doc. 208, pp. 6 – 7.  The government agreed, but noted concern that the defendant's mental health symptoms were a result of malingering.  ECF Doc. 208, pp. 4 – 5.

The defendant was evaluated by medical personnel, who confirmed that the defendant's symptoms were a result of malingering.  The defendant was returned to this jurisdiction approximately five months after his commitment order.

On September 9, 2016, this Court held an *ex parte* hearing to consider the defendant's request to remove the Assistant Federal Defenders as counsel.  During this hearing, the defendant complained that he had been notified of various plea agreements and was confused about whether the victim was "cooperating" or not.[1]  Mot. at 52.  In particular, the defendant complained that a ten-year plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) (also known as a "C plea") had been offered to him at the inception of the case and had since been replaced with other offers.  *See* Gov't Ex. E (ECF Doc. 216; Sealed Transcript, 9/7/2016 Mot. Hrg.), p. 28.

The government has no record of a 10-year C plea having been extended to the defendant. During the course of the prosecution, formal plea offers under Rule 11(c)(1)(C) were extended to

---

[1] The defendant stalled his trial date for years by feigning incompetence and repeatedly moving for new counsel until ultimately proceeding *pro se*.  When he understood the victim to be in the courthouse and prepared to testify on the first day of trial, he pled guilty.

the defendant, however the proposals included an agreement that the defendant's sentence be within a specific sentencing range, not to a flat term of incarceration, as suggested in the defendant's pleading.

On September 9, 2016, the Court granted the defendant's request to remove the Federal Defender as counsel and appointed George Newman, Esquire, to represent the defendant. ECF Doc. 51, 53. On February 24, 2017, this Court granted the defendant's motion to withdraw attorney Newman as his attorney and to proceed *pro se*. ECF Doc. 83. Attorney Michael Drossner was appointed as standby counsel. ECF Doc. 85. The defendant represented himself up until the time of trial, at which time this Court granted the defendant's request for his standby counsel to represent him during the guilty plea and sentencing hearings. ECF Doc. 182.

On July 31, 2017, the defendant entered a guilty plea to Counts One through Three and Five through Eight of the indictment. The agreement was entered into under Federal Rule of Criminal Procedure 11(c)(1)(C), which permits the parties to propose a specific sentencing range that, should the court accept the plea agreement, is binding on the court. The parties agreed that the following specific sentence would be the appropriate disposition of the case: a sentence of incarceration within the range of 180 months (the mandatory minimum) up to a maximum of 300 months, and a term of supervised release, fine, special assessment, restitution, and forfeiture as ordered by the court. The parties further agreed that if the court rejected the parties' sentencing proposal: "(a) with the consent of both parties the agreement may be converted to a plea agreement pursuant to Rule 11(c)(1)(B), and the sentencing range of 180 to 300 months shall be the joint recommendation of the parties, although not binding on the court, or (b) either party may withdraw from the plea agreement and proceed to trial." *See* Plea Agreement, ¶ 2.

4

In the plea agreement, Totoro agreed that, with limited exceptions, he would neither appeal nor present any collateral challenge to his conviction or sentence. Specifically, the applicable portion of the appellate waiver in the plea agreement stated:

> If the Court accepts the recommendation of the parties and imposes the sentence stated in paragraph 2 of this agreement, the parties agree that neither will file any appeal of the conviction and sentence in this case. Further, the defendant agrees that if the Court imposes the recommended sentence he voluntarily and expressly waives all rights to collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution. The defendant retains the right to file a claim, if otherwise allowed by law, that an attorney who represented the defendant during the course of this plea negotiation and change of plea hearing, provided constitutionally ineffective assistance.

Plea Agreement, ¶10. At the guilty plea colloquy, the district court reviewed this provision with the defendant and assured that the plea and the appellate waiver was entered knowingly and intelligently. *See* Gov't Ex. D (Transcript, 7/31/17 Plea Colloquy), pp. 50 – 55. The Court postponed accepting the plea agreement until the date of sentencing.

On November 14, 2018, the Court accepted the guilty plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and imposed sentence. The court determined that the offense level under the advisory Sentencing Guidelines was 40, and the defendant's criminal history category was I, producing an advisory sentencing range of 292 to 365 months. The court then accepted the plea agreement, and pursuant to the plea agreement, adopted the negotiated sentencing range of 180 to 300 months. The court imposed a sentence of 300 months of imprisonment. The sentence was within the proposed sentencing range agreed to by the defendant in the plea agreement, and the range did not represent an upward departure or variance from the otherwise applicable guidelines. As such, pursuant to the appellate waiver in the plea agreement, described above, the defendant had no basis or right to appeal.

Nevertheless, on November 29, 2017, Totoro filed a notice of a direct appeal. On August 15, 2019, the Third Circuit enforced the appellate waiver in the plea agreement and summarily dismissed the defendant's appeal. ECF No. 218. The defendant then appealed to the United States Supreme Court. On February 24, 2020, the Supreme Court denied the defendant's petition for writ of certiorari.

On February 23, 2021, the defendant timely filed this petition for relief under 28 U.S.C. § 2255, setting forth various claims of ineffective assistance of counsel against his initial and final attorneys. The defendant alleges that his first attorneys, Assistant Federal Defenders Catherine Henry and Maranna Meehan, and his attorney at the time of his plea negotiations and sentencing, Michael Drossner, all provided ineffective assistance. With regards to attorneys Henry and Meehan, the defendant claims that they were unreasonable by failing to review a plea agreement purportedly offered under Federal Rule of Criminal Procedure 11(c)(1)(C) while the defendant was undergoing a competency evaluation, and which allegedly contemplated a 10-year sentence. He also argues that attorneys Henry and Meehan were ineffective for failing to force the government to offer the same plea offer to the defendant after he was found to be malingering and faking his incompetence. The defendant then contends that attorneys Henry and Meehan were ineffective for failing to contact the victim to determine if she was "cooperating" with the government. With regards to attorney Drossner, the defendant complains that Drossner was ineffective for permitting the defendant to plead guilty to Count Three (receipt of child pornography) without the defendant being advised of the scienter requirement during the plea colloquy. The defendant also contends that Drossner was ineffective for permitting the defendant to be sentenced on both Counts Three (receipt of child pornography) and Seven (possession of

child pornography) of the indictment based on an alleged violation of the Double Jeopardy Clause. Finally, the defendant claims that, as with his prior counsel, attorney Drossner, too, was ineffective for failing to force the government to offer a 10-year "C" plea.

### III.   LEGAL STANDARD

The Third Circuit has set forth the standard for analyzing claims of ineffective assistance of counsel as follows:

> In *Strickland v. Washington*, the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims. The first part of the Strickland test requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687, 104 S. Ct. 2052 (internal citations omitted). The second part specifies that the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S. Ct. 2052. …

*United States v. Bui*, 795 F.3d 363, 366–68 (3d Cir. 2015) (finding counsel ineffective for incorrectly advising that defendant was safety valve eligible and finding prejudice where plea then provided no benefit to defendant).

The Sixth Amendment right to effective counsel also applies to plea negotiations.  *Hill v. Lockhart,* 474 U.S. 52, 59 (1985) (adopting two-part *Strickland* test to challenges to guilty pleas based on ineffective assistance and finding defendant failed to show prejudice where counsel allegedly relayed incorrect eligibility date for parole);  *Missouri v. Frye,* 566 U.S. 134, 151 (2012) (ineffective assistance where defense counsel failed to relay an earlier, more favorable plea offer to defendant and remanded to state court for *Strickland* prejudice determination); *United States v. Booth*, 432 F. 3d 542 (3d Cir. 2005) (applying *Strickland* two-prong test in evaluating effectiveness of counsel's plea advice).

7

Even where the defendant claims ineffective assistance of counsel during the plea-bargaining process, the defendant must still show prejudice.  Where the plea offer has lapsed or been rejected because of counsel's deficient performance, the defendant must demonstrate a reasonable probability that he would have accepted the earlier plea offer.  *Frye*, 566 U.S. at 147.  Moreover, a "complete showing of *Strickland* prejudice," requires the defendant to show a reasonable probability that neither the prosecution nor the trial court would have rescinded or refused to accept the terms of the plea offer.  *Id*.  Where the defendant claims ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show a reasonable probability that he would have otherwise elected to proceed to trial.  *Hill,* 474 U.S. at 59.

If the defendant fails to demonstrate either ineffectiveness or prejudice, the claim fails under *Strickland* and the inquiry may end without needing to review the remaining element. *Strickland,* 466 U.S. at 697.  Thus, this Court is not required to review both prongs or review them in any particular order.  *Id*.  Indeed, the *Strickland* Court recognized that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

Because the defendant fails to demonstrate either ineffectiveness or prejudice for any of the claims he has raised, his claims of ineffective assistance of counsel must fail under *Strickland.* The defendant's Section 2255 Petition should be denied.

## IV.    __ARGUMENT__

The defendant's habeas petition presents several claims of ineffective assistance of counsel.  While the government finds all of the claims to be devoid of merit, the government agrees that the evidentiary hearing requested by the defendant is necessary to complete the record with regard to some of the ineffective assistance of counsel claims.  When addressing a 2255 motion, the question of whether to order an evidentiary hearing is committed to the sound discretion of the court.  An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  But in exercising discretion, the court must accept the truth of the defendant's factual allegations, unless they are clearly frivolous, on the basis of the existing record. *Government of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1988); *Government of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984).  Here, while some of Totoro's claims could be resolved on the record, he makes allegations about his attorneys' effectiveness that should be resolved based on a complete record that includes the testimony of the attorneys involved.[2]

Based on the evidence that the government expects to present at a hearing, and following such hearing, this Court should deny all of the defendant's claims as entirely lacking in merit. Further, as the defendant fails to make a substantial showing of a denial of any constitutional right,

---

[2] If this Court orders an evidentiary hearing, counsel should be appointed to represent Totoro if he shows that he is indigent. Rule 8(c) of the Rules Governing § 2255 Cases states that "[i]f an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A [providing for appointed counsel where an individual is 'financially unable to obtain adequate representation']." Appointing counsel is thus mandatory for an indigent petitioner in connection with a § 2255 hearing. *United States v. Bendolph*, 409 F.3d 155 (3d Cir. 2005) (en banc) (citing *United States v. Iasiello*, 166 F.3d 212, 213-14 (3d Cir. 1999)).

no certificate of appealability should be issued. The government responds to each claim, as enumerated in the defendant's Section 2255 Petition, below.

> **(1) Defendant fails to demonstrate that attorney Drossner provided ineffective assistance of counsel by permitting him to plead to the terms of the plea agreement.**

The defendant first argues that attorney Drossner should not have permitted the defendant to enter into a plea agreement wherein the defendant limited his right to appeal for ineffectiveness of assistance of counsel to his legal representation during the plea bargaining and at sentencing phases of the case. Consistent with the Department of Justice's policy in broadly permitting ineffective assistance of counsel appeals, the government declines to enforce the language of this narrow waiver. The defendant is free to raise whatever ineffective assistance of counsel claims he deems appropriate. Thus, the defendant's concern that he may be prejudiced by being unable to fully litigate any ineffective assistance claim is moot.

The defendant next argues that he should have been colloquied with regard to all purported former plea offers. Mot. at 49. Stated another way, the defendant believes that this court should have addressed each plea offer purportedly made by the government, confirmed that the offer was conveyed to the defendant, and then confirmed that he did not accept each prior offer. The defendant's reliance on *Missouri v. Frye*, 566 U.S. 134 (2012), to support this claim is misplaced. *Frye* suggests, but does not require, that a defendant be colloquied on all plea offers. *Id.* at 147. The purpose of such a colloquy is to prevent future claims that the defendant was unaware of a plea offer – a claim the defendant does not subscribe to here. Importantly, the defendant fails to allege how he was prejudiced by the lack of a colloquy. Contemporaneous emails between attorney Drossner and AUSA DeSouza, attached here as Exhibit A, show that prior to trial, the defendant

was unwilling to accept a plea to more than five to eight years' incarceration – far below anything the government ever offered. There is no evidence[3] that anyone failed to communicate to the defendant any plea offer that was more favorable than any he rejected.  Because the defendant has failed to establish either that attorney Drossner was ineffective or that Totoro was prejudiced, his claim cannot succeed.  The defendant's petition should be denied as to this point.

### (2) Defendant fails to demonstrate that attorney Drossner provided ineffective assistance of counsel during this Court's plea colloquy.

The defendant next claims that attorney Drossner was "constitutionally ineffective at the Plea Colloquy and in drafting the Plea agreement by advising the Petitioner to plead guilty while ignoring the scienter requirement in the third count of the indictment (18 U.S.C. § 2252)."  The scienter for receipt of child pornography (Count Three) requires that the defendant (1) knowingly receive the child pornography and (2) know that the images depicted child pornography.  At his plea colloquy, the defendant was advised about the second prong of the scienter, that is, that he must be aware of the contents of the image.  As to the first prong, the defendant was advised that he had to "receive" child pornography as opposed to 'knowingly' receive.  However, the defendant suffered no prejudice from this error.  On the contrary, the defendant himself was aware of that the crime involved "knowingly" receiving child pornography as he had filed a *pro se* pre-trial motion on this very point.  Then, during his plea colloquy, the defendant admitted to facts which supported his guilt on this count.  Most importantly, the defendant fails to demonstrate a reasonable probability that he would have otherwise not pled guilty.  Because he fails to meet his burden of

---

[3] Testimony from his attorneys at an evidentiary hearing would provide a more fulsome record on this point. The government does not expect that additional testimony to materially alter the facts in a way that would make the defendant's claim more viable.

prejudice, this claim does not provide him the relief he seeks.

Federal Rule of Criminal Procedure 11(b)(1)(g) requires the Court to inform and determine that the defendant understands at the time of a plea "the nature of each charge to which the defendant is pleading." The elements of receipt of child pornography, as relevant here, require the defendant to (1) *knowingly* receive a visual depiction using any means or facility of interstate or foreign commerce; (2) the producing of such visual depiction involves the use of a minor engaged in sexually explicit conduct; and (3) such visual depiction is of such conduct. 18 U.S.C. § 2252(a)(2) (emphasis added). The term knowingly has been interpreted to apply to both the receipt of the image and the defendant's awareness of "the sexually explicit nature of the material and to the age of the performers." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68, 78 (1994). Thus, receipt of child pornography requires knowingly coming into possession of the child pornography and knowing the illicit nature of the images received.

During the plea colloquy, the defendant acknowledged reviewing the Indictment, which charges the defendant in Count Three with having "knowingly received" child pornography. Gov't Ex. D, pp. 31 – 32. The Court then advised:

> Count 3 charges a violation of 18 United States Code Section 2252(a)(2), which is receipt of child pornography on April 12th, 2013, that in order for you to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt; first, that *you received* a visual depiction; two, that the image depicts an actual minor engaged in sexually explicit conduct, and three, *that you were aware of the sexually explicit nature and character of the materials*, and that visual depictions are of a minor engaged in sexually explicit conduct, and that the images had been mailed, shipped, or transported in interstate or foreign commerce. Do you understand those to be the elements of the charge against you for receipt of child pornography on April 12th, 2013?

*Id.* at 57 (emphasis added).

Thus, the Court advised the defendant that he must know the nature of the illicit material, however, Totoro was not personally advised by the Court that he must knowingly receive the child pornography. Neither the government, nor defense counsel, advised the Court that the first element should read "knowingly receive."[4]

Importantly, counsel's failure to object to the error in the elements of the offense as they were read is not the end of the analysis. Indeed, collateral relief is unavailable where the petitioner merely asserts failure to comply with the formal requirements of Rule 11. *United States v. Timmreck*, 441 U.S. 780, 785 (1979) (no relief granted where defendant has not shown prejudice from technical Rule 11 violation); *see also* Fed. R. Crim. Procedure 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights."). "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered into the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). The Court must examine the effect of the omitted warning on the defendant's decision to enter his guilty plea by looking at the "entire record, not to the plea proceedings alone[.]" *Id*. Here, the record shows that the technical Rule 11 infraction had no effect on the defendant's decision to plead guilty to this count, and therefore, there is no prejudice.

Notably, in his Section 2255 petition, the defendant does not assert actual innocence as to this count, nor claim he would otherwise have proceeded to trial on this count. Indeed, the defendant is careful to avoid claiming that he *himself* was unaware of the scienter requirement.

---

[4] The Court likely relied on the government's pleadings on this point, which regrettably contained a typographical error omitting the word "knowingly" from the first element.

Nor could he – as the record shows that Totoro, acting *pro se*, filed a handwritten Motion to Dismiss the Count Three receipt count wherein he directly described the knowledge scienter and argued the government had insufficient evidence to prove it. *See* ECF Doc. 137, p. 3. In his motion, the defendant repeatedly asserted that the government cannot prove he "knowingly receive[d] the picture." *Id.* Totoro then focused on the second aspect of the scienter requirement, that is, how "the statute says the person must know at least the content of the picture coming," and claimed he was not expecting such an image. *Id.* Clearly, in spite of the Rule 11 error, the defendant was well aware of the scienter element.

In addition to his own pre-trial motion, the facts elicited at the time of his plea support his knowing receipt of child pornography. At his plea colloquy, the defendant made the following admissions:

> Q: Okay. And again, do you understand that you are pleading guilty to the following indictment; that is, you were hired as a private sports coach for a minor, who was at that time 14 years old and you were 45, that you were aware of that minor's relationship – excuse me – of her age, and that during the relationship between the two of you, you sent her sexually explicit images of himself, encouraged her to take sexually explicit photographs of herself and to send them to you, and sent the minor numerous text messages describing the sexual acts that you wanted to perform with the minor.
>
> A. Yes, sir.

Gov't Ex. D, p. 54.

In the above excerpt, the defendant acknowledged that his crime involved an ongoing "relationship" with the minor where he specifically encouraged her to take and send sexually explicit images to him. The defendant then continued on in the colloquy to admit to attempting to coerce Jane to produce child pornography (Count 1), transmitting lewd images to her (Counts 5 and 6), and possessing at least one sexually explicit image of her (Count 7). Gov't Ex. D, pp. 60

14

– 65. Based on Totoro's admissions, the Court had a justifiable basis to find that the defendant knowingly received child pornography from his victim. On these facts, it is preposterous to conclude that the defendant admitted only to knowing the content of the image, but not knowing that he received it. Based on the record as a whole, the defendant cannot show that he would have rejected a plea to this count if the Court had explicitly advised him that he had to "knowingly receive" the child pornography. *See e.g. United States v. Lloyd*, 901 F.3d 111, 122 (2nd Cir. 2018) (although district court failed to review elements during plea colloquy, the defendant failed to show that had the District Court explicitly reviewed the elements he would not have entered a plea of guilty to that count); *United States v. Dennis*, 549 Fed. Appx. 408, 413 (finding Rule 11 violation where defendant asked how he pleaded to the incorrect offense, but holding defendant failed to show reasonable probability that, but for the error, the defendant would not have pleaded guilty). Moreover, the record supports what the Court found at the change of plea hearing – that there was a factual basis to support all of the elements of the crimes to which the defendant was pleading guilty. It is the defendant's burden to prove prejudice; and here he has not.

The defendant's reliance on the Sixth Circuit *sua sponte* decision in *United States v. Szymanski* is misplaced. 631 F. 3d. 794, 769 (6th Cir. 2011) (Rule 11 violation where only the charging document language restated at plea colloquy and district court failed to review *X-Citement* "knowingly" standard). Syzmanski was prosecuted for receipt of child pornography after entering a chatroom and later having the illicit images sent to him by others in the chatroom. At his plea colloquy, while the defendant was advised that receipt of child pornography required him to have "knowingly receive[d]" child pornography, the Court did not describe how the defendant must also know the content. *Id.* at 799. Out of a concern that Szymanski received the illicit

15

materials from apparent strangers over the internet, the Sixth Circuit found that the petitioner may have "unknowingly pled to an offense… whose elements he did not understand and which he may not have committed." *Id.* at 798.  The facts in this case are distinguishable.  Totoro was not in a stranger-filled chatroom. To the contrary, he personally knew the victim and her underage status.  For years, the defendant groomed and coerced the victim to engage in illegal sexual conduct for his sexual pleasure over the internet and in person.  During this time period, he sent text messages to her containing lewd images of his genitalia for the purpose of encouraging her to reciprocate with depictions of herself engaged in sexually explicit conduct.  Online chat records from the victim tracked his receipt of child pornography and the same image he admitted to criminally receiving was later seized (along with others) from his cell phone.  *See* PSR ¶ 19; Gov't Ex. C.  To suggest that the defendant 'unknowingly' came to possess the type of image he intentionally groomed the victim to send him is incredulous.  Because the defendant cannot show prejudice, his claim fails.

> **(3)  The defendant fails to show that attorney Drossner was ineffective for permitting the defendant to plead to both receipt and possession of child pornography.**

The defendant next argues that attorney Drossner provided ineffective legal assistance insofar as he "incorrectly" advised Totoro to plead guilty to Count Three (receipt of child pornography) and Count Five (possession of child pornography) in violation of the Double Jeopardy Clause.  However, the defendant was punished on both offense because he, in fact, committed two separate federal crimes, and therefore Double Jeopardy is not implicated.

Under the Fifth Amendment Double Jeopardy clause, no person shall be "subject for the same offense to be twice put in jeopardy of life or limb."  U.S.C.A. Const. Amend. V.  But, Double

Jeopardy is not implicated where the receipt and possession of child pornography counts are based on different images and different time periods. *United States v. Bryner*, 392 Fed. Appx. 68, 73 (3d Cir. 2010) (unpublished) (two separate charges of receipt and possession do not implicate Double Jeopardy where each charge based on separate set of pornographic images involving different time periods); *accord United States v. Ehle*, 640 F. 3d 689, 698 (6th Cir. 2011), *United States v. Bobb*, 577 F.3d 1366, 1374-75 (11th Cir. 2009), *United States v. Davenport*, 519 F.3d 949, 947 (9th Cir. 2008).

In this case, the defendant pled guilty to crimes which included Count Three, charging receipt of child pornography on April 12, 2013, and Count Seven, charging possession of child pornography on January 14, 2015. The possession count involved the defendant's possession of a cell phone which contained multiple images depicting the minor victim's genitalia. *See* Gov't Ex. C (Aff'd FBI Agt. Jennifer Morrow). The receipt count involved a different, single image depicting a close-up of the minor victim's genitalia. *Id.* Therefore, each conviction is supported by different facts and images.

The defendant also acknowledged in his plea allocution that his dates for receipt and possession of child pornography were different. Gov't Ex. D at 65. Notably, the defendant knows that the images varied because he was provided with access to review all of this evidence. *See* Gov't Ex. C; *see also* ECF Doc. 137, p. 2 (wherein defendant describes viewing the evidence in support of child pornography with standby counsel). Because the two child pornography counts are based on different images and different time periods, there is no violation of Double Jeopardy. Therefore, attorney Drossner cannot be found ineffective on a meritless claim. *See Ross v. Dist. Attorney of the Cnty. of Allegheny*, 672 F.3d 198, 211 n. 9 (3d Cir. 2012) ("[C]ounsel cannot be

17

deemed ineffective for failing to raise a meritless claim.").

> **(4) The defendant fails to demonstrate that attorneys Henry and Meehan were ineffective in their representation of him during plea negotiations and his competency proceeding.**

The defendant also claims that Assistant Federal Defenders Henry and Meehan, his counsel from 2016, failed to reasonably counsel him on a plea agreement at the time that he was being evaluated for competency and provided ineffective assistance by permitting him to waive his Speedy Trial Rights even though his competency was in question. His claims find no support in the law.

Counsel must be evaluated as to whether they provided reasonable professional advice. Courts are directed to "indulge a strong presumption that counsel's conduct falls within the range of reasonable assistance." *Strickland*, 466 U.S. at 689; *also cited in Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996). Moreover, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland,* U.S. 466 at 691.

Under this standard, attorneys Henry and Meehan were reasonable to wait for the outcome of the defendant's competency proceeding before reviewing any plea offers. Attorneys cannot realistically communicate a plea offer with a defendant whom they believe is suffering from mental health or competency issues. Indeed, the defendant admits that a plea at that time could not have been knowingly and voluntarily accepted by the Court. Mot. at 54. Still, the defendant claims that the attorneys should have reviewed the plea agreement with him *while* he was undergoing his competency evaluation at an out-of-state federal medical facility. The defendant's claim is absurd; counsel cannot be expected to engage in meaningful discussions with a client whose mental ability

to comprehend is in question.  And, of course, counsel could not have reasonably been expected to know that the defendant was feigning his incompetence.

Nevertheless, a review of the defendant's own statements show that his attorneys were indeed apprising him of plea negotiations.  After Totoro returned from his competency evaluation, at the very next court hearing, the defendant repeatedly described how he had been advised of plea offers by counsel:

> "I was told I was offered a ten-year C plea when I first arrived here, then I wasn't offered a ten-year C plea."
>
> "Okay, then I was offered this other offer again."
>
> "Then I was offered another C plea, but it wasn't a true C plea because it had a range."

*See* Gov't Ex. E (Sealed Transcript, 9/17/16 Hrg. to Remove Counsel), p. 28.

From the defendant's own words, it is clear that his attorneys were relaying all plea offers presented during the course of his prosecution.  It is also apparent that his attorneys were involving the defendant in on-going plea negotiations.  *See id.* at p. 13 (defense counsel discussing conversations with prosecutor on "possible" offers).  Therefore, the defendant has not demonstrated that his attorneys were ineffective for purportedly failing to review a plea offer with him while he was in another state undergoing a competency evaluation.

The defendant next claims that his attorneys were ineffective in permitting him to waive his Speedy Trial rights despite the competency issue.  On January 22, 2016, after conducting a thorough colloquy with the defendant, this Court justifiably granted a continuance of trial pursuant to 18 U.S.C. § 3161(h)(7)(A),(B).  ECF Doc. 34.  Here, the defendant's position is plainly disingenuous as he was ultimately found to be feigning his symptoms -- a concern held by the very

19

first physician who evaluated the defendant and later confirmed in a more thorough evaluation. *See* ECF Doc. 51, p.2 (Ct. Order).  Even this Court had "skeptic[ism] of Totoro's purported distrust of his lawyer, particularly given the multiple reports the Court has received from different professionals that Totoro is feigning symptoms of mental illness, ostensibly in an effort to be declared incompetent to stand trial." *Id.* at 5.  Any argument that he was not competent at this time of his Speedy Trial waiver has been medically debunked. The defendant was both competent and malingering.

But, even assuming *arguendo* that counsel was ineffective in this manner, the defendant nonetheless has not met his burden of proving that he was prejudiced by any allegedly incorrect guidance or the trial continuance.  He does not claim that he wanted to proceed to trial in early February 2016, nor does he claim that he was forced or coerced into a waiver of his Speedy Trial rights. To the contrary, it was of paramount importance to determine whether the defendant was competent to stand trial – the very thing accomplished by continuing the trial date. Totoro seems to be arguing that the prejudice to him is that the plea offer, allegedly a 10-year C plea, provided to him in January 2016 was not offered to him again in the September 2016 when he returned from the competency evaluation. Totoro cannot prevail on this argument. First, as described earlier, the government has no record of the defendant being offered a C plea to 10 years' incarceration at any point, let alone prior to his competency evaluation. Second, the defendant is attempting to causally connect two things that are unrelated. The fact that he waived his Speedy Trial rights had absolutely nothing to do with the government's determination as to whether to make the defendant any plea offer. In any case, as described in subsection (5) below, the defendant had no intention of accepting such a plea since he rejected similar offers before trial. The Court should deny the

20

defendant's petition as to this argument.

> **(5) The defendant fails to demonstrate that attorneys Henry, Meehan, and Drossner were ineffective in failing to compel the government to offer a 10-year C plea.**

Lastly, the defendant claims his attorneys were ineffective for not requiring the government to re-offer the same 10-year "C" plea offer the government allegedly extended in 2016. As a starting point, there is no evidence that the government ever offered the defendant a 10-year C plea in 2016 or at any other time. More importantly, no defendant has a legal right to be offered any plea agreement.  The notion that a defense attorney had the ability to require the government to make a plea offer is preposterous. Finally, even if the defendant could establish ineffectiveness, which he cannot, he cannot establish prejudice. The defendant rejected a similar plea agreement in the weeks before his 2017 trial. He makes no representation as to why such an offer would have been any more palatable to him in 2016. The defendant's petition should be denied as to this point.

It is well-established that the defendant has no right to a plea offer.  *Frye,* 566 U.S. at 148. Likewise, there is no federal right that would require a judge to accept a plea. *Id.  Frye* simply held that a defense attorney has a professional duty to relay formal plea offers to their client before the offer expires. *Id*. at 145.  The defendant does not dispute that attorneys Henry/Meehan relayed plea offers to him.  In January 2016, the defendant knew that a plea offer had a "shelf-life."  Mot. at 53.  Thus, the defendant has failed to show that his attorneys acted deficiently during the plea negotiation process.  *See, e.g., Teague v. Scott*, 60 F. 3d 1167, 1171 (5th Cir. 1995) (defendant failed to show sufficient evidence of ineffective assistance of counsel in relaying plea offer where record included defense attorney's affidavit stating he conveyed offer and defendant's letter to attorney stated he was not interested in any plea deals).  Because the defendant has no legal right

to a plea offer and because he fails to demonstrate that his attorneys did not convey all available plea offers, the defendant has not shown ineffective assistance of counsel.

The defendant also asserts that attorneys Henry/Meehan were ineffective for failing to investigate into whether the victim was "cooperating" and faults the government for being misleading on the victim's "cooperation." The defendant does not define what "cooperation" means. The defendant does not describe how the victim's "cooperation" affected his decision to accept or reject any plea offers. The government has no information on what investigative steps were taken by the Defenders with regard to the victim and believes that it may be appropriate to supplement the record on this point. Nonetheless, the defendant also fails to demonstrate prejudice.

Even assuming *arguendo*, that his attorneys were deficient in communicating a plea offer or contacting the victim, the defendant cannot meet his burden of showing prejudice. "[W]here a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer, *Strickland*'s inquiry… requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed." *Frye*, 566 U.S. at 148. In addition, the defendant has the burden to show that if the prosecution or trial court had discretion to cancel or refuse the plea, there is a reasonable probability that neither would have prevented the offer from being implemented. *Id.*

In this case, the defendant was unwilling to plead guilty to a plea agreement which contemplated ten years' incarceration in July 2017 and, therefore, cannot show he was prejudiced by not accepting any allegedly similar plea offer in 2016. In the weeks leading up to trial, the

government engaged in informal plea discussions with the defendant, through attorney Drossner, to gauge the defendant's interest in resolving the case.[5] *See* Gov't Exs. A and B.  The final communication relayed that the defendant was unwilling to enter into a plea agreement involving a term of incarceration of anything more than 60 months.[6] *Id.*  Thus, despite whatever misunderstanding the defendant may have had between a formal plea offer and on-going plea negotiations, the bottom line is that the defendant was unwilling to accept the very plea terms which he now demands this Court to compel.  His attempt to manufacture wrongdoing against him by his former attorneys and by the prosecutor in this case is unsuccessful.  Because the defendant fails to show prejudice related to any allegedly deficient plea bargaining, his related claim of ineffective assistance of counsel is without merit.

### (6) This Court should deny Totoro a Certificate of Appealability.

Upon the District Court's denial of a 2255 motion, an appeal to the Third Circuit is not permitted unless the petitioner obtains a certificate of appealability. 28 U.S.C. § 2253. The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To establish the denial of a constitutional right, the mere allegation of a constitutional wrong, such as deprivation of the right to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error

---

[5] Later in the proceedings, the defendant confirmed that he had authorized attorney Drossner to relay his position in plea negotiations, and ultimately requested that attorney Drossner be formally appointed as his counsel for plea negotiations and at sentencing.  *See* Gov't Ex. D at pp. 12 – 13.

[6] While the defendant "respectfully reject[ed]" the plea terms of 8 or more years of incarceration, to be clear, these emails represent only informal plea negotiations.  As described in the government's emails, a formal plea offer required office approval and a consideration of the Court's position.

in order to present an appeal. *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The application for such a certificate should first be made to the District Court. Local Rule 22.2 provides as follows:

> At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge shall state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

The Third Circuit has further instructed that "as a matter of practice. . . an unsuccessful movant in a § 2255 case should in the first instance seek a certificate of appealability from the district court." *United States v. Williams*, 158 F.3d 736, 742 n.4 (3d Cir. 1998).

For the reasons stated above, Totoro has failed to establish a substantial showing of the denial of a constitutional right. Accordingly, in the interests of judicial economy, the government requests that, in addition to denying the instant petition, the Court also find that the Totoro has failed to make a substantial showing of a denial of any constitutional right and not issue a certificate of appealability, as the lack of merit of Totoro's constitutional claims is plain.

## V.    <u>**CONCLUSION**</u>

The defendant has not met his burden to support his claims that his prior attorneys provided professionally unreasonable legal assistance and that he was prejudiced by any of the alleged ineffectiveness.   Accordingly, the government respectfully requests that this Court deny Totoro's Section 2255 motion and deny a Certificate of Appealability.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney

*s/ Priya DeSouza*
PRIYA DESOUZA
Assistant United States Attorney

MICHELLE ROTELLA
Assistant United States Attorney
Chief, General Crimes and Child Exploitation

May 7, 2021.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this pleading has been served by first-class mail and/or

certified m, return receipt requested, postage prepaid upon:


Mr. Joseph P. Totoro
No. 69500-066
Fort Dix FCI
P.O. Box 2000
Joint Base MDL, NJ  08640


*/s Priya T. De Souza*
PRIYA T. DE SOUZA
Assistant United States Attorney


Dated: May 7, 2021.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA          :

                 v.                          :          **CRIMINAL NO.  15-291**

JOSEPH P. TOTORO                      :

**ORDER**

AND NOW, this      day of              , 2021, upon consideration of the defendant's Habeas Corpus Motion Pursuant to 28 U.S.C. § 2255, the Government's Response thereto, and following a hearing in this matter, it is ORDERED that the defendant's motion is DENIED, for the reasons stated in the government's response. Furthermore, as the defendant has failed to make a substantial showing of a denial of any constitutional right, no certificate of appealability will be issued.

**BY THE COURT:**

_____
**HONORABLE GERALD J. PAPPERT**
*Judge, United States District Court*

- 27 -