**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

    v.

JOSEPH P. TOTORO, II

No. 15-cr-291 & 21-cv-937

**PAPPERT, J.**                                                    **October 5, 2021**

<u>**MEMORANDUM**</u>

Joseph Totoro, II was charged in 2015 with committing a number of very serious crimes. Over the course of the following two years he was represented by four experienced criminal defense attorneys. His initial lawyers obtained from the Government formal, written offers for a proposed guilty plea agreement. These offers, made in October of 2015 and September of 2016, each presented Totoro with the same two options. The first, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), called for a fifteen-year mandatory-minimum prison sentence and a proposed sentencing range of 188 to 200 months. The second alternative, under Rule 11(c)(1)(B), provided for a ten-year mandatory-minimum term to go with a recommended 188-to-235-month range. Totoro twice rejected both alternatives. In fact, he consistently told his lawyers he would only consider offers with sentences less than ten years, with eight years being his outer limit.

Even after getting rid of his first three appointed counsel because he didn't trust or like them, Totoro held firm. As trial approached and while representing himself before the appointment of his fourth and final lawyer, Totoro told that attorney,

1

assisting him in a standby role, to ask the Government to agree to a five-year sentence. Immediately before jury selection, Totoro folded. With standby counsel now formally representing him for final plea negotiations and the entry of his plea, Totoro knowingly, intelligently and voluntarily pleaded guilty and agreed, under Rule 11(c)(1)(C), to a mandatory-minimum sentence of 180 months, up to a maximum of 300 months.

The Court sentenced Totoro to 300 months, the lower end of his 292-to-365-month advisory sentencing guideline range. Totoro has regretted his decision ever since—likely given his mistake in hindsight to reject the prior offers with lower ranges. His Guilty Plea Agreement's appellate waiver provision foiled his chances on appeal, and he now seeks to set aside, correct or vacate his sentence under 28 U.S.C. § 2255. He claims his initial lawyers were ineffective in failing to obtain from the Government and then convey to him a plea offer that met his own terms. He now wants a do over, asking the Court to vitiate his Guilty Plea Agreement, "reinstate" a flat, ten-year C plea and resentence him accordingly.

The Court denies Totoro's Motion. His lawyers' performance couldn't have been deficient because the Government never offered the deal Totoro now wants, and even if it had he would not have agreed to it.

I

A

On April 7, 2015, the United States filed a criminal complaint charging Totoro with four offenses arising out of his sexual relationship with a minor: transfer of obscene materials to a minor in violation of 18 U.S.C. § 1470, receipt of child pornography in violation of 18 U.S.C. § 2252(a), possession of child pornography in

violation of 18 U.S.C. § 2252(a)(4)(B) and enticing a minor to engage in sexual conduct using interstate commerce in violation of 18 U.S.C. § 2422(b). (ECF No. 1 p. 1.)[1] Eleven weeks later, a grand jury returned an indictment containing the same charges and adding two others: one count of production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of blackmail in violation of 18 U.S.C. § 873. (ECF No. 15 pp. 1–7.) Totoro pleaded not guilty to all charges. (July 6, 2015 Min. Entry, ECF No. 19.)

The allegations stemmed from Totoro's sexual abuse of a minor female while he served as her personal tennis coach. (Change of Plea Hr'g Tr. 60–62, ECF No. 205.) This abuse consisted of sexual interactions in person and explicit communications exchanged over the internet. (*Id.*) It lasted about two years; when it began, Totoro was forty-five, the victim fourteen. (Indictment 1–6.)

On April 13, 2015, Catherine Henry, a senior litigator in the Federal Community Defender Office, entered her appearance for Totoro. (ECF No. 6.) After Henry "rais[ed] an issue" about Totoro's competency to stand trial, Magistrate Judge Lloret ordered him to submit to a psychological evaluation and testing. (ECF No. 14 ¶ 1.) Pursuant to that order, Dr. Pogos Voskanian submitted to the Court an evaluation concluding Totoro was competent. (Sept. 9, 2016 Mem. 1, ECF No. 51.)

As Totoro's trial date in February of 2016 neared, Henry requested that the Court hold a status hearing because of her concern about his mental state. (Jan. 21, 2016 Status Hr'g Tr. 5:2–6.) At the hearing, the Court decided to postpone Totoro's trial, granted Henry's request to order another assessment of Totoro's competency from

---

[1] Page numbers in this Memorandum correspond to the pagination of the cited documents—not the ECF pagination.

Dr. Voskanian and agreed to schedule another hearing on this assessment.  (*Id.* at 31:15–21.)  Although the updated evaluation concluded Totoro was not competent to stand trial, it also stated he had been exaggerating his mental illness and recommended his transfer to a mental health facility for a fuller evaluation.  (Sept. 9, 2016 Mem. 2.)  Henry and co-counsel Maranna Meehan then filed an unopposed motion (to which Totoro did not object) requesting that the Court order his commitment in a "suitable" medical facility.  (ECF No. 38 ¶¶ 5–6.)[2]  The Court granted the motion and found him incompetent to assist his defense.  (Feb. 17, 2016 Order, ECF No. 41.)

Totoro was transferred to Butner, North Carolina for commitment in the Federal Medical Center there.  (Sept. 9, 2016 Mem. 2.)  He underwent a comprehensive evaluation that determined, in part, he was malingering and was not suffering from a mental illness impairing his ability to assist his defense.  (*Id.* at 2–3.)  Totoro was accordingly found competent to stand trial.  (*Id.* at 3.)

On July 28, 2016, Henry and Meehan filed a motion requesting to withdraw from representing Totoro.  (ECF No. 45.)  The Court held a hearing during which it became clear the motion was prompted by Totoro's desire that a different lawyer represent him—not Henry or Meehan's preference to withdraw.  *See* (Sept. 7, 2016 Mot. Hr'g Tr.).  Specifically, Henry stated she and Meehan were willing to continue representing Totoro but said he no longer wished to speak with them.  (*Id.* at 4–5.)  For his part, Totoro stated he had lost trust in his counsel from the Federal Community Defender Office, *see* (*id*. at 11:12–20, 16:20–25), but floated the possibility of proceeding *pro se* if he was not satisfied with counsel the Court appointed as a replacement, *see* (*id*. at 21:4–9).  Two

---

[2] Meehan, an Assistant Federal Defender, began representing Totoro at some point after Henry did, likely in the fall of 2015.  (Sept. 17, 2021 Mot. Hr'g Tr. 45–46, ECF No. 234.)

days after the hearing, the Court granted Henry and Meehan's motion to withdraw and appointed as Totoro's new counsel George Newman from the Criminal Justice Act ("CJA") panel. (Sept. 9, 2016 Orders, ECF Nos. 52, 53.)

Newman represented Totoro for about five months, until he asked to represent himself. After a hearing on Totoro's request, the Court granted his motion to proceed *pro se* and appointed Michael Drossner as standby counsel. (Feb. 24, 2017 Order, ECF No. 83.) Drossner assisted Totoro with research, motions and advice on trial preparation. (Sept. 17, 2021 Mot. Hr'g Tr. 63:12–23.)

The Court scheduled trial for July 31, 2017. (June 21, 2017 Sched. Order ¶ 6, ECF No. 128.) But just before jury selection Totoro changed his plea to guilty. He waived his right to *pro se* representation and wanted Drossner to represent him for the final plea negotiations, his Change of Plea hearing and sentencing. (July 31, 2017 Order, ECF No. 182.)

Pursuant to his written Guilty Plea Agreement, Totoro pleaded guilty to seven of the eight counts in the indictment; the Government agreed to dismiss count four, receipt of child pornography. (ECF No. 179 ¶¶ 1, 3(a).) One of the counts to which Totoro pleaded guilty, attempted production of child pornography, carried a mandatory minimum prison sentence of 15 years and a maximum of 30 years. (*Id.* at ¶ 4(a).) The Agreement was executed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and contained a sentencing range of 180 to 300 months. (*Id.* at ¶ 2.) Totoro also agreed no one had guaranteed or promised him what sentence the Court would impose. (*Id.* at ¶ 9.)[3]

---

[3] At his Change of Plea hearing, Totoro stated he understood the Agreement's terms and that before signing it he read it and discussed it with Drossner. (Hr'g Tr. 43.)

At Totoro's sentencing hearing, the Court accepted the Guilty Plea Agreement's terms and imposed a sentence of 300 months incarceration, the top of the agreed upon range but on the lower end of his advisory sentencing guideline range of 292 to 365 months.  (Hr'g Tr. 5:5–9, 43:11–16; Guilty Plea Agreement ¶ 2.)[4]  Totoro appealed.  (Not. of Appeal, ECF No. 201.)  But the Third Circuit enforced the appellate waiver in the Plea Agreement and summarily affirmed.  (USCA Mandate, ECF No. 218.)[5]

B

1

On February 25, 2021, Totoro filed a *pro se* Motion to set aside, correct or vacate his sentence under 28 U.S.C. § 2255.  (ECF No. 219.)  The Court appointed Rhonda Pantellas Lowe from the CJA panel to represent Totoro and scheduled an evidentiary hearing.  (July 8, 2021 Order, ECF No. 227; Aug. 12, 2021 Not. of Hr'g, ECF No. 232.)  Lowe represented Totoro at the hearing and filed a post-hearing brief.  (ECF No. 236.)[6]  The Government filed a supplemental response to Totoro's Motion.  (ECF No. 238.)

Totoro's Motion raised five claims, implicating three of his lawyers (Henry, Meehan and Drossner), that he was deprived of his right to the effective assistance of counsel in violation of the Sixth Amendment.  (ECF No. 219.)  First, Totoro claimed Drossner provided constitutionally ineffective assistance by advising him to waive all ineffectiveness claims except those pertaining to plea negotiations and the Change of

---

[4] The sentence also included ten years supervised release and a $725 special assessment. (Sentencing Hr'g Tr. 43:11–16.)

[5] The Supreme Court subsequently denied Totoro's Petition for a Writ of Certiorari.  (Feb. 24, 2020 Sup. Ct. Not., ECF 17-3589.)

[6] The Court is very grateful to counsel for accepting the appointment and her thorough and capable advocacy.

Plea hearing, and by failing to request that the Court colloquy Totoro on the Government's previous plea offers. (*Id.* at 12–14.)  Second, Totoro asserted Drossner provided ineffective assistance by advising Totoro to plead guilty to count three of the indictment, receipt of child pornography, even though that charge's scienter requirement is not reflected in the Plea Agreement and was not properly articulated at the Change of Plea hearing. (*Id.* at 14–16.)  Third, Totoro alleged Drossner provided ineffective assistance by advising Totoro to plead guilty to charges that constitute a Double Jeopardy violation. (*Id.* at 16–17.)  Fourth, Totoro claims Henry and Meehan provided ineffective assistance by advising Totoro that a January 21, 2016 informal plea offer could not be accepted until Totoro underwent a competency evaluation but that it would be available following the resolution of his "competency issues"; and by advising Totoro to waive his speedy trial rights despite uncertainty about his competency. (*Id.* at 17–19.)  Finally, Totoro claims Henry, Meehan and Drossner provided ineffective assistance by failing to request that the Court reinstate the January 21, 2016 informal plea offer after his competency issues were settled. (*Id.* at 19–24.)

Totoro withdrew claims one through three in their entirety at the evidentiary hearing and claim five with respect to Drossner in his post-hearing brief. (Hr'g Tr. 5–6; ECF No. 236 p. 1 n.1.)  That left claims four and five—both implicating only Henry and Meehan—for the Court's disposition.  As for those two claims, the Government argues claim four fails because Henry and Meehan reasonably held off on substantive plea discussions with their client while his competency was in doubt, and that claim five is meritless because criminal defendants lack rights to plea offers and Totoro cannot show

either the deficient performance or prejudice required for relief.  (Gov't Resp. to § 2255

Mot., ECF No. 225 pp. 18–19, 21–23.)

2

Totoro argues now that he was willing to accept a Rule 11(c)(1)(C) plea offer,

otherwise known as a "C plea," carrying a prison sentence of—or starting at—120

months.  The ineffectiveness of three of Totoro's lawyers deprived him of that offer, so

the 300-month sentence he ultimately received should be set aside as a result.

The way Totoro sees it, a ten-year C plea was available at the January 21, 2016

competency hearing.  *See* (Sept. 17, 2021 Mot. Hr'g Tr. 85:2–7).  Totoro expected it

would be on the table once his competency issues were resolved.  He says he would have

accepted the offer after he returned from Butner.  (*Id.* at 89:19–22.)  But the purported

January 21, 2016 offer was not available to Totoro by that point, and was never

reinstated, because Totoro's attorneys did not diligently pursue it and communicate it

to him.  *See* (*id.* at 90–92).  And Totoro was eventually left with no option better than

the one he took as jury selection was about to begin.

3

Totoro's testimony at the September 17 evidentiary hearing was not worthy of

belief.  The credible testimony of his former counsel, corroborated by written

communications and formal plea offers, paints a vastly different picture of what Totoro

was demanding and unwilling to accept.

Henry has been a criminal defense attorney for more than twenty years and has

negotiated thousands of plea agreements for her clients.  (*Id.* at 9–10, 12:1–12.)  She

explained the important distinction between informal plea negotiations—which are

8

unofficial discussions used to gauge the compatibility of the Government and client's views on an acceptable sentence or sentencing range—and formal plea offers—which are written proposals approved by supervising prosecutors and presented in writing. *See* (*id.* at 10–11).  To her point, each formal offer letter in this case stated that "[p]lea offers are made by this office only in writing."  (*Id.* at Gov't Exs. 1, 3, 4.)

The first formal offer at issue, delivered to Henry in an October 8, 2015 letter from the Government, consisted of two alternatives: a binding C plea with a mandatory-minimum prison sentence of 15 years and a 188-to-200-month sentencing range; and a Rule 11(c)(1)(B) plea with a ten-year mandatory minimum and a recommended 188-to-235-month sentencing guideline range.  (*Id.* at Gov't Ex. 1.)[7] Henry presented these alternatives to Totoro and he rejected them both.  (*Id.* at 16:4–6, 21–23.)

On January 21, 2016, the day of the hearing Henry requested because of her concern about Totoro's mental state, the Government informally offered Totoro a plea that Henry remembered as a C plea with a sentencing range starting at 120 months. *See* (*id.* at 18–19).  The Government did not offer a C plea with a "flat" sentence of ten years—not that day nor any other while Henry and Meehan represented Totoro.  (*Id.* at 20:2–5.)[8]

---

[7] A C plea is binding in that the sentence the Government and criminal defendant agree to "binds the court" if the court accepts the plea agreement's terms (though the court need not do so).  Fed. R. Crim. P. 11(c)(1)(C).  By contrast, the terms of a Rule 11(c)(1)(B) plea agreement do not bind the court.  *See id.* (c)(1)(B).

[8] The next lawyer who represented Totoro, Newman, received a formal offer for a Rule 11(c)(1)(B) plea under which the Government agreed to dismiss the production charge while stipulating that this charge would be reflected in the calculation of Totoro's advisory sentencing guideline range.  (*Id.* at Gov't Ex. 4 p. 1.)  As for the potential term of incarceration, the plea offer mentioned only a ten-year mandatory-minimum term—not a fixed, ten-year term.  (*Id.* at Gov't Ex. 4 ¶ 2 (stating in bold that the agreed upon sentence recommendation was "no less than 120 months incarceration").)

The day of the hearing, Henry did not feel comfortable asking Totoro to make definitive decisions about plea offers because he was despondent and uncooperative. *See* (*id.* at 18:7–9, 19:18–20).  But when Henry told Totoro about the Government's latest proposal, he rejected that one too.  *See* (*id.* at 19:10–14).  In fact, Totoro never at any time told Henry he would consider a sentence longer than eight years.  (*Id.* at 16–17.)

Consistent with Henry's practice, she did not relay plea offers to Totoro while he was undergoing a medical evaluation in Butner because his competency was in question.  (*Id.* at 39:9–21.)  When Totoro returned, several months after the January 2016 hearing, Henry presented him a formal plea offer contained in a September 1, 2016 letter from the Government.  (*Id.* at 23:19–20, Gov't Ex. 3.)  This offer was the same as the two alternatives Totoro rejected in October of 2015.  *See* (*id.* at Gov't Exs. 1, 3).  He rejected them again.  (*Id.* at 23:21–23.)

Henry made clear that even though she requested a C plea with a flat, ten-year sentence for Totoro on several occasions, the Government never offered one.  (*Id.* at 19–20.)  All the Government's offers included a range.  *See* (*id.* at 19:5–6).  Had Henry ever received a flat, ten-year C plea offer, she and Meehan "would have been jumping for joy" because it would have represented a "great offer."  (*Id.* at 33–34.)

Meehan's testimony corroborated Henry's.  Notably, Meehan—who, like Henry, has more than twenty years of experience representing criminal defendants— remembered having detailed conversations with Totoro about plea negotiations, including the formal offer the Government made on October 8, 2015.  (*Id.* at Gov't Ex. 1,

---

Moreover, Totoro's fourth attorney, Drossner, testified he likewise did not receive a formal offer for a ten-year C plea.  (*Id.* at 75:18–21.)

46:12–24.)  Meehan also stated that for most of her time representing Totoro he was willing to consider only offers with sentences less than ten years, something the Government never formally offered.  *See* (*id*. at 49–50).  Nor did the Government ever offer a C plea with a flat, ten-year sentence.  (*Id*. at 54:10–12.)

For his part, Totoro testified he was suicidal and remembered feeling "very hyperemotional," "jumbled" and like he was "in a very bad place" mentally at the January 21, 2016 status hearing, but also said he was able to "comprehend things."  (*Id*. at 83–84, 89:2–3.)  Before the hearing, Henry and Meehan discussed with Totoro a plea offer from the Government.  (*Id*. at 85:2–7.)  While Totoro claimed in his Motion the offer was a flat, ten-year C plea, *see, e.g.*, (ECF No. 219 p. 20), at the evidentiary hearing he conceded the Government's proposal may have included a range, *see* (Hr'g Tr. 85:4–7).  In fact, Totoro introduced into evidence a February 9, 2016 draft letter from the Government proposing as a formal offer a C plea calling for a range of 120 to 156 months—with the 156 crossed out in pen.  *See* (*id*. at Pet'r Ex. 1).  The letter is unsigned, and neither Henry nor Meehan ever received it.  *See* (*id*., 38:8–16, 53:22–25).

Totoro expected the Government's January 21 informal offer would still be available after his competency was evaluated.  (*Id*. at 87:13–15.)  But when he returned from Butner and told Henry and Meehan he would accept it, they told him it was no longer an option.  *See* (*id*. at 89–90).  Totoro also testified he did not remember turning down a flat, ten-year C plea after choosing to proceed *pro se* but did remember telling Drossner, his standby counsel, that he would accept it.  *See* (*id*. at 94–97).  This testimony—as well as Totoro's statement that the "first thing" he remembered doing after returning from Butner was "asking about" a ten-year C plea—is at odds with both

Drossner's testimony and the documentary evidence.  (*Id.* at 91–92.)[9]  But even Totoro

conceded the Government at no point formally extended such an offer.  (*Id.* at 106:3–6.)

Totoro's version of events contradicts the testimony of three very credible, experienced

criminal defense lawyers, documentary evidence and common sense.

## II

## A

Section 2255(a) of Title 28 of the United States Code permits a prisoner in

custody sentenced by a federal court to move that court to "vacate, set aside, or correct

the sentence" where: (1) "the sentence was imposed in violation of the Constitution or

laws of the United States"; (2) "the court was without jurisdiction to impose such

sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the

sentence is "otherwise subject to collateral attack."  A petitioner bears the burden of

demonstrating his § 2255 motion has merit.  *See United States v. Davies*, 394 F.3d 182,

189 (3d Cir. 2005).  Further, a petitioner "must clear a significantly higher hurdle than

would exist on direct appeal" to obtain relief.  *United States v. Cleary*, 46 F.3d 307, 310

(3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).  "[T]he

concern with finality served by the limitation on collateral attack has special force with

respect to convictions based on guilty pleas."  *Id.* (quoting *United States v. Timmreck*,

441 U.S. 780, 784 (1979)).

---

[9] Drossner testified that as Totoro's July 31, 2017 trial date approached he became willing to accept a ten-year C plea.  (*Id.* at 75:10–13, 76–77.)  (And when Drossner presented this proposal to a supervising prosecutor three days before trial, he emphatically rejected it: "The short answer is NO." (*Id.* at Gov't Ex. 5 p. 2.))  But earlier that month, when at Totoro's request Drossner was unsuccessfully trying to negotiate a potential ten-year C plea with the Government, Totoro rejected that idea and proposed a five-year sentence instead.  *See* (*id.* at Gov't Ex. 5a).  Drossner clarified he was unsure whether Totoro rejected the possibility of an eight- or ten-year sentence.  (*Id.* at 75:5–9.) Both were longer than Totoro's proposal of sixty months.

Pursuant to § 2255(b), a district court should grant a hearing to determine the issues in and make factual findings and legal conclusions on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Put another way, where a petitioner "alleges any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obliged to follow the statutory mandate to hold an evidentiary hearing." *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005). When considering whether to hold a hearing on a § 2255 motion, a court must "accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In the context of Totoro's ineffective assistance of counsel claims, to warrant a hearing he needed only "raise[] sufficient allegations" that counsel was ineffective. *United States v. Booth*, 432 F.3d 542, 549 (3d Cir. 2005).

## B

### 1

The Sixth Amendment guarantees a criminal defendant the right to "have the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel," and counsel deprives a defendant of that right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The two-part test the Supreme Court created in *Strickland* governs ineffective assistance claims. To prevail, the petitioner needs to show "(1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness,

and (2) that the petitioner suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).

With respect to *Strickland*'s performance prong, to assess "whether a petitioner has demonstrated that his attorney's representation was constitutionally deficient, [courts] look to 'the facts of the particular case, viewed as of the time of counsel's conduct,' and evaluate whether counsel's performance 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'" *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017) (quoting *Strickland*, 466 U.S. at 688, 690) (citation omitted)). The question whether counsel's representation was reasonable "is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Gov't of Virgin Islands v. Vanterpool*, 767 F.3d 157, 168 (3d Cir. 2014). There is a "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020) (quoting *Strickland*, 466 U.S. at 689; *see also United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) ("[O]nly the rare claim of ineffectiveness of counsel . . . should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.").

A court need not address both *Strickland* prongs "if the defendant makes an insufficient showing on one." *Id.* at 697. Stated differently, a court reviewing an ineffective assistance claim in the habeas corpus context "may begin and, when dispositive, end with either" the performance or prejudice prong. *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 477 (3d Cir. 2017).

2

*Strickland*'s two-part test is the proper framework for assessing ineffectiveness claims arising out of plea bargaining. *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). To satisfy the performance prong for such a claim, counsel must communicate "formal offers" favorable to the defendant. *Id.* at 145; *see United States v. Tarnai*, 782 F. App'x 128, 131 (3d Cir. 2019) (explaining that the right to effective assistance "does not attach to all aspects" of plea negotiations). There must be a "meaningful attempt" to notify the defendant of such offers before they lapse. *Frye*, 566 U.S. at 149.

III

A

Claims four and five (the only claims remaining) in Totoro's Motion lack merit because Totoro received capable representation from experienced counsel. In particular, both claims fail because Totoro cannot show his counsel's representation "fell below an objective standard of reasonableness," and the Court can dispose of ineffective assistance claims without considering *Strickland*'s prejudice prong. *See Strickland*, 466 U.S. at 687–88, 697.

Totoro's remaining claims fail for the reasons given by his previous lawyers. Again, Totoro asserts in claim four that Henry and Meehan provided ineffective assistance by failing to adequately advise him about the Government's January 21, 2016 informal plea offer—which in any event was not what Totoro thought it was when he filed the Motion. (§ 2255 Mot. 17–19.) On that day, it was eminently reasonable for Henry and Meehan to decide not to engage Totoro in substantive discussions over a

prospective offer from the Government, given how they described his mental state and unwillingness or inability to communicate with them.  (Sept. 17, 2021 Mot. Hr'g Tr. 17:13–21, 55:10–16.)[10]  After Totoro returned from Butner, he claimed to lose trust in his lawyers and demanded a new one.  So Henry and Meehan asked the Court to withdraw because they knew they could no longer represent Totoro productively. Nothing about this sequence of events shows Henry or Meehan's performance in connection with the January 21, 2016 informal plea offer was "deficient."  *Strickland*, 466 U.S. at 687.  Rather, they made reasonable decisions informed by sound judgment, decades of experience and a client they believed to be in distress.

Claim five is that Henry and Meehan provided ineffective assistance by failing to move the Court to "reinstate" the Government's January 21, 2016 informal plea offer after the uncertainty about Totoro's competency was resolved.  (§ 2255 Mot. 19–24.) Totoro's lawyers had no legal basis to do so.  *See, e.g.*, *Frye*, 566 U.S. at 148 (noting the lack of a constitutional right to plea offers).  And there is nothing Henry, Meehan nor Drossner could have done to change this crucial fact: the Government never formally offered Totoro a ten-year C plea.  Accordingly, as the Government neatly summed up the illogic of Totoro's argument on this issue, Henry and Meehan cannot have performed deficiently by failing to communicate or keep open an offer that "did not exist."  (Gov't's Supp. Resp. to Pet'r's Mot. 5.)

Totoro is plain wrong in his purported belief that the informal offer Henry alluded to at the January 21, 2016 hearing was a formal one.  (Pet'r's Br. 6–7, ECF No.

---

[10] Totoro's own testimony supports Henry and Meehan's approach, with his acknowledgement that on that day his mind was, among other things, "in a very bad place."  (Sept. 17, 2021 Mot. Hr'g Tr. 83–84, 89:2–3.)  If the medical professionals who evaluated Totoro were correct in determining he was feigning mental illness, Totoro now appears to be blaming his lawyers for falling for his act.

236.)  It runs headlong into Henry's credible testimony and the Government's written communications introduced at the evidentiary hearing.  Henry explained the differences between informal and formal plea offers, and the Government's offer letters—through their terms and their formal presentation—reinforce that distinction. While Totoro claims the January 21, 2016 informal offer was memorialized in a February 9, 2016 draft letter the Government had on file, there is no evidence this letter was ever signed or sent to Totoro's counsel.  Indeed, Henry and Meehan testified they did not receive it.

Henry and Meehan's performance as Totoro's counsel satisfied *Strickland*'s "reasonably effective assistance" standard.

B

Even if Totoro could make it past *Strickland*'s performance prong with either of his remaining claims, he would be unable to show his counsel's performance "prejudiced [his] defense."  466 U.S. at 687.  First, no one disputes the Government never formally offered Totoro a flat, ten-year C plea.  That includes Totoro.  His post-hearing brief asserts that the "record seems clear that" such an offer "was never conveyed."  (ECF No. 236 p. 10 n.13.)  Second, even if the Government had ever made such an offer, Totoro would not have accepted it.  Any claim to the contrary flies in the face of the credible testimonial and documentary evidence introduced at the hearing.  Henry, Totoro's lead counsel, testified Totoro never even *suggested* he would agree to an offer with a sentence longer than eight years, and Meehan consistently testified Totoro set his maximum at less than ten years.  *See* (*id.* at Sept. 17, 2021 Mot. Hr'g Tr. at 16–17, 47– 48).  The one qualification in Meehan's testimony was a July 2016 meeting she had

with Totoro following his return from Butner when, after noting another defendant who he said received a ten-year C plea, Totoro said he would have considered such an offer (had the Government ever made it, which it did not). *See* (*id*. at 48–49). The record evidence, however, contradicts this. As late as a few weeks before Totoro's July 31, 2017 trial date, for example, Drossner told the Government Totoro "always" set an eight-year sentence as his upper limit. (*Id*. at Gov't Ex. 5a.) And when Drossner reported back to Totoro in the course of informally negotiating potential plea offers with the prosecutor, Totoro himself lowered the bar by three years and insisted on a sixty-month sentence. *See* (*id*).

Finally, Totoro claims in his Motion that there is "nothing in the record" suggesting the Court would have rejected a ten-year C plea. (ECF No. 219 p. 26.) That isn't right either. Totoro's offenses were heinous and his sentencing guideline range was 292 to 365 months. (Change of Plea Hr'g Tr. 22:12–14; Guilty Plea Agreement ¶ 4(a).) After thoroughly reviewing all facts, circumstances and required factors, the Court sentenced Totoro to 300 months. (Sentencing Hr'g Tr. 43:11–16.)

IV

When a district court denies claims in a § 2255 motion, the petitioner may appeal only if a "circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). A certificate of appealability is available only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court will not issue a certificate of appealability

because reasonable jurists would not debate its ruling, and Totoro has not shown a denial of his Sixth Amendment right to the effective assistance of counsel.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.